# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **TO BE FILED UNDER SEAL** |
| | : | |
| v. | : | Hon. Michael A. Hammer |
| | : | |
| RAHEEL NAVIWALA | : | Mag. No. 23-10110 |
| | : | |
| | : | **CRIMINAL COMPLAINT** |

I, Paul McGrory, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Department of Health & Human Services, Office of the Inspector General and that this Complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached page and made a part hereof.

/s/ Paul McGrory
_____
Paul McGrory, Special Agent
Department of Health & Human Services,
  Office of the Inspector General

Special Agent McGrory attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(B)(2)(A) on this 16th day of March, 2023.

March 16, 2023, at
District of New Jersey

Honorable Michael A. Hammer
United States Magistrate Judge

/s/ Hon. Michael A. Hammer
_____
Signature of Judicial Officer

## ATTACHMENT A

## COUNT ONE
**(Conspiracy to Violate the Federal Anti-Kickback Statute)**

From at least as early as in or around February 2017 through in or around April 2019, in the District of New Jersey, and elsewhere, the defendant,

**RAHEEL NAVIWALA,**

did knowingly and intentionally conspire and agree with others to commit offenses against the United States, that is to knowingly and willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from any person in return for purchasing, ordering, and arranging for, and recommending purchasing and ordering, any good, item, and service, namely, durable medical equipment, for which payment may be made in whole or in part under a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b(f), namely, Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(B).

In violation of Title 18, United States Code, Section 371.

## ATTACHMENT B

I, Paul McGrory, am a Special Agent with the Department of Health and Human Services, Office of the Inspector General. I have knowledge of the following facts based upon both my investigation and discussions with other law enforcement personnel and others. Because this affidavit is being submitted for the sole purpose of establishing probable cause to support the issuance of a complaint, I have not included each and every fact known to the government concerning this matter. Where statements of others are set forth herein, these statements are related in substance and in part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### Background on the Medicare Program

1. Since in or around 2017, the Department of Health and Human Services, Office of the Inspector General ("HHS") and the Federal Bureau of Investigation ("FBI") have been investigating a large-scale scheme to defraud the Medicare Program ("Medicare") and other federal payors through the paying and receiving of kickbacks in return for referrals of patients interested in certain medical services and products.

2. Medicare is a federally funded program established by the Social Security Act of 1965 (codified as amended in various sections of Title 42, United States Code) to provide medical insurance benefits for individuals age 65 and older and certain disabled individuals who qualify under the Social Security Act. Individuals who receive benefits under Medicare are referred to as "Medicare beneficiaries."

3. Medicare is administered by the Center for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

4. Medicare is divided into four parts, which help cover specific services: Part A (hospital insurance); Part B (medical insurance); Part C (Medicare Advantage); and Part D (prescription drug coverage).

5. Medicare Part B covers non-institutional care that includes physician services and supplies, such as durable medical equipment ("DME"), that are needed to diagnose or treat medical conditions and that meet accepted standards of medical practice.

6. Medicare is a "health care benefit program," as defined by 18 U.S.C. § 24(b), that affects commerce and a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affects commerce.

7. In order for a supplier of DME services to bill Medicare Part B, that supplier must enroll with Medicare as a Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS") supplier by completing a Form CMS-855S.

8. As provided in the Form CMS-855S, to enroll as a DMEPOS supplier, every DMEPOS supplier must meet certain standards to obtain and retain billing privileges to Medicare, such as, but not limited to the following: (1) provide complete and accurate information on the Form CMS-855S, with any changes to the information on the form reported within 30 days; (2) disclose persons and/or organizations with ownership interests or managing control; (3) abide by applicable Medicare laws, regulations and program instructions, such as, but not limited to, the Federal Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)); (4) acknowledge that the payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions; and (5) refrain from knowingly presenting or causing to be presented a false or fraudulent claim for payment by Medicare and submitting claims with deliberate ignorance or reckless disregard of their truth or falsity.

9. Medicare-authorized suppliers of healthcare services and supplies, such as DME, can only submit claims to Medicare for reasonable and medically necessary services. Medicare will not reimburse claims for services that it knows are procured through kickbacks or bribes. Such claims are deemed false and fraudulent because they violate Medicare laws, regulations, and program instructions, as well as federal criminal law. For example, where a prescription for DME is procured through the payment of a kickback in violation of the AKS, a claim to Medicare for reimbursement for that DME is fraudulent. By implementing these restrictions, Medicare aims to preserve its resources, which are largely funded by United States taxpayers, for those elderly and other qualifying beneficiaries who have a genuine need for medical services.

**Overview of the Conspiracy**

10. At all times relevant to this Complaint,

    a. Defendant RAHEEL NAVIWALA ("NAVIWALA"), was a resident of Florida who owned, operated, and/or had a financial or controlling interest in multiple marketing call centers (the "NAVIWALA Supply Companies") through which he and his coconspirators generated information and documents amounting to a guarantee that DME would be reimbursed by Medicare, referred to herein as a "completed doctor's order." As that term was used during NAVIWALA's scheme, a completed "doctor's order" was comprised of a prospective patient's name, contact information, insurance information, and a

doctor's order or prescription for DME or other medical services for that particular patient.

  b. Aaron Williamsky ("WILLIAMSKY") and Nadia Levit ("LEVIT"), coconspirators not charged herein, were residents of New Jersey who owned, operated, and/or had a financial or controlling interest in several DME supply companies (the "Williamsky/Levit DME Companies"), which primarily supplied orthotic braces, such as knee, ankle, back, wrist, and shoulder braces to Medicare beneficiaries. The Williamsky/Levit DME Companies were enrolled with Medicare as suppliers of DME, and therefore, were authorized to bill Medicare for the supplying of orthotic braces. Pursuant to the requirements described above, the Williamsky/Levit DME Companies were also responsible for acknowledging that any claims made to Medicare complied with the relevant laws, regulations, and program instructions.[1]

  c. Charles Burruss ("BURRUSS") and Armani Adams ("ADAMS"), coconspirators not charged herein, were residents of California who owned, operated, and/or had a financial or controlling interest in several DME supply companies (the "Burruss/Adams DME Companies"), which primarily supplied orthotic braces, such as knee, ankle, back, wrist, and shoulder braces to Medicare beneficiaries. The Burruss/Adams DME Companies were enrolled with Medicare as suppliers of DME, and therefore, were authorized to bill Medicare for the supplying of orthotic braces. Pursuant to the requirements described above, the Burruss/Adams DME Companies were also responsible for acknowledging that any claims made to Medicare complied with the relevant laws, regulations, and program instructions.[2]

 11. The investigation has revealed that starting at least as early as in or around February 2017, and continuing through in or around April 2019, NAVIWALA conspired and agreed with WILLIAMSKY, LEVIT, BURRUSS, ADAMS, and others to arrange for NAVIWALA to solicit and receive kickbacks and bribes in exchange for providing them and their DME companies with completed doctors' orders for DME for Medicare beneficiaries without regard to medical necessity.

 12. In general, NAVIWALA first obtained completed doctors' orders for DME for Medicare beneficiaries located in the United States and elsewhere through the use of the NAVIWALA Supply Companies and telemedicine

---

[1] In or around April 2019, a grand jury sitting in the District of New Jersey issued an indictment charging WILLIAMSKY, LEVIT, and others with, among other things, health care fraud, violation of the AKS, and conspiracy to commit health care fraud and violate the AKS. WILLIAMSKY and LEVIT have each since pleaded guilty.

[2] In or around September 2020, ADAMS and BURRUSS were charged with, among other things, conspiracy to commit wire fraud, health care fraud, and violate the AKS. ADAMS and BURRUSS have each since pleaded guilty.

companies [3] with whom he had a relationship. Next, NAVIWALA and his coconspirators transmitted the completed doctors' orders to the DME companies for processing. The DME companies then arranged for the prescribed DME, such as orthotic braces, to be shipped to the individual Medicare beneficiaries pursuant to the doctors' orders. Finally, the DME companies electronically submitted or caused the electronic submission of claims to Medicare from New Jersey and elsewhere for payment for each of the qualifying DME orders.

13.  Pursuant to the arrangements between NAVIWALA, WILLIAMSKY, LEVIT, ADAMS, BURRUSS, and others, for each completed doctor's order that NAVIWALA and his coconspirators transmitted to the DME companies that resulted in a Medicare payment, NAVIWALA and his coconspirators would be paid a kickback of between approximately $125 and $450 per brace, depending upon the type of brace (the larger the brace, the larger the kickback).

14.  In this manner, from at least as early as in or around February 2017 through in or around April 2019, NAVIWALA (through the NAVIWALA Supply Companies) received kickbacks of at least approximately $46,811,452 for completed doctors' orders provided to the WILLIAMSKY/LEVIT DME Companies and the ADAMS/BURRUSS DME Companies. For example, from on or about September 12, 2018, through on or about November 7, 2018, WILLIAMSKY and LEVIT, based in New Jersey, caused one of the WILLIAMSKY/LEVIT DME Companies based in New Jersey to provide NAVIWALA kickbacks of approximately $550,000 in exchange for completed doctors' orders for DME.

15.  As a result of the kickback scheme, Medicare paid the WILLIAMSKY/LEVIT DME Companies and the ADAMS/BURRUSS DME Companies at least approximately $101,291,115 in reimbursements for the completed doctors' orders that were procured by NAVIWALA and his coconspirators.

---

[3] Telemedicine, in general, is used by health care providers, such as physicians, to evaluate, diagnose, and treat patients remotely—without the need for an in-person visit-by using telecommunications technology, such as the internet or telephone to interact with a patient.