## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Hon. Michael E. Farbiarz |
| v. | Criminal No. 24-99 |
| RAHEEL NAVIWALA, | |
| Defendant. | |

## RAHEEL NAVIWALA'S
## REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS PRETRIAL MOTIONS

FORD O'BRIEN LANDY LLP

Jamie Hoxie Solano
Bryan W. McCracken
275 Madison Ave., Fl. 24
New York, NY 10016
T: (212) 858-0040
jsolano@fordobrien.com
bmccracken@fordobrien.com

*Counsel for Defendant Raheel Naviwala*

## TABLE OF CONTENTS

I.      The government does not identify a false or misleading statement and just describes a kickback several different ways ....................................................................................1

II.     The government ignores that this is, if anything, a regulatory interest involving nothing more than non-cognizable transactions that Medicare would have otherwise avoided ...........................................................................................................................2

III.    The government does not explain how its heavy reliance on medical necessity does not render the Indictment vague as applied here ...........................................................4

IV.     The government has confirmed the substantive counts are not properly brought in New Jersey ..................................................................................................................7

V.      Counts One and Seven are multiplicitous and will prejudice Mr. Naviwala ................9

VI.     The government does not explain how Mr. Naviwala can prepare a defense without a bill of particulars on the two issues requested ............................................................10

VII.    The Court should order that the investigating and prosecuting federal offices that helped prosecute co-conspirators that the DNJ intends to rely on in this case are a part of the prosecution team or, in the alternative, should order a hearing on the issue .....15

VIII.   The Court should order the government to review and identify from its own files for Rule 16 and *Brady* materials as Mr. Naviwala has even uncovered highly exculpatory materials embedded within the government's recent productions ..............................19

IX.     The government has not addressed its obligation to produce *Giglio* material for non-testifying coconspirators or whether material has been destroyed ..............................21

CONCLUSION...........................................................................................................................22

## *TABLE OF AUTHORITIES*

Page(s)

Cases

*Ciminelli v. United States*,
  598 U.S. 306, 315 (2023) ................................................................................... 3

*United States v. Alexandre*,
  2022 WL 16798756 (S.D.N.Y. Nov. 8, 2022) ................................................. 16

*United States v. Barnaby*,
  2021 WL 2895648 (E.D.N.Y. July 8, 2021) .................................................... 9

*United States v. Bolos,*
  104 F.4th 562 (6th Cir. 2024) ........................................................................... 3

*United States v. Cabrales*,
  524 U.S. 1 (1998) .............................................................................................. 8

*United States v. Coburn*,
  439 F. Supp. 3d 361 (D.N.J. 2020) ............................................................. 11, 14

*United States v. Earnest*,
  536 F. Supp. 3d 688 (S.D. Cal. 2021)............................................................... 9

*United States v. Eisenberg*,
  773 F. Supp. 662 (D.N.J. 1991) ...................................................................... 14

*United States v. Franklin-El*,
  554 F.3d 903 (10th Cir. 2009)........................................................................... 6

*United States v. Garcia*,
  2022 WL 1535378 (7th Cir. May 16, 2022) .................................................... 6

*United States v. Gupta*,
  848 F. Supp. 2d 491 (S.D.N.Y. 2012) ............................................................ 16

*United States v. Hoffert*,
  949 F.3d 782 (3d Cir. 2020)............................................................................. 6

*United States v. Ikoli*,
  2017 WL 396681 (S.D.N.Y. Jan. 26, 2017).................................................... 11

*United States v. Janati*,
  237 F. App'x 843 (4th Cir. 2007)..................................................................... 6

*United States v. Lallande*,
  2023 WL 5035317 (D.N.J. Aug. 8, 2023) ....................................................... 8

*United States v. Langford*,
  946 F.2d 798 (11th Cir. 1991).......................................................................... 9

*United States v. Loy*,
  237 F.3d 251 (3d Cir. 2001).............................................................................. 5

*United States v. Mattia,*
  2024 WL 2834154 (D.N.J. June 3, 2024) ................................................................. 4

*United States v. McLean,*
  715 F.3d 129 (4th Cir. 2013) ............................................................................. 5, 6

*United States v. Menendez,*
  137 F. Supp. 3d 688 (D.N.J. 2015) ....................................................................... 8

*United States v. Minaya,*
  2019 WL 1615549 (D.N.J. Apr. 16, 2019) .......................................................... 18

*United States v. Nachamie,*
  91 F. Supp. 2d 565 (S.D.N.Y. 2000) ................................................................... 14

*United States v. Ogba,*
  526 F.3d 214 (5th Cir. 2008) ............................................................................... 9

*United States v. Perez,*
  280 F.3d 318 (3d Cir. 2002) ................................................................................ 8

*United States v. Porat,*
  76 F.4th 213 (3d Cir. 2023) ................................................................................ 3

*United States v. Reed,*
  639 F.2d 896 (2d Cir. 1981) ................................................................................ 9

*United States v. Risha,*
  445 F.3d 298 (3d Cir. 2006) .............................................................................. 18

*United States v. Salyer,*
  2010 WL 3036444 (E.D. Cal. Aug. 2, 2010) ...................................................... 19

*United States v. Savin,*
  2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ......................................................... 11

*United States v. Sher,*
  2024 WL 3617295 (3d Cir. Aug. 1, 2024) ............................................................ 5

*United States v. Viloski,*
  557 F. App'x 28 (2d Cir. 2014) ............................................................................ 2

*United States v. Webber,*
  255 F.3d 523 (8th Cir. 2001) ............................................................................... 9

Defendant, Raheel Naviwala, respectfully submits this reply memorandum in further support of his pretrial motions.

**I.    The government does not identify a false or misleading statement and just describes a kickback several different ways.**

As established in his opening brief, the Indictment fails to adequately plead fraud counts because it does not identify the fraudulent misrepresentations at issue, which the Indictment must do when charging fraud. *See* Mov. Br., ECF No. 49, at 7-13. The government's argument in response says many things, but it too fails to identify the fraudulent misstatements at issue. The government points to its problematic paragraph that is charged in the disjunctive (¶ 4.b.), but this paragraph does not identify a misstatement, much less a misstatement that the sole defendant in this case knew was false. Contrary to the government's characterization, that paragraph of the Indictment *does not* allege that Mr. Naviwala violated healthcare benefit programs—he is not mentioned anywhere in paragraph 4.b. And the government makes no attempt to defend what false statement could possibly be identified by Counts Five and Six. The government's characterization of the Indictment's allegations in its opposition is at odds with the language of the Indictment itself. For example, the government claims that paragraphs 4(c)-(f) allege "how bogus DME orders were procured," but these paragraphs do not contain *any* allegations that could even remotely be understood to allege that these doctor's orders were, as the government puts it in its brief, "bogus." The government's creative liberties describing the Indictment's allegations highlights further that the Fraud Charges as pleaded in the Indictment cannot be defended.[1]

---

[1] The government's reliance on allegations involving "sham" agreements is a red herring. The Indictment does not allege that these agreements were provided to anyone (much less a "victim") or that they were part of alleged deceit on a "victim." They are, at most, allegations about individuals undertaking actions so they would not be detected. That is not a substitute for a false or misleading statement made for the purpose of inducing a victim.

The cases the government argues this Court should follow instead of *Mattia* are not compelling on this point. The government cites to *Hickman* but fails to acknowledge that Judge Kugler found that there were several paragraphs of the Indictment that explained what the false statements were and, in that case, the scheme involved prescriptions that were fake because the individuals had never seen a doctor. *See* Gov't Ex. A at 30 (Court relaying that: "[a]ll the individuals, the people who had these drugs prescribed in their name without ever having seen a doctor, the Government says they've identified all those individuals for you."). Nor does Judge Kiel's decision in *Johnston* help the government on this point. Judge Kiel evaluated a vagueness argument where the indictment contained several allegations that explained the fraud—specific allegations relating to billing for prescriptions when co-pays were never collected and allegations relating to manipulating the ingredients in compound medications to maximize reimbursement. *See* Gov't Ex. B at 67 (order on "the vagueness argument"). Judge Kiel acknowledged that "there's a lot of allegations about fraudulent representations that were made." *Id.* Here, there are no allegations about fraudulent representations.

## II. The government ignores that this is, if anything, a regulatory interest involving nothing more than non-cognizable transactions that Medicare would have otherwise avoided.

Mr. Naviwala established that the Fraud Charges should be dismissed because the Indictment does not allege that counterparties failed to receive the benefit of the bargain, and any interest that was harmed was a regulatory interest, not a property interest. Mov. Br. at 13-18. In response, the government creates a straw horse to knock down by dedicating much of its opposition to a belabored, lengthy treatise on *Ciminelli*. The government argues that *Ciminelli* is "inapplicable," Gov't Opp. Br. at 12, but does not address the Supreme Court's reference to *United States v. Viloski*, 557 F. App'x 28 (2d Cir. 2014)—a case about nondisclosure of self-dealing—as

2

an example of something that should no longer be cognizable under the federal fraud statutes. *See Ciminelli v. United States*, 598 U.S. 306, 315 (2023).

The government also chooses to ignore completely *Cleveland, Kelly, Alladawi*, all based on the argument that a regulatory interest—even a regulatory interest involving property or money—is not a cognizable property interest. The government's silence on this point speaks volumes: an interest in not paying for a "taintedly obtained" brace otherwise prescribed by a medical doctor is plainly a regulatory concern, not a traditional property interest. The government also does not meaningfully address Judge Krause's concurring opinion in *Porat*, and the cases cited therein that make clear that even where there are transactions involving *money*, a scheme that merely causes a "victim" to enter into a transaction they would avoid is not cognizable. *See United States v. Porat*, 76 F.4th 213, 227 (3d Cir. 2023) (concurrence).  That is all that is alleged here.

The government, again, takes substantial liberties with its charging instrument in attempting to characterize the Indictment as something other than alleging a transaction that Medicare would otherwise avoid or a harm to its regulatory interest. As highlighted above, Mr. Naviwala is not alleged to have "misrepresented one's eligibility to obtain a contract."[2] Gov't Opp. Br. at 14. There are no misrepresentations alleged in the Indictment. Mr. Naviwala is alleged to have provided completed doctor's orders to DME Companies, who in turn, are alleged to have shipped the devices to patients and submitted claims based on those orders that health care benefit

---

[2] Curiously, the government wants the Court to pay attention to a Sixth Circuit case that is currently being petitioned for Supreme Court review, *United States v. Bolos*, but in that case, the Sixth Circuit acknowledged that "charging [a defendant] with fraud to obtain the contracts" is something that "cannot support a mail-fraud charge." 104 F.4th 562, 570 (6th Cir. 2024). The fraud alleged in in the *Bolos* case consisted of additional allegations from the "fraud" set forth in the Indictment and the Sixth Circuit did not address the difference between a regulatory concern and a traditional property interest.

programs would have otherwise avoided due to a regulatory concern. The Indictment also does not allege that "beneficiaries may have received DME"—it alleges that the DME Companies did in fact ship DME to patients after a valid doctor's prescription was provided to the insurers. Ind. at 9-10.

The government strains even further when it contends that the doctor's orders were alleged to be "fake." The Indictment contains no such language. The term "completed doctor's order" is specifically defined in the Indictment, and nowhere in that definition is there an allegation that the orders were made-up or fake. Quite the opposite, the Indictment alleges that a "completed doctor's order" included a prospective patient's name, contact information, insurance information, and "a doctor's order or prescription for a DME [brace] for that particular patient." Ind. at 1-2. It is not clear what is meant by the Indictment's vague allegation that DME Companies would bill these doctor's orders to health care benefit programs "without regard for" medical necessity, but it is clear that this allegation is not in any way the same thing as alleging that the doctor's prescriptions that made up a "completed doctor's order" were fake or made-up.[3]

### III. The government does not explain how its heavy reliance on medical necessity does not render the Indictment vague as applied here.

As Judge Martinotti aptly noted, the concept of something being "medically unnecessary" is vague. *See United States v. Mattia*, 2024 WL 2834154, at \*7 (D.N.J. June 3, 2024). This is especially true in a case like this where the sole defendant's alleged conduct involves providing actual doctor prescriptions for specific patients to DME companies. In response, the government relies on a circular argument—that the Indictment's reliance on the term "medically unnecessary" does not render the charges vague because the Indictment sets forth the fraud, which, in turn, rests

---

[3] Further, there is nothing in the Indictment to suggest that Mr. Naviwala or any coconspirator knew that these doctor's orders were actually "fake."

on whether the scheme involved submitting prescriptions that were "medically unnecessary." The government fails to explain how or why one would not "guess" or "differ" as to the meaning of what is "medically unnecessary," which it now has noticed a witness to provide "expert" testimony on the issue. Criminal liability against a lay person cannot depend on the government being able to find a doctor to engage in medical disagreements with doctors who issued prescriptions. These charges as applied plainly violate due process. *See United States v. Loy*, 237 F.3d 251, 262 (3d Cir. 2001).

The government's attempt to point to other, different cases where the statute, as applied to those sets of facts, was not vague has no bearing here.[4] An as-applied challenge must be considered in light of the charged conduct. But all of the cases cited to by the government involved conduct that has nothing to do with Mr. Naviwala's charged conduct. The cases the government relies on all involved charges against the individuals responsible for attesting to medical necessity, rested on extreme facts, or the indictment specifically explained why something was not medically necessary:[5]

> In *United States v. McLean*, 715 F.3d 129 (4th Cir. 2013), the charges were against a doctor who voluntarily resigned his privileges from a hospital after it was uncovered that a representative sample of his procedures revealed that he had performed inappropriate heart stents in half of the sampled patients and it was

---

[4] The government's reference to the Third Circuit's affirmance of Mr. Sher's sentence is misplaced. The Third Circuit did not affirm his conviction. Mr. Sher did not challenge his conviction on appeal, the Third Circuit did not evaluate it or any of these arguments, and the only issue the Third Circuit addressed related to his sentence. *See United States v. Sher*, 2024 WL 3617295 (3d Cir. Aug. 1, 2024) (affirming the court's "judgment of sentence").

[5] Notably, the government is only able to cite to one case from the District of New Jersey, with very distinguishable facts, in support of its argument that applying the statute this way is not void for vagueness (and this in stark contrast to Judge Martinotti's note in *Mattia* that the term is obviously vague). The *Johnston* case has not yet proceeded to trial, survived a Rule 29 motion, and has not been tested at the Third Circuit. If anything, the government's list of cases shows that their application of the statute is very different from the way in which this statute is traditionally understood and applied by other prosecutors.

5

specifically alleged that the "false statement charges related to specific records in which McLean was alleged to have willfully misrepresented the level of stenosis in patient arteries." *Id.* at 133.

- In *United States v. Johnston, et al*, Crim. No. 20-800, (D.N.J.) discussed above, the charges are against several defendants who ran a compound medication pharmacy and the Indictment expressly laid out that the defendants directed the pharmacy to place "compound medication combinations on its prescription pads and sent compounded medications to patients based on the amount of money that insurance would pay for a particular combination of ingredients," "without disclosing to patients or their health care providers that the combination of ingredients was selected to maximize the insurance reimbursement rather than serve the medical needs of the patients." *Id.* at ECF No. 1 ¶ 29.

- In *United States v. Garcia*, 2022 WL 1535378, (7th Cir. May 16, 2022), the charges were against a doctor who "signed off on more than 900 allergy tests with limited justification for their necessity; he had little communication with the nurse practitioners whom he supervised; and he told the FBI that many tests were "financial decisions motivated by money." *Id.* at *2.

- In *United States v. Franklin-El*, 554 F.3d 903 (10th Cir. 2009), the charges were against a defendant who ran a nonprofit drug and alcohol treatment program authorized to bill Medicaid and the defendant "admitted knowing [that the nonprofit] could not bill Medicaid for services other than drug or alcohol treatment or for non-addicted clients" but "also knew [that the nonprofit] did bill Medicaid even in cases where no drug or alcohol services were provided," she "affirmatively signed children up for [the nonprofit], obtaining their Medicaid cards for billing purposes," and "admitted knowing the children treated were not drug addicted and were receiving only support services, yet forms listing her as the screener indicated the children had addiction problems." *Id.* at 908-09.

- In *United States v. Janati*, 237 F. App'x 843 (4th Cir. 2007), the charges were against a neurologist and his wife that ran his practice, who engaged in fraud over the course of seven years because "in billing insurers for nerve conduction tests, they inflated the number of tests actually performed," they "billed insurers for brain wave studies that were never conducted" and they "'upcoded' office visits, meaning that when they billed insurers, they represented that an office visit was more involved or complex than it actually was, justifying a higher billing rate." *Id.* at 845.

The government also argues that it should be excused from appropriately pleading an Indictment that is not void for vagueness because, according to the government, "the scienter requirement in the charged statutes mitigates any purported due process concerns." Gov't Opp. Br.

6

at 19. The government cites to a case that has nothing to do with healthcare fraud—Section 1521—a slander statute. *Id.* (citing *United States v. Hoffert*, 949 F.3d 782, 788 (3d Cir. 2020)). This argument should be rejected because the argument at issue in *Hoffert* had to do with vagueness *of the scienter requirement itself*, not another element of the offense. The government cannot be excused from pleading a false or misleading representation required for its fraud charges on the vague and arbitrary concept of "medical necessity" merely because it *must also* adequately plead scienter. The government confuses and collapses two different elements that must be charged in the Indictment. Mr. Naviwala is challenging "medical necessity" as vague and ambiguous in violation of due process because it is the crux of the government's fraud allegations. *Hoffert*, by contrast, involved an argument that the slander statute's scienter standard—knowing or having reason to know—rendered the statute vague. *See* 949 F.3d at 787. That inquiry has nothing to do with medical necessity—a challenge separate and apart from the scienter element of these charges.

## IV. The government has confirmed the substantive counts are not properly brought in New Jersey.

The government's venue theory is that "Williamsky and Levit sent kickback payments from, received completed doctors' orders in, submitted Medicare claims from, and received reimbursement in the District of New Jersey." Gov't Opp. Br. at 22-23 (cleaned up). That would be fine if Mr. Naviwala were challenging venue for the conspiracy claims in this motion (which he is not). The government's reliance on Williamsky's and Levit's conduct for the substantive charges is both misplaced and misleading because the *substantive charges are not alleged to involve Williamsky's or Levit's DME Companies or their conduct*. The substantive charges, instead, rest on the acts of DME Company 1, DME Company 2, DME Company 3, and DME Company 5, each of which is specifically defined as being controlled by California residents Charles Burruss and Armani Adams. *See* Ind. at 2 (defining Charles Burruss and Armani Adams as residents of

*California* who "operated, and/or had a financial or controlling interest in" DME Company 1-5). In other words, none of the substantive counts rely on the New Jersey actors, *all* rely on the California entities and residents:

| Count | DME Company |
|-------|-------------|
| 2 | DME Company 1 |
| 3 | DME Company 2 |
| 4 | DME Company 3 |
| 5 | DME Company 5 |
| 8 | DME Company 1 |
| 9 | DME Company 2 |
| 10 | DME Company 3 |

*See* Ind. at 11-12, 17.

Each substantive count must have proper venue in New Jersey; the government's inclusion of two New Jersey residents in a sprawling conspiracy is not sufficient to provide essential conduct in New Jersey for each substantive count charged. The government's admissions in its brief coupled with the facially obvious defect in the Indictment, magnifies that the "basis for the motion is . . . reasonably available," "can be determined without a trial on the merits," and, thus, the substantive counts should be dismissed. *See generally* Fed. R. Crim. P. 12(b)(3)(A)(i); *United States v. Perez*, 280 F.3d 318, 334 (3d Cir. 2002) ("defendant may object to venue by raising its absence in a pre-trial motion."); *see also United States v. Cabrales*, 524 U.S. 1, 10 (1998) (affirming dismissal of counts before trial for improper venue). The government certainly does not cite to a case to the contrary.[6]

---

[6] In *Lallande*, the defendant was charged with a conspiracy charge and aggravated identity theft, and the indictment contained numerous allegations of conduct in New Jersey that supported both charges. *United States v. Lallande*, 2023 WL 5035317, at *1 (D.N.J. Aug. 8, 2023). And in *Menendez*, the defendant was also alleged to have engaged in acts in New Jersey. *United States v. Menendez*, 137 F. Supp. 3d 688, 691 (D.N.J. 2015).

### V.  Counts One and Seven are multiplicitous and will prejudice Mr. Naviwala.

Counts One and Seven are multiplicitous because they charge the same conduct—down to the penny. The government does not meaningfully suggest otherwise. The government ignores completely *United States v. Ogba*, which addressed nearly identical charges to the ones present in this case. 526 F.3d 214 (5th Cir. 2008). As mentioned in our moving brief, the *Ogba* decision is instructive because it involved nearly identical charges, nearly the same loss amount, and the conduct is virtually identical. Mov. Br. at 27.

The government seemingly agrees that these two counts are based on identical conduct, but instead claim that "the proper time to bring a multiplicity challenge is at sentencing." Gov't Opp. Br. at 27. But Rule 12 plainly permits multiplicity challenges where, as here, multiplicity is clear from the Indictment, and courts grant multiplicity challenges where, as here, permitting both claims to proceed forward will prejudice the defendant. *See United States v. Barnaby*, 2021 WL 2895648, at *9 (E.D.N.Y. July 8, 2021) ("Where, as here, the indictment charges defendants with violating the same statutory section in multiplicitous counts, the court may dismiss the multiplicitous charges prior to trial."); *see also United States v. Earnest*, 536 F. Supp. 3d 688, 703 (S.D. Cal. 2021) ("at the motion to dismiss stage, [defendant] is entitled to file, and have the Court rule, on the issue of multiplicity").

Courts routinely recognize that where, as here, the government has charged several counts for the same conduct, such practice runs the risk of prejudicing the jury by creating the impression of more criminal activity than what actually occurred. *See, e.g.*, *United States v. Reed*, 639 F.2d 896, 905 n.6 (2d Cir. 1981) (stating that a court ordering election is most appropriate when the mere making of the charges would prejudice the defendant with the jury); *United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991) ("[A] multiplicitous indictment may

9

improperly prejudice a jury by suggesting that a defendant has committed several crimes—not one."); *United States v. Webber*, 255 F.3d 523, 527 (8th Cir. 2001) (noting the risk of prejudice resulting from a multiplicitous indictment being presented to the jury may warrant the court ordering the government to "elect among or consolidate counts at trial."). The likelihood of prejudice is especially true in a case like this where Mr. Naviwala may be prosecuted on a ten-count Indictment—much of which seems to be predicated on acts of others.

**VI.   The government does not explain how Mr. Naviwala can prepare a defense without a bill of particulars on the two issues requested.**

The government's arguments as to why it should not be required to provide a bill of particulars in a sprawling case involving no identified misstatements and an unlimited number of co-conspirators should not provide the Court with any assurance that Mr. Naviwala will be able to prepare a defense if his request is not granted. To be clear, Mr. Naviwala is asking for two discrete items in a sea of terabytes of data: (1) the misstatements the government is relying on; and (2) identification of his co-conspirators. Nothing in the government's opposition identifies how he is supposed to ascertain these key pieces of information without a bill of particulars.

The government's suggestion that the Indictment itself is sufficient because Mr. Naviwala will know "most of" the co-conspirators the government intends to rely on is exactly the point. There are an enormous number of individuals and companies identified in the government's discovery materials over a period of several years—many of whom and which had nothing to do with Mr. Naviwala. As we understand it, co-conspirator Adams cooperated against a large number of individuals who were later charged as his co-conspirators. Separately, co-conspirator Burruss has also cooperated against a large number of other individuals who were charged as Burruss's co-conspirators. The Indictment against Mr. Naviwala names both Adams and Burruss as his co-

conspirators. Mr. Naviwala, thus, faces potential evidence at trial from a myriad of individuals who allegedly worked with Adams and Burruss.

Without a bill of particulars, Mr. Naviwala cannot possibly understand who the government thinks are *his* criminal co-conspirators in its sprawling conspiracy and who are not. He cannot form a defense while he has no way of knowing who the government contends he worked with as a part of the alleged illegal scheme and with whom the government intends to say he agreed and shared criminal intent. For example, the government mentions that Mr. Naviwala has "public access" to "admissions of his coconspirators," and references Kareem Memon. Gov't Opp. Br. at 33.  But the government *ignores* that Kareem Memon is not mentioned anywhere in the Indictment, his conduct is not identified in the Indictment, and there is no way (aside from this opposition brief) that Mr. Naviwala would know whether the government intended to rely on Mr. Memon as a co-conspirator at trial. This is especially true where, as here, the government is also arguing that it was not in a joint investigation with the U.S. Attorney's Office which—along with the District of New Jersey ("DNJ")—prosecuted Mr. Memon and ultimately handled his sentencing hearing.

Nor is the government's explanation that it has produced lots of discovery in this case, some (but certainly not all) of which has been bates numbered, helpful to permit Mr. Naviwala to understand who the government believes are his co-conspirators or what the purported fraudulent statements were. *See United States v. Coburn*, 439 F. Supp. 3d 361, 383 (D.N.J. 2020) (despite recognizing that "discovery, . . . in this case, has been extensive," the court ordered the government to disclose the identities of co-conspirators the government planned to introduce as evidence); *United States v. Ikoli*, 2017 WL 396681, at *5 (S.D.N.Y. Jan. 26, 2017) (holding that even though a five-page indictment charging nine defendants had "mountains of documents," that was insufficient to notify defendants of the nature of the charges against them); *United States v. Savin*,

11

2001 WL 243533, at *4 (S.D.N.Y. Mar. 7, 2001) (finding that because the "indictment [did] not provide detailed notice of the conspiracy allegations and the means and methods of the conspiracy" the voluminous discovery that ensued left the defendant to "guess which of the numerous transactions [were] alleged by the government to be improper") (cleaned up).

The government's most recent productions have all but ensured that Mr. Naviwala will have zero clarity on the two most important parts of the government's case. Between October 25, 2024, and November 8, 2024, the government has produced an additional staggering *three terabytes* of data; two terabytes in October and one terabyte in November. This discovery includes a company's entire computer server, which has been produced without any index, without any clarity as to its significance to the government's case and has not been produced in a manner that allows the defense to meaningfully access any of the data within. This data dump should not defeat Mr. Naviwala's request for a limited bill of particulars on two topics.

The government cites to a reverse proffer PowerPoint presentation that it presented to prior counsel *prior to* indicting Mr. Naviwala, which the defense has not been able to locate in discovery. This Court has already pointed out to the government that a pre-indictment presentation is not discovery. If the government intends to rely on this presentation to defeat a bill of particulars, it should, at minimum, produce the PowerPoint. But, again, unless the government is representing that it intends to present only those theories and evidence outlined in this mysterious PowerPoint, there is nothing stopping the government from completely hoodwinking Mr. Naviwala at trial with a host of "co-conspirators" he never worked with, are not mentioned in the presentation, and he is unprepared to defend against, along with  a litany of statements he never thought were false or misleading that he will have to find a way to defend against in short order. In a case like this, which

12

apparently involves second guessing the judgment of medical professionals, this is not something that Mr. Naviwala will be able to do if the government waits until trial to reveal its cards.

In a backdoor effort to provide the Court with information it should not be considering in connection with this motion, perhaps in the hopes that the Court will overlook some of the government's glaring legal errors surrounding its indictment, the government attaches an interview report of Mr. Naviwala. This report serves no purpose, is plainly introduced to color the Court's judgment, and obviously should not defeat a bill of particulars request because *the government is prohibited from relying on this interview in its case-in-chief at trial*.[7] The government seems to think this is a joke, glibly claiming that Mr. Naviwala could prepare the bill of particulars himself "if it really were essential to [his case.]" *Id.* at 34. The entire point of a bill of particulars is not to supplant a defendant's knowledge of the underlying events at issue, it is, instead, to provide clarity on how the government has chosen to charge its case so a defendant can adequately prepare his defense to meet it. Mr. Naviwala cannot possibly understand what the government intends to rely on at trial—the government has made sure of it.

The government's claim that identifying the false statements at issue and the co-conspirators would present an "enormous burden" rings hollow. Mr. Naviwala is not asking the government to divulge the entirety of its case, he is asking for limited, essential information necessary for him to prepare a defense and to avoid prejudicial surprise at trial in the face of such a sprawling, vague Indictment. This request is not being made while the government's investigation is at its inception—the charged conduct *ended* in 2019, and the government waited

---

[7] The government's decision to submit this interview report to the Court to oppose Mr. Naviwala's legal motions has significant and important implications and will be addressed in a separate filing. But the government's characterization of this interview is not accurate; if the government's case was limited to this interview, they would be preparing for an acquittal.

until this year to indict. Nor is this a case where there is any concern of violence or witness intimidation; the case involves alleged healthcare kickbacks. There is no question that knowing who the government believes are co-conspirators in a sprawling conspiracy and knowing what is alleged to be false when no statements are listed in the Indictment, are important pieces of information. Under these circumstances, a "request for a Bill of Particulars cannot be denied merely because providing the information would divulge details of the Government's evidence." *United States v. Eisenberg*, 773 F. Supp. 662, 689 (D.N.J. 1991).

The government's references to doctors' orders and patient data that Mr. Naviwala sent to his co-conspirators, along with "marketing agreements used to disguise the illegal kickbacks . . . and false marketing invoices" should not relieve it from providing a bill of particulars. Gov't Opp. Br. at 35. As discussed above, the doctors' orders are not alleged to be fake. The patient data is not alleged in the Indictment to be "misstatements." And the marketing agreements and invoices *are not alleged to have been provided to or intended for any "victim" in furtherance of the fraud*— they cannot be a false statement that forms the basis of any of the fraud charges. There are no allegations in the Indictment that these marketing agreements were undertaken for any purpose other than to conceal conduct from authorities—that is a completely separate and distinct purpose from a fraudulent or false statement that can give rise to a federal fraud claim. The government's fear in having to identify the actual misstatements at issue in this case is likely due to the fact that there are no false or misleading statements actually at issue in the government's case. If that is the case, Mr. Naviwala and the Court should not be dragged through trial for that revelation.

Courts have ordered the government to provide a bill of particulars identifying co-conspirators in cases similar to this. *See Coburn*, 439 F. Supp. 3d at 383 (holding, despite "extensive" discovery, that the government must disclose the identities of any declarant co-

conspirators); *United States v. Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (in a case charging Medicare fraud, finding that "the Government must provide the defendants with the names of any known unindicted co-conspirators . . .  because there are a large number of co-conspirators and the alleged conspiracy operated for a significant period of time (more than three years)"). And, here, if this Court is not going to dismiss the Fraud Charges for the reasons above, Mr. Naviwala must know going into trial what the government is going to point to as a knowingly misleading statement.  Therefore, Mr. Naviwala's request for a bill of particulars should be granted.

## VII.  The Court should order that the investigating and prosecuting federal offices that helped prosecute co-conspirators that the DNJ intends to rely on in this case are a part of the prosecution team or, in the alternative, should order a hearing on the issue.

The government's boilerplate assurance that it knows and will comply with its discovery obligations is inconsistent with its conduct to date. The government is going to proceed to trial against Mr. Naviwala using co-conspirators who the DNJ investigated and prosecuted with other offices, all while the DNJ is rejecting the notion that these offices are a part of the relevant prosecution team. This is inconsistent with their discovery obligations and is inconsistent with DNJ's prior assurance to the Court that it was being "proactive" in collecting materials from other offices (an assurance that the government completely ignores in its opposition brief).

The government attempts to minimize its joint efforts with investigators and prosecutors in Florida and California, notwithstanding that it jointly worked with those offices to secure plea agreements with cooperating defendants in this case. *See* Mov. Br. at 32-33. The government's opposition provides very little in terms of actual facts that could help this Court determine whether there is a joint investigation, but instead represents the following:

- Operation Brace Yourself "was a coordinated takedown of multiple investigations, not one joint investigation." Gov't Opp. Br. at 38.

15

- Mr. Naviwala's coconspirators "were targets of separate investigations and prosecuted in other districts," but "this Office did not work jointly with those offices on those investigations" and "those Offices were not involved in the investigation of defendant." Gov't Opp. Br. at 40.

The government does not seem to appreciate that the ultimate decision that a different office would be the forum for several of these coconspirators' sentencing hearings does not defeat the joint-investigation inquiry because "it is enough that the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions, because the purpose of *Brady* is to apprise the defendant of exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant." *United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012).

The government simply provides no facts that would assist this Court in determining whether there were joint investigations between the offices identified in the defense's opening brief. *But see United States v. Alexandre*, 2022 WL 16798756, at *4 (S.D.N.Y. Nov. 8, 2022) (Cronan, J.) (ordering the U.S. Attorney's Office to file detailed factual affidavits that addressed joint investigation inquiry). It also does not address its prior representations to this Court and defense counsel at arraignment, but it appears that whatever "proactive" assurances were made before did not actually occur. *See* Gov't Opp. Br. at 40 (referencing "preliminary conversations with" other U.S. Attorney's Offices). Nor does the Office provide the Court with any facts to refute the obvious point that these investigative agencies are all federal and have easy access to sister field offices' case files in other parts of the country.

The representation that New Jersey did not work jointly on investigative work with agents and prosecutors in California and Florida is flatly contradicted by the material cited in our opening brief, including the FBI reports that reflect that the interviews were cross-designated and filed among different field offices' case files (a fact the government does not address in its opposition).

16

It is also clear that the *prosecutors themselves* worked jointly together in the investigation that gave rise to the prosecution against Mr. Naviwala and his coconspirators. For example, on March 26, 2021, an AUSA in Florida learned of information about Mr. Naviwala. The same day, the Florida AUSA sent the U.S. Attorney's Office in New Jersey an email telling the AUSA in New Jersey that one of her cooperating defendants had information about Mr. Naviwala, offered to share records about the cooperating defendant, and asked that if New Jersey wanted to speak with him, *to let Florida know so they could "find someone to monitor/observe from MDFL":*



And, the government even now is working jointly with the offices in California and Florida. The U.S. Attorney's Offices in both California and Florida are coordinating with the DNJ here while the DNJ interviews and works with those offices' cooperating defendants for this trial and whose

17

surrender dates have been extended on consent and/or at the behest of these other offices to make this endeavor easier for these prosecutors. *See, e.g.*, *United States v. Adams*, 21-cr-0800 (ECF No. 57) (S.D. Cal. Sept. 27, 2024) (joint motion of government to extend cooperating defendant's surrender date in light of, in part, his potential testimony in Mr. Naviwala's trial here); *United States v. Pitter*, 22-cr-60240 (ECF No. 49) (S.D. Fla. July 3, 2024) (requesting unopposed that defendant's surrender date be continued because he is engaged in ongoing cooperation with the government, including meeting with DNJ to provide testimony at the trial in this case). Under these circumstances, the government's refusal to address the facts that the defense has raised, coupled with the defense providing several examples of joint investigative work, reflects at minimum that the defense has made a threshold showing that a hearing is warranted to fully develop the record regarding the actual nature of the joint investigative efforts between New Jersey, California, and Florida. *See generally United States v. Risha*, 445 F.3d 298, 306 (3d Cir. 2006) (vacating conviction and remanding for further factfinding in light of potential joint investigation); *United States v. Minaya*, 2019 WL 1615549, at *12-13 (D.N.J. Apr. 16, 2019) (holding evidentiary hearing to determine whether foreign authorities engaged in a joint venture with U.S. Attorney's Office in investigation).

This is not academic. It is important because there is reason to believe that this will affect Mr. Naviwala's rights at trial: the government's entire case rests on co-conspirators' testimony that the Office has conveniently worked with other districts to prosecute so they do not have the obligation of ensuring that Mr. Naviwala receives exculpatory material or discovery material to his defense involving these actors. They cannot be permitted to rest their case on the shoulders of individuals whose dirty laundry is conveniently kept in the closets of other offices.

18

Accordingly, the defense respectfully requests that the Court order the government to collect, review, and produce material from the prosecution and investigative field offices from California and Florida as members of a joint investigation. In the alternative, Mr. Naviwala requests that the Court conduct an evidentiary hearing so the record is clear on the joint nature of these office's efforts.

**VIII.    The Court should order the government to review and identify from its own files for Rule 16 and *Brady* materials as Mr. Naviwala has even uncovered highly exculpatory materials embedded within the government's recent productions.**

Mr. Naviwala requested in his opening brief that this Court require the government to review its own files—including files from an unknown, but apparently "related" investigation—for Rule 16 and *Brady* material. The government has not reviewed those files and identified Rule 16 or *Brady* material. Instead, the government seemingly has engaged in a mass data dump on the defense, producing an entire company's server in a manner that the defense cannot meaningfully search or review. *See, e.g.*, *United States v. Salyer*, 2010 WL 3036444, at \*5 n.6 (E.D. Cal. Aug. 2, 2010) ("the Supreme Court has placed the initial *Brady/Giglio* duty on the government, and the [court] is not free to assign it to [the defendant]," because "the duty of the defendant to exercise diligence does not negate the duties of the prosecution in the first instance to affirmatively look for and disclose *Brady/Giglio*"). The government cannot shift its discovery obligations onto the defense by flooding us with data instead of meaningfully reviewing and identifying *Brady* material and Rule 16 discovery in materials it possesses.

The government's opposition tries to minimize the importance of the information that Mr. Naviwala is demanding (and, frankly, what the government should have produced at the start of this case). There is *significant* reason to doubt that the government properly collected this evidence during its investigation, and it has a high likelihood of containing *Brady* material. Recent

19

productions the government made after we filed our pending motion have revealed highly exculpatory evidence.

For example, on September 10, 2024, defense counsel requested that the government provide us with recordings of patients requesting medical services the government is now alleging were not medically necessary. *See* Ex. 3 to Mov. Br. at 1. In response, the government baldly assured us that they were complying with their discovery obligations and, as to the recordings, stated the following:

> Third, you request that the Government obtain and produce "over a hundred thousand" patient recordings that you contend reflect patient requests for medical services. The Government has produced a number of patient recordings (*see, e.g.*, USA-00494179 through USA-00494245; USA-00494412 through USA-00494540), *but is not aware of other patient recordings discoverable in this matter*.

*See* Ex. 4 to Mov. Br. at 2. The defense responded with this pending motion to compel on October 4, 2024. On October 29, 2024, the government produced two of the patient recordings and prescriptions. What was contained in that limited production was shocking.

Count Three rests on a purported "medically unnecessary" claim for "Beneficiary 2." The government's interview report characterizes that when agents went and spoke to Beneficiary 2, she received braces that she did not want, was "scammed," and was taken advantage of. The government's newly produced discovery, however, reflects that none of this is true. The requested recording makes clear that Beneficiary 2 requested these braces, and she plainly stated that she wanted to use their network doctor to prescribe her those braces. Moreover, the newly produced prescription reflects that a doctor actually did prescribe her with some—but not all—of the items she had requested, reflecting medical judgment and necessity. It is not clear why the government has not dismissed Count Three in light of this plainly exculpatory evidence establishing that

20

Beneficiary 2—who is completely not credible—was not the subject of a medically unnecessary claim.

The defense does not know from where or when the government received this newly produced evidence. The importance of these recordings is enormous because it squarely refutes the Indictment's allegations and the information memorialized in the agent's interview report. At minimum, the government must immediately provide and produce these materials for the remainder of the claims it wishes to base this prosecution on—it is plainly *Brady* material. These claims are not identified anywhere for Mr. Naviwala, so the government is the only party who is in a position to identify, collect, and produce this exculpatory data. Accordingly, Mr. Naviwala respectfully requests that the Court specifically order the government to review material in its possession, custody, and control that could be exculpatory or material to the defense and specifically identify and produce such material to Mr. Naviwala no later than 45 days prior to trial.

## IX. The government has not addressed its obligation to produce *Giglio* material for non-testifying coconspirators or whether material has been destroyed.

The government has ignored completely Mr. Naviwala's request that it be ordered to collect and produce *Giglio* and *Brady* material of all of its coconspirators it intends to rely upon at trial, including its hearsay declarants. Mov. Br. at 41. The government also ignores completely our request that, in light of the staleness of this investigation and the many other offices involved, the government undertake a review and disclose whether any messages, emails, or communications on this case were not preserved to determine whether an adverse inference is appropriate. Mov. Br. at 42. This Court should order both pieces of requested relief in light of the government's silence on both issues and for the reasons set forth in our opening brief.

21

### *CONCLUSION*

Mr. Naviwala respectfully requests that the Court dismiss the Fraud Charges; dismiss the substantive counts for lack of venue; dismiss Count 7 as multiplicitous of Count 1; and order the government to: (1) file a bill of particulars that identifies the false statements and co-conspirators at issue in this case; (2) comply with its discovery obligations as if the Florida and California investigating field offices and U.S. Attorney's Offices are part of its prosecution team; (3) identify *Brady* and Rule 16 material in its possession no later than 45 days prior to trial; (4) produce *Giglio* material for coconspirators who are not testifying; and (5) disclose whether any messages were not preserved.

Dated: November 22, 2024

Respectfully submitted,

FORD O'BRIEN LANDY LLP


*/s/ Jamie Hoxie Solano*
Jamie H. Solano (NJ Bar No. 426422024)
Bryan McCracken (NJ Bar No. 416362022)
275 Madison Avenue, 24th Floor
New York, NY 10016
T: (212) 858-0040
jsolano@fordobrien.com
bmccracken@fordobrien.com


*Counsel for Raheel Naviwala*

22

## *CERTIFICATE OF SERVICE*

The undersigned certifies that, on November 22, 2024, I caused to be served, via the Court's Electronic Filing System ("ECF"), a copy of the Reply Memorandum in Further Support of Raheel Naviwala's Pretrial Motions on counsel of record in this case.

*/s/ Jamie Hoxie Solano*
Jamie H. Solano

23