**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

     v.

RAHEEL NAVIWALA

Hon. Michael E. Farbiarz

Crim. No. 24-99

**REPLY BRIEF IN SUPPORT OF**
**THE GOVERNMENT'S MOTIONS *IN LIMINE***

VIKAS KHANNA
Acting United States Attorney
970 Broad Street
Newark, New Jersey 01702
(973) 645-2700

On the Brief:
Elaine K. Lou
Matthew Specht
Aaron L. Webman
Assistant United States Attorneys

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

    I.    The Government May Seek to Use Defendant's Proffer Statements at Trial Pursuant to the Terms of the Proffer Agreement................................................... 1

    II.   The Court Should Preclude Defendant from Introducing His Own Out-of-Court Statements Including Statements to Law Enforcement......................... 4

    III.  Statements of Coconspirators Should Be Admitted as Non-Hearsay.............. 5

    IV.  Recorded Phone Calls of Non-Testifying Medicare Beneficiaries Should Be Admitted as Non-Hearsay. .......................................................................... 7

    V.   Evidence of Government Witnesses' Character and Prior Convictions Should Only Be Allowed if Admissible Under Rule 609. .............................................. 8

    VI.  The Court Should Bar Defendant from Referring to the Consequences of Convictions. ..................................................................................................... 9

    VII. The Court Should Bar Defendant from Introducing Evidence or Argument Regarding the Government's Charging Decisions for Other Parties.............. 10

    VIII.    The Court Should Preliminarily Rule on the Admissibility of the Government's Business Records.................................................................... 10

CONCLUSION................................................................................................................. 14

## TABLE OF AUTHORITIES

*Cases*

*Bourjaily v. United States*, 483 U.S. 171 (1987);.........................................................5

*Giglio v. United States*, 405 U.S. 150 (1972) ...............................................................8

*Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996)...........................................................1

*Shannon v. United States*, 512 U.S. 573 (1994)...........................................................9

*United States v. Blanco*, 884 F.2d 1577 (3d Cir. 1989)................................................8

*United States v. Bobb*, 471 F.3d 491 (3d Cir. 2006)) ...................................................5

*United States v. Burch*, 156 F.3d 1315 (D.C. Cir. 1998...............................................3

*United States v. Ford*, Crim. No. 04-0562 (JBS), 2005 WL 1129497 (D.N.J. May 11, 2005) ............................................................................................................... 4

*United States v. Hogeland*, Crim. No. 05- 162, 2013 WL 12357424 (E.D. Pa. Apr. 3, 2013) ............................................................................................................... 3

*United States v. Raisley*, 466 F. App'x 125, 130 (3d Cir. 2012)...................................3

*United States v. Strickland*, Crim No. 21-00311 (BRM), 2024 WL 2873931 (D.N.J. June 7, 2024) ................................................................................................... 9

*United States v. White*, 692 F.3d 235 (2d Cir. 2012) ................................................10

*United States Department of Justice v. Julian*, 486 U.S. 1 (1988) ............................8

*Rules*

Federal Rule of Criminal Procedure 16 .....................................................................14

Federal Rule of Evidence 401......................................................................................7

Federal Rule of Evidence 403......................................................................................7

Federal Rule of Evidence 801......................................................................................5

Federal Rule of Evidence 803......................................................................................7

Federal Rule of Evidence 902 ..............................................................................10, 14

***Treatises***

5 Weinstein's Federal Evidence § 803.06.......................................................................... 7

**INTRODUCTION**

On December 20, 2024, the Government filed certain motions *in limine*. ECF No. 66 (the "Motions"). On January 6, 2025, Defendant filed a memorandum of law in opposition to the Motions. ECF No. 77 (the "Opposition"). The Government respectfully submits this reply brief in support of its Motions.

**ARGUMENT**

**I.    The Government May Seek to Use Defendant's Proffer Statements at Trial Pursuant to the Terms of the Proffer Agreement.**

Defendant's Opposition again asks the Court for license to present, without consequence, evidence and arguments that are inconsistent with his proffer statements. The Court should deny this request.

The purpose of the Motions, as with all motions *in limine*, is to put the Court on notice of the issues and provide the Court with the facts and law it will need to render decisions at trial without unnecessary delay or disruption once the jury is seated. *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."). Defendant faults the Government for describing Defendant's proffer statements in its Motions before Defendant has had an opportunity to open the door at trial. Opp. at 1-2. But pretrial disclosure of the statements is necessary to serve the purpose of a motion *in limine.* Because Defendant fully confessed to the crimes charged in the Superseding Indictment, the admission or exclusion of the proffer statements will be a critical

point of contention at trial. The parties inevitably will seek rulings during trial from the Court about whether arguments or evidence offered on Defendant's behalf open the door to the proffer statements. The Court cannot rule without knowing the content of those statements. Learning the relevant facts for the first time at trial would be inefficient and would undermine the purpose of the motions *in limine*.[1]

Defendant argues that the Proffer Agreement is invalid and none of the proffer statements should be admitted because the agreement was not knowing or voluntary. The Government addressed the voluntariness of the Proffer Agreement in its opposition to Defendant's proffer motion. *See* ECF No. 70 at 1 and 8. Defendant voluntarily chose to proffer and was not coerced to do so; he was represented by counsel; and he signed a contract whose meaning was plain on its face. Defendant invokes the declaration of his former counsel as evidence that he understood the Proffer Agreement allows the Government to use his proffer statements against him at trial, but he supposedly did not understand it could be used in response to pre-trial legal arguments. Opp. at 3. Defendant would thus have the Court believe that he would not have proffered—and would have declined the potential opportunity to cooperate—if he had known that doing so would interfere with his attorneys' later ability to make inconsistent pretrial arguments on his behalf. That claim is absurd

---

[1] The majority of Defendant's remaining arguments are directed at the Government's use of the proffer statements in relation to the motion for a bill of particulars and are not relevant to the Government's motions *in limine*, so the Government does not respond to all of those arguments here. Those arguments should be rejected for the reasons articulated in the Government's opposition to Defendant's proffer motion. *See* ECF No. 70.

on its face, and the Court should reject it. *See United States v. Hogeland*, Crim. No. 05- 162, 2013 WL 12357424, at *10 (E.D. Pa. Apr. 3, 2013) ("Defendant's contention— that he willingly proffered knowing that it could restrict at trial his 'representations through counsel,' but would not have proffered had he known it might restrict counsel's trial cross-examination—is absurd."); *see also* ECF No. 70 at 8 (citing *United States v. Burch*, 156 F.3d 1315, 1322 (D.C. Cir. 1998) (casting doubt on such "fine distinctions")).

Defendant closes with a list of legal arguments that he should be free to make at trial without opening the door to the proffer statements. Opp. at 8 (listing "arguments that the government must meet its burden of proof, that it has not proven an essential element of the offenses, and that its evidence and thirteen cooperating witnesses have credibility issues"). The Government largely agrees. Defendant can argue that the Government must prove each element of each count beyond a reasonable doubt without triggering the proffer agreement. *See, e.g., United States v. Raisley*, 466 F. App'x 125, 130 (3d Cir. 2012) (quoting *United States v. Barrow*, 400 F.3d 109, 119 (2d Cir.2005)) ("Among other things, [the defendant] could have argued that the 'facts put in evidence by the prosecution are insufficient to permit the jury to find the elements of the crime proved.'"). What Defendant cannot do—without opening the door to the proffer statements—is to argue or imply, or offer evidence that implies, that a fact is untrue if Defendant admitted that fact in his proffer. *Id.* ("Because of the clear contradiction between [the defendant's] proffer statement and his opening statement at trial, the District Court did not abuse its discretion by admitting [the defendant's] proffer statement"). The court in *Ford* drew this distinction neatly:

3

> In other words, argument by defense counsel asserting factual innocence of the Defendant, or commenting upon factually exculpatory evidence, will waive the immunity protection of ¶ 1 of the Proffer Agreements. An argument by defense counsel upon legal requirements for conviction in a criminal case, such as holding the Government to the standard of proof beyond a reasonable doubt on each essential element or reminding the jury of the meaning of Defendant's plea of "not guilty" (but without asserting Defendant's factual innocence) will not waive the immunity protection of ¶ 1 of the Proffer Agreements.

*United States v. Ford*, Crim. No. 04-0562 (JBS), 2005 WL 1129497, at *6 (D.N.J. May 11, 2005); *see also* ECF No. 70 at 5-6 (discussing *Ford*).

For example, Defendant can argue in summation, without breaching the Proffer Agreement, that Armani Adams's testimony should not be trusted because he has committed fraud and stands to benefit from cooperating. But, if defense counsel asks questions on cross-examination that suggest Adams is lying about having bought completed doctors' orders from Defendant or if counsel argues in closing that the jury should not believe Adams's testimony about buying completed doctors' orders from Defendant, that would trigger the proffer agreement. *Id.* ("[I]f factual innocence is implied through the defense's cross-examination of a Government witness, then Defendant may be presenting evidence inconsistent with his proffer statements, and such statements would become admissible to that extent, pursuant to ¶ 4 of the Proffer Agreements.").

## II. The Court Should Preclude Defendant from Introducing His Own Out-of-Court Statements Including Statements to Law Enforcement.

Defendant does not contest the baseline rule that Defendant's out-of-court statements are hearsay and are generally inadmissible. *See* Mots. at 9-10. Defendant hasn't identified any of his own statements that might be admissible for some purpose

4

the Government has not anticipated. If Defendant does intend to offer his own out-of-court statements, the Court should require that he make an offer of proof and identify an applicable exception.

## III. Statements of Coconspirators Should Be Admitted as Non-Hearsay.

The Government expects to elicit testimony and offer documents that include statements by coconspirators made in furtherance of the conspiracies. The Government explained why certain categories of statements are either not hearsay, fall under exceptions to the hearsay rules, or will be offered for a non-hearsay purpose. *See* Mots. at 11-15. Defendant contends it is premature to decide the motion but does not contest the law that applies to the Court's decisions on whether to admit these categories of evidence. He does not, for example, rebut the controlling caselaw providing that, "[t]o satisfy Rule 801(d)(2)(E), the Government simply needs to show by a preponderance of the evidence that: (1) a conspiracy existed when the statement was made; (2) both the declarant and the defendant against whom the statement is offered were members of that conspiracy; and (3) the statement was made during the course of, and in furtherance of, the conspiracy." Mots. at 12 (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *United States v. Bobb*, 471 F.3d 491, 498-99 (3d Cir. 2006)). The Government has no quarrel with the approach of deciding the admissibility of out-of-court statements upon viewing the relevant exhibits, but, when making those assessments, the Court should be guided by the governing law as set forth in the Government's Motions.

While Defendant does not dispute these legal principles, he does claim not to know which exhibits the Government "seeks to have admitted as coconspirator statements in furtherance of a conspiracy." Opp. at 9. But the same day that the Government filed its Motions, it also provided Defendant with its pre-marked exhibits and accompanying exhibit list with clearly defined categories, including emails (the 4000 series) and text messages (the 5000 series). The descriptions that accompany each exhibit in the Government's exhibit list for those categories (unlike Defendant's exhibit list) includes the sender and recipient of each email and the parties to each text message thread. The categories are further subdivided by email custodian through whom, in general, the Government expects to introduce the exhibits after establishing that that the witness was Defendant's coconspirator. For example, GX4501 through 4518 are emails sent or received by Kenneth Pitter, a coconspirator named in the Superseding Indictment, and the Government intends to introduce these emails through him after establishing his role in the conspiracies. Similarly, GX 5401 through GX 5406 are text message exchanges between Defendant and Armani Adams, another named coconspirator, and group text threads that include Defendant, Adams, and others. The Government intends to introduce these statements through Adams after establishing his role, and the roles of their other interlocutors, in the conspiracy. There is no mystery which exhibits the Government intends to offer as coconspirator statements.

6

## IV.    Recorded Phone Calls of Non-Testifying Medicare Beneficiaries Should Be Admitted as Non-Hearsay.

Defendant makes a flurry of arguments under Federal Rules Evidence 401 and 403 related to the Government's motion to admit recorded calls with beneficiaries. Opp. at 11. The Government intends, as it said in the Motions, to offer the beneficiary recordings through a "witness from the telehealth company that received these recordings" who would "testify that the telehealth providers used the recordings to justify issuing doctors' orders for these beneficiaries' braces." Mots. at 15.[2] The recordings are all relevant to show the cursory and superficial nature of these calls, and the Government will connect the doctors' orders associated with the calls to Defendant's charged crimes. The Government does not intend to play every recording for the jury, but intends to offer them in a large batch, play examples, and allow the jury to listen to as many of the balance as it finds helpful.[3]

Defendant's argument about the alternative basis for admission, Rule 803(4), misunderstands the purpose of that rule. A patient's statements when they are seeking medical treatment are generally reliable because a patient wants her provider to know the truth about her condition. *See* 5 Weinstein's Federal Evidence § 803.06 ("This hearsay exception is premised on the theory that the patient's statements to a physician are likely to be reliable because the patient has a selfish

---

[2] The Government included two witnesses on its witness list from the telemedicine company RediDoc associated with these recordings: Stephen Luke and David Laughlin.

[3] The Government is not aware of anything salacious in the recordings with Medicare beneficiaries about joint pain. *See* Opp. at 11.

motive to be truthful: the effectiveness of medical treatment depends upon the accuracy of the information provided"). If the Court finds that these statements are being offered for their truth, they are presumptively reliable because the patients were seeking medical treatment. The Government's position that the patients' statements are reliable is entirely consistent with the Government's theory that the telehealth doctors prescribed braces regardless of whether the beneficiary's (presumptively true) statements justified that prescription.

**V.    Evidence of Government Witnesses' Character and Prior Convictions Should Only Be Allowed if Admissible Under Rule 609.**

Defendant does not contest the general framework set forth in the Motions for determining the admissibility of evidence of witnesses' character and prior convictions.[4] Defendant does, however, show a keen interest in inquiring into Kareem Memon's criminal history. Opp. at 13-16. The Government concedes that the fact of the drug conviction is relevant for the purpose of explaining one reason why Defendant and Memon used nominee owners when they formed the DME supply companies and that the felon-in-possession conviction is potentially relevant for the purpose of impeachment as a motive for cooperating.

---

[4] Defendant suggests that the cooperating witnesses' presentence reports ("PSRs") are discoverable. *See* Opp. at 12 (claiming that the Government's motion is premature because "the government has not produced presentence reports."). They are not. "There is a general presumption that courts will not grant third parties access to the presentence reports of other individuals." *United States v. Blanco,* 884 F.2d 1577, 1578 (3d Cir. 1989) (citing *U.S. Dep't of Justice v. Julian,* 486 U.S. 1, 108 (1988)). The Government is aware of its obligation under *Giglio v. United States*, 405 U.S. 150 (1972) and its progeny and will make any required disclosures pursuant to the amended scheduling order.

## VI.    The Court Should Bar Defendant from Referring to the Consequences of Convictions.

The "well-established" principle that a jury should "reach its verdict without regard to what sentence might be imposed," *Shannon v. United States*, 512 U.S. 573, 579 (1994), has been applied beyond the narrow circumstances Defendant noted. *See* Opp. at 18. In fact, another court in this district recently granted the Government's motion *in limine* to preclude references to the consequences of conviction, notwithstanding the fact that Government was preparing to call a cooperating witness. *United States v. Strickland*, Crim No. 21-00311 (BRM), 2024 WL 2873931, at *9, *11 (D.N.J. June 7, 2024) (citing, among others, *Shannon*, 512 U.S. at 579).

Defendant should have the opportunity to question the cooperating witnesses about the benefits they received in exchange for cooperating. The Government intends to inquire into these benefits on direct examination. This can be done without reference to the penalties that apply to the particular crimes charged in the Superseding Indictment. To do otherwise would be misleading in an environment where defendants—whether they plead guilty or proceed to trial—rarely receive sentences at or near the statutory maxima or consecutive sentences. It appears defense counsel plans to use cross examination to suggest that Defendant faces a maximum sentence of 125 years, while, for example, Armani Adams was sentenced to 30 months. The Court should not allow Defendant to mislead the jury in that way.

## VII.   The Court Should Bar Defendant from Introducing Evidence or Argument Regarding the Government's Charging Decisions for Other Parties.

Defendant asks the Court not to exclude preemptively any evidence or argument bearing on the Government's charging decisions. Opp. at 19-20. Though the Second Circuit in *White* declined to adopt a *per se* exclusionary rule, the court emphasized that district courts must weigh the "relevance and probative value" of the proffered evidence. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012). If Defendant intends to offer evidence regarding the Government's charging decisions, it must make an offer of proof and allow the Court to evaluate its admissibility beforehand. In turn, the Court should consider that the Government's charging decisions about a third party are typically irrelevant to a defendant's guilt or innocence and thus inadmissible. *See* Mots. at 21-23.

## VIII.   The Court Should Preliminarily Rule on the Admissibility of the Government's Business Records.

Defendant claims not to know what records the Government seeks to offer under Federal Rule of Evidence 902(11) or to have a copy of the certifications. As discussed above, on the same day that the Government filed its Motions, it sent Defendant its pre-marked exhibits and a searchable exhibit list. The exhibit list includes 21 documents described as records certifications, each of which appears in the list alongside the related business records, as shown in the chart below.

| Certification | Related Documents |
|---|---|
| GX 3128 – Qlarant Business Records Certification | GX 3123-3128 – Medicare Claims and Summaries for various DME Supply Companies |

10

| | |
|---|---|
| GX 6001a and 6001a – Certification for Fedwire Funds Service transaction records | GX 6001b – Wire data provided by the Federal Reserve Bank of New York |
| GX 6002a – Certification | GX 6002b-h – Records related to Bank of America Account Number ending in 6356 in the name of Raheel Ashraf Naviwala |
| GX 6003a – Certification | GX 6003b-d – Records related to all Banco Popular Accounts<br><br>GX 6004a-d – Records related to Banco Popular Account Number ending in 0573 in the name of B Positivo LLC<br><br>GX 6005a-d – Records related to Banco Popular Account Number ending in 1219 in the name of NAVENTURES LLC<br><br>GX 6006a-e – Records related to Banco Popular Account Number ending in 1477 in the name of Ostrich Enterprises<br><br>GX 6007a-f – Records related to Banco Popular Account Number ending in 3070 in the name of Raheel A. Naviwala<br><br>GX 6008a-e – Records related to Banco Popular Account Number ending in 3259 in the name of Navtek LLC<br><br>GX 6009a-d – Records related to Banco Popular Account Number ending in 4242 in the name of B Positive National Blood Services San Juan LLC |

11

| | |
|---|---|
| | GX 6010a-e – Records related to Banco Popular Account Number ending in 6356 in the name of NAVCAP LLC<br><br>GX 6011a-n – Records related to Banco Popular Account Number ending in 7276 in the name of Fire Lyfe LLC<br><br>GX 6012a-e – Records related to Banco Popular Account Number ending in 8999 in the name of Raheel A. Naviwala, Y/O Rinad Naviwala |
| GX 6013a – Certification | GX 6013b-d – Records related to J.P. Morgan Chase Account Number ending in 5371 in the name of Albatross Enterprises LLC |
| GX 6014a – Certification | GX 6014b-d – Records related to J.P. Morgan Chase Account Number ending in 8252 in the name of Albatross Enterprises LLC |
| GX 6015a – Certification | GX 6015b-d – Records related to Oriental Bank Account Number ending in 30004 in the name of Raheel Ashraf Naviwala (ICN1413) |
| GX 6016a - Certification | GX 6016b-d – Records related to Oriental Bank Account Number ending in 2733 - Navtek LLC |
| GX 6017a – Certification 1<br><br>GX 6017b – Certification 2 | GX 6017 c-m – Records related to TD Bank Account Number ending in 9409 in the name of Elite Healthcare Solutions |

12

| | |
|---|---|
| GX 6018a - Certification | Gx 6018b-l – Records related to TD Bank Account Number ending in 9699 in the name of Parra Health Inc. |
| GX 6019a – Certification | GX 6019b-g – Records related to Wells Fargo Account Number ending in 1939 in the name of Parra Health Inc. |
| GX 6020a – Certification | GX 6020b-h Records related to Wells Fargo Account Number ending in 2026 in the name of The Prudent Group |
| GX 6021a – Certification | GX 6021b-e – Records related to Wells Fargo Account Number ending in 2369 in the name of Prime Medical Solutions LLC |
| GX 6022a – Certification 1<br><br>CG 6022b – Certification 2 | GX 6022c-p – Records related to Wells Fargo Account Number ending in 7734 in the name of Raheel Naviwala PA |
| GX 6023 a – Certification | GX 6023b-e – Records related to Wells Fargo Account Number ending in 7828 in the name of Brighton LLC |
| GX 6024a – Certification 1<br><br>CG 6024b – Certification 2 | GX 6024c-h – Records related to Wells Fargo Account Number ending in 8672 in the name of Quality Healthcare Solutions Inc. |
| GX 6025a – Certification | GX 6025b-f – Records related to Wells Fargo Account Number ending in 9963 in the name of The Paragon Group LLC |

13

The Government has also asked if defense counsel would stipulate to the admissibility of the financial records listed above but has not received an answer. Defendant's witness list noticed records custodians for the same banks. ECF No. 79 at 3. Not only does this show that Defendant knows what records the Government intends to offer, it also appears to signal both an unwillingness to stipulate and, paradoxically, an intention to admit the same records, given that Defendant has produced no discovery pursuant to Rule 16(b). A stipulation as to the nature and authenticity of these records seems far more reasonable and efficient.

If Defendant does not stipulate to the admissibility of these records and the Court does not admit them pursuant to Rule 902(11), the Government will issue trial subpoenas for custodians from each business listed above.

## CONCLUSION

The Government respectfully asks the Court to grant its various motions *in limine* for the reasons stated in its Motions and each individual section above.

Respectfully submitted,
VIKAS KHANNA
Acting United States Attorney


By: *s/ Aaron L. Webman*

Elaine K. Lou
Matthew Specht
Aaron L. Webman
Dated: January 13, 2025                Assistant United States Attorneys


14

## CERTIFICATE OF SERVICE

I certify that, on January 13, 2025, I caused service of the foregoing on all counsel of record through the Court's electronic filing system.

 s/ Aaron L. Webman
AARON L. WEBMAN
Assistant U.S. Attorney