## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RAHEEL NAVIWALA,<br><br>       Defendant. | Hon. Michael E. Farbiarz<br><br>Criminal No. 24-99 |

## RAHEEL NAVIWALA'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
## HIS MOTION TO STRIKE THE GOVERNMENT'S PROPOSED EXPERTS

FORD O'BRIEN LANDY LLP

Jamie Hoxie Solano
Ifedapo Benjamin
Bryan W. McCracken
275 Madison Ave., Fl. 24
New York, NY 10016
T: (212) 858-0040
jsolano@fordobrien.com
ibenjamin@fordobrien.com
bmccracken@fordobrien.com

*Counsel for Defendant Raheel Naviwala*

**Table of Contents**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT AND AUTHORITIES........................................................................................2

    I.      Dr. Johnson's Testimony Should Be Stricken Because the Government is Not
          Defending It ...........................................................................................................2

    II.     The Government Fails to Show That Mr. Quindoza's Rule 16 Disclosures Explain the
          Bases for His Opinions or Reflect a Complete Statement of His Anticipated
          Testimony.................................................................................................................2

    III.    Mr. Quindoza's Proposed Testimony is Not "Fact" or "Lay Opinion" Testimony
          Under Rule 701 ......................................................................................................6

    IV.    The Government Has Failed to Meet Its Burden Under Rule 702 .............................10

    V.     Mr. Quindoza Should Not Be Permitted to Testify That Certain Claims Data is
          "Unusual" Under Rule 403 ....................................................................................13

    VI.    The Court Should Not Permit Mr. Quindoza to Testify About 62 Summary Charts
          That He Created That the Government Failed to Produce Until The Evening of
          January 6th ..............................................................................................................14

CONCLUSION...........................................................................................................................15

**Table of Authorities**

Cases                                                                                                    Page(s)

*Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor*,
  57 F.3d 1190 (3d Cir. 1995) ............................................................................................. 7, 9

*Bank of China, New York Branch v. NBM LLC*,
  359 F.3d 171 (2d Cir. 2004) ................................................................................................. 8

*Beltran v. InterExchange, Inc.*,
  2018 WL 2196054 (D. Colo. May 14, 2018) ........................................................................ 10

*In re Lincoln Nat'l COI Litig.*,
  620 F. Supp. 3d 230 (E.D. Pa. 2022) ................................................................................... 12

*United States v. Ahmed*,
  2016 WL 3647686 (E.D.N.Y. July 1, 2016) ........................................................................... 7

*United States v. Bressi*,
  2024 WL 3296938 (M.D. Pa. July 3, 2024) .......................................................................... 12

*United States v. Diaz*,
  951 F.3d 148 (3d Cir. 2020) .............................................................................................. 7, 9

*United States v. Jackson*,
  849 F.3d 540 (3d Cir. 2017) ................................................................................................. 7

*United States v. Leo*,
  941 F.2d 181 (3d Cir. 1991) ................................................................................................ 10

*United States v. Mavashev*,
  2010 WL 234773 (E.D.N.Y. Jan. 14, 2010) ........................................................................... 5

*United States v. Northington*,
  2012 WL 2873360 (E.D. Pa. July 12, 2012) ........................................................................... 4

*United States v. Perryman*,
  2024 WL 639332 (S.D.N.Y. Feb. 15, 2024) ........................................................................... 12

*United States v. Riddle*,
  103 F.3d 423 (5th Cir.1997) ................................................................................................. 8

*United States v. Stroud,*
  2022 WL 1063029 (N.D. Tex. 2022) ..................................................................................... 9

*United States v. Tuzman*,
  2017 WL 6527261, (S.D.N.Y. Dec. 18, 2017) ............................................................... 4

*United States v. Ulbricht*,
  2015 WL 413318 (S.D.N.Y. Feb. 1, 2015) ................................................................... 5

*United States v. Vega,*
  813 F.3d 386 (1st Cir. 2016)....................................................................................... 8

*United States v. White*,
  492 F.3d 380 (6th Cir. 2007) .................................................................................... 10

*United States v. Willner,*
  795 F.3d 1297 (11th Cir. 2015) .................................................................................. 8

*Whyte v. Stanley Black & Decker, Inc.*,
  514 F. Supp. 3d 684 (W.D. Pa. 2021) ...................................................................... 12


Rules

Fed. R. Evid. 403 ............................................................................................... 13, 14

Fed. R. Evid. 602 ..................................................................................................... 6

Fed. R. Evid. 701 ............................................................................................... 7, 8, 9

Fed. R. Evid. 702 ........................................................................................... 11, 12, 13

Defendant, Raheel Naviwala, respectfully submits this reply memorandum in further support of his motion to strike the government's proposed experts.

### *PRELIMINARY STATEMENT*

The government bears the burden of showing this Court that its proposed expert testimony was properly disclosed under Rule 16 and satisfies the thresholds of the Federal Rules of Evidence. But here, it has fallen far short of its burden. First, the government has abandoned trying to defend the proposed testimony of Dr. Johnson, so his testimony should be stricken. Nor does the government attempt to show that it complied with Rule 16's new, more onerous disclosure requirements for Mr. Quindoza.

Instead, the government suggests that Mr. Quindoza's proposed testimony about a complicated Medicare regulatory scheme involving various rules, regulations, bulletins, and pamphlets, should be considered fact testimony and appropriate lay opinion testimony. But the government seems to forget that fact and lay witness testimony requires personal knowledge on the part of the witness, something Mr. Quindoza lacks completely. He has no firsthand knowledge of the facts that give rise to this case. He is not an agent and he does not work for Medicare. In fact, several courts have held that permitting Mr. Quindoza specifically to testify as a fact witness is not appropriate. Which makes sense, because numerous courts have held that the personal knowledge requirement of Rule 701 cannot be satisfied by someone learning a complicated regulatory structure at their job, unrelated to the facts at issue at trial.

And the government fails completely to show this testimony is appropriate under Rule 702. The government only tries to defend a sliver of Mr. Quindoza's testimony as appropriate under Rule 702—his undisclosed analysis about certain claims data that he says is "unusual." But the government cites to the *old version of the Rule* and fails to show—as it now must as a

1

threshold matter before such testimony may be admitted—that it is more likely than not that all four subsections of Rule 702 are met. This is especially true of the reliability of the purported principles and methods that Mr. Quindoza applied, and that his opinion reflects a reliable application of these principles of methods to the facts here. The government has still not explained what Mr. Quindoza actually did, what dataset he compared this dataset to in concluding they were "unusual" and how there can be any assurance on the basis of the record before the Court that anything he testifies about will be reliable. Nor is this testimony appropriate—it is not probative of any of the pending charges whether Mr. Quindoza thinks claims data is "unusual," and it will almost certainly be confused for an opinion that it is "illegal." Accordingly, Mr. Naviwala's motion should be granted.

## ARGUMENT AND AUTHORITIES

### I.    Dr. Johnson's Testimony Should Be Stricken Because the Government is Not Defending It.

The government, after having wasted defense's resources moving to strike Dr. Johnson's testimony, has now determined that it does not feel like defending its disclosures for Dr. Johnson at this time, but would like the opportunity to do so in the future if something changes. Gov't Opp. at 1, ECF No. 74. The government's inability and unwillingness to defend Dr. Johnson's disclosures and anticipated opinion testimony should not leave the door open for them to try again in the future. For all the reasons set forth in Mr. Naviwala's opening brief, his motion to strike Dr. Johnson's testimony should be granted.

### II.    The Government Fails to Show That Mr. Quindoza's Rule 16 Disclosures Explain the Bases for His Opinions or Reflect a Complete Statement of His Anticipated Testimony.

The government provides little more than its own *ipsit dixit* in support of its argument that Mr. Quindoza's disclosure provides a full and complete statement of his opinions along with

2

the bases and reasons for them. A cursory review of the disclosure makes clear that this is not true. *See* ECF No. 67-2 (Oct. Disclosure of Quindoza Testimony). Mr. Quindoza intends to testify about a complex Medicare regime, yet he has not disclosed the underlying support for his statements and opinions about what is and is not allowed under the Medicare program. To the extent his opinions are not actually based on any of Medicare's rules or regulations, but instead his own whims, such testimony would be misleading, unhelpful, and dangerous.

That is especially true of the 62 "summary charts" that Mr. Quindoza prepared as a part of his "analysis." The government's brief makes clear that these charts are not appropriate for lay testimony and plainly are the result of some expertise—they involve some sort of undisclosed sorting and filtering process of data in certain ways and clearly forms the basis of his anticipated expert testimony—the government has made clear that Mr. Quindoza hopes to testify about *how the data in each of the charts* "informed his opinion." Gov't Opp. at 11. This process appears nowhere in Mr. Quindoza's Rule 16 disclosures, and these charts were not produced to the defense until January 6th—long *after* the October deadline (and the government's deadline for trial exhibits). And it is not clear what was done to create these charts at all.

Now, the government discloses for the first time in its opposition brief:

Quindoza might testify that though there were approximately two dozen types of knee braces that could be billed to Medicare, it is unusual that the billing data shows that these 14 DME Supply Companies only ever billed for three of these brace types and that approximately 90% of the knee brace orders were for a single brace type.

*Id.* That opinion has *never* been disclosed prior to its inclusion in the government's opposition brief, and the basis for that conclusion has not been properly, timely disclosed to the defense. Even still, the government does not explain *why* this is, according to Mr. Quindoza "unusual."

If this Court permits Mr. Quindoza's untimely, still undisclosed testimony and introduction of 62 summary charts, Mr. Naviwala will be severely prejudiced. As discussed

3

further below, the government has abandoned all hope of justifying its Rule 16 disclosures beyond the limited expert opinion testimony that is based on his "analysis" of claims data for 14 DME Companies, "the DME claims are unusual" for some reasons that are listed and some reasons that remain undisclosed. *See* ECF No. 67-2 at 6.

Mr. Quindoza (or the prosecutors) selected 14 DME Companies for some undisclosed reason. He looked at data for these companies for undisclosed periods of time to analyze against another undisclosed subset of claims data that he thinks is "normal." We are now less than a month from trial, with several other important disclosure deadlines upcoming, and still the government has not provided a complete statement of Mr. Quindoza's opinions, much less the bases or reasons for them. It is too late for Mr. Naviwala to retain an expert to challenge Mr. Quindoza's opinions and it is too late for defense counsel to meaningfully review his analysis which, again, remains a secret from the defense. The government's behavior is precisely why Rule 16 was amended, and its conduct should not be permitted.

The government's disclosures would be insufficient even under the prior version of Rule 16. *See, e.g., United States v. Northington*, 2012 WL 2873360, at *6 (E.D. Pa. July 12, 2012) ("Meaningful rebuttal means being permitted to test not only the conclusions of [the] expert, but also the testing procedures used to reach those conclusions."); *United States v. Tuzman*, 2017 WL 6527261, at *11, (S.D.N.Y. Dec. 18, 2017) ("It was not sufficient to disclose [the expert witness's] baseline conclusions . . . ; rather, [Defendant] needed to disclose the formulas or calculations that [the expert] used to reach his conclusions."). Even under the prior version of Rule 16, "failure to provide the required level of detail as to the expert's opinions and the bases, reasons, and sources of those opinions can . . . lead to preclusion." *United States v. Ulbricht*, 2015 WL 413318, at *5-6 (S.D.N.Y. Feb. 1, 2015) (finding Rule 16 disclosures

insufficient because "while [it] contains additional high-level description of the testimony, and the Court might be able to guess as to various opinions, it contains no real opinions, no bases for opinions, no analysis, no methodology"); *see also United States v. Mavashev*, 2010 WL 234773, at *2 (E.D.N.Y. Jan. 14, 2010).

Nor should this Court accept the government's feigned ignorance and give the government another bite at the apple to fix something that was due back in October, especially where, as here, the defense put the government on notice several months ago that its disclosures were completely deficient and the government tactically chose to do nothing. Rule 16 was specifically amended to require the government to appropriately disclose opinion testimony by a specified date. The U.S. Attorney's Office has proceeded to trial on numerous occasions since the Rule's 2022 amendment. The prosecution team is led by a seasoned supervisor, and the entire team is being supervised by several other supervisors, all of whom have recent trial experience. The problem is not that they did not know better, *it is that they do not think they will be required to timely comply*. The government's failure to disclose the bases for Mr. Quindoza's opinions do not appear to be the result of mistake. Mr. Quindoza is a professional expert witness who has seemingly testified for the government over a hundred times. As highlighted in Mr. Naviwala's opening brief, reports he has prepared in other cases contain far more fulsome disclosures than what the government chose to do here. His testimony should be stricken.

### III. Mr. Quindoza's Proposed Testimony is Not "Fact" or "Lay Opinion" Testimony Under Rule 701.

Perhaps because the government knows it did not timely comply with Rule 16's expert disclosure requirements, the government now tries to say that Mr. Quindoza's testimony about Medicare regulations and rules is "fact" testimony or "lay opinion" testimony under Rule 701.

First, the government is incorrect that Mr. Quindoza's proposed testimony is fact testimony. Under Rule 602, a witness is only permitted to testify "if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Mr. Quindoza does not have any personal knowledge of the facts at issue in this case. Instead, he was provided information from the government. While that is permissible for an expert witness, it is not appropriate for a fact witness. Nor are various regulations, rules, recitations of various bulletins and policy books the appropriate subject of fact testimony. Mr. Quindoza does not work for Medicare and did not process the claims at issue in this case—that is not his job (nor has it been for over 40 years). The government's disclosures plainly reflect that they do not anticipate that Mr. Quindoza will merely testify as a fact witness. Instead, the government intends to elicit from Mr. Quindoza several opinions, including the following:

- The reasons behind Medicare's rules and regulations;

- Medicare beneficiaries "typically" have the choice as to which provider will provide services or items prescribed to them;

- His opinion about payment arrangements that he thinks are bribes and/or kickbacks;

- His opinion about Medicare's rules about telehealth services; and

- His opinions about Medicare's reimbursement policies for braces.

*See* ECF No. 67-2 at 3-5.

The government has failed to meet it burden to show that any of Mr. Quindoza's testimony is appropriately introduced under Rule 701 as lay opinion testimony. *See United States v. Diaz*, 951 F.3d 148, 156 (3d Cir. 2020) (government bears the burden to show testimony is appropriate under Rule 701). Rule 701 permits laypersons to testify about opinions when certain conditions are met.

6

The government's brief omits the first requirement of lay opinion testimony. The testimony must be "rationally based on the witness's perception," i.e., it must be based on the witness's "first-hand knowledge or observation." Fed. R. Evid. 701(a) & Fed. R. Evid. 701 advisory committee's note to 1972 proposed rules. This requirement "demands more than the witness have perceived something firsthand." *Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Engr.*, 57 F.3d 1190, 1201 (3d Cir. 1995). Rather, it requires "that the witness's perception provide a truly rational basis for his . . . opinion." *Id.* The requirement "means that a witness is only permitted to give her opinion or interpretation of an event when she has some personal knowledge of that incident." *United States v. Jackson*, 849 F.3d 540, 553 (3d Cir. 2017).[1] As discussed above, Mr. Quindoza has no firsthand knowledge of any of the facts of this case. He did not participate in the investigation of Mr. Naviwala and he did not process any of the claims that are at issue in this case. On that basis alone, he is not an appropriate witness to give lay opinion testimony.

The government's assurance that this type of testimony is routinely admitted is at odds with legal authority evaluating precisely the type of testimony the government is seeking to introduce here. The First Circuit has stated the obvious in *United States v. Vega*:

> [T]he fact that [the witnesses] had knowledge of Medicare law through their occupations does not make it "personal knowledge" qualifying as lay expertise under Rule 701. As stated above, our use of the term "personal knowledge" refers, generally, to the product of a witness's process of observing patterns and drawing logical conclusions. An understanding of what Medicare law allows and forbids cannot be developed through this process.

---

[1] In *United States v. Ahmed*, 2016 WL 3647686, *12 (E.D.N.Y. July 1, 2016), which the government relies on, the witness was an employee of the entity that was responsible for processing claims in New York. That is not Mr. Quindoza's role and will be *very misleading* to the jury to suggest that he speaks for Medicare.

7

813 F.3d 386, 395 (1st Cir. 2016). *United States v. Vega* is hardly an outlier. In *Bank of China, New York Branch v. NBM LLC*, the Second Circuit held that it was an error to allow a Bank of China employee, to offer lay opinion testimony under Rule 701 where the witness's testimony was "not a product of his investigation, but rather reflected specialized knowledge he ha[d] because of his extensive experience in international banking." 359 F.3d 171, 181-82 (2d Cir. 2004); *see also United States v. Riddle,* 103 F.3d 423, 429 (5th Cir.1997) (finding bank auditor needed to be qualified as expert in order to testify that defendant's conduct fell outside of sound banking practices because witness "functioned not as a witness relaying his own observations so much as a knowledgeable bank examiner who could provide the jury with an overview of banking regulations and practices and who could authoritatively condemn [the defendant's] actions").

Indeed, several courts have rejected the government's attempt to allow Mr. Quindoza personally to testify as a lay person for precisely this reason. The government ignores completely *United States v. Willner*, where the Eleventh Circuit found that permitting Mr. Quindoza specifically to testify as a lay witness on these issues *was an abuse of discretion*. 795 F.3d 1297, 1318 (11th Cir. 2015). And in *United States v. Stroud*, the court similarly considered Mr. Quindoza's proposed testimony in that case and held that it was *not* lay testimony but instead was expert testimony. 2022 WL 1063029, at *5 (N.D. Tex. 2022).

Additionally, Rule 701's requirement that the opinion be "helpful" "demands more than the opinion have a bearing on an issue in the case." *Asplundh*, 57 F.3d at 1201. In order to be "helpful," "an opinion must be reasonably reliable," and the Court is to "rigorously examine the reliability of the lay opinion[.]" *Id.* The government has not provided anything to suggest that Mr. Quindoza's musings are reliable—they have not provided the defense or the Court with any

8

methodology or bases to test how his explanation of Medicare's regulatory scheme should be trusted. And there is no reason to think that Mr. Quindoza's opinion that claims data is unusual is reasonably reliable. Again, he does not process claims data and has not done so since 1983—long before the conduct charged in this case. Further, in the Third Circuit, "a lay witness may not interpret clear statements understandable to a jury[.]" *Diaz*, 951 F.3d at 157. Here, either the Medicare regulations and requirements are "clear statements" that are understandable, or they are based on "technical or specialized knowledge" rendering them completely inappropriate for lay opinion testimony.

Rule 701 does not permit testimony based on "technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c); *see also Diaz*, 951 F.3d at 156. This requirement was included specifically to stop what the government is trying to do here: "the amendment . . . ensures that a party will not evade the expert witness disclosure requirements . . . by simply calling an expert witness in the guise of a layperson." Fed. R. Evid. 701 advisory committee's note to 2000 amendment. Here, there is no question that Medicare's regulatory reimbursement system is the subject of "technical or other specialized knowledge." Several courts have recognized that the "Medicare program operates within a complex and intricate regulatory scheme and we cannot say that the average lay person, including any Medicare beneficiary, commands a working knowledge of Medicare reimbursement procedures." *United States v. White*, 492 F.3d 380, 403 (6th Cir. 2007); *see also Beltran v. InterExchange, Inc.*, 2018 WL 2196054, at *3 (D. Colo. May 14, 2018) (excluding opinion testimony where witness wanted to testify about his knowledge of technical regulations and statutes).

The government's cases do not provide a compelling reason to disregard what several circuit courts have rejected. It cites to *United States v. Leo*, for the proposition that lay opinion

testimony can be based on a witness's review of business records, but ignores that this is only the case where the witness is going to testify about business records of which the witness actually has firsthand knowledge. Gov't Opp. at 4 (citing *United States v. Leo*, 941 F.2d 181, 193 (3d Cir. 1991)). The government is not proposing that Mr. Quindoza testify about an investigation that he undertook as a fact witness. They prepped and prepared him as an expert witness, failed to give appropriate disclosures, and now want to be excused from him giving disclosures but still be permitted to testify about a complex regulatory scheme (without disclosing the source of what he is going to say that scheme entails).

## IV.    The Government Has Failed to Meet Its Burden Under Rule 702.

The government defends only Mr. Quindoza's analysis and opinion testimony about his "unusual claims" opinion as appropriately introduced under Rule 702. *See* Gov't Opp. at 9 (conceding that the only testimony the government seeks to admit under Rule 702 is "that certain DME supply companies associated with Defendant were outliers"). The government completely ignores that Rule 702 was amended in 2023 and the government has failed to satisfy the requirements of the Rule. The government quotes the old version of Rule 702 and relies on outdated caselaw. Gov't Opp. at 7-8. Mr. Naviwala laid this out in his opening brief. Under the operative version of Rule 702, the government as the proponent of this testimony must demonstrate to the Court that it is more likely than not that all four requirements of Rule 702 have been met, including, now, that "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d). This is different and more onerous a requirement than the prior version of the Rule. There can be no question that Mr. Quindoza's October disclosure and the government's opposition brief do not reflect an opinion

10

that shows "a reliable application of the principles and methods to the facts of the case," nor has the government proven, as it must as a threshold issue, that the remaining requirements are met.

First, the government does not show how Mr. Quindoza's testimony about "unusual" claims data will help the trier of fact understand evidence or determine a fact at issue. The government wholly fails to tie how testimony about "unusual" claims data makes it more or less likely that Mr. Naviwala engaged in healthcare fraud—unless, of course, the government hopes that the jury will misunderstand this testimony and confuse "unusual" with "illegal." Nor does the government make any showing that Mr. Quindoza has specialized knowledge on the front of what is "unusual." It is clear that the government envisions Mr. Quindoza "testify[ing] that the type of analysis he performs could be a basis for further investigation or could give credence to pre-existing suspicions that fraud had occurred." Gov't Opp. at 15. In other words, the government intends to have Mr. Quindoza testify that fraud had occurred, i.e., this was illegal. That is not appropriate testimony. The government's explanation suggests that they intend to engage in completely inappropriate burden shifting. If the government elicits testimony that there is either a "basis for further investigation" or that there are suspicions that fraud occurred, the jury is going to be left with the impression that Mr. Naviwala needs to come up with an innocent explanation for why the data was unusual, notwithstanding that he has no burden to do so.

The government also does not try to explain what 90% of knee braces being a single type of brace have *anything* to do with medical necessity. These are claims that the brace companies are submitting reimbursement for—not the doctors prescribing them. And Mr. Quindoza's testimony that he thinks this "looks weird" is not helpful to the jury. The jury should not care whether Mr. Quindoza thinks anything is unusual. He is completely irrelevant to this case.

11

The government has also failed to show that Mr. Quindoza's opinion about unusual claims data is based on sufficient facts or data. The government has ignored altogether its requirement to prove this point. It does not explain why these 14 DME Companies' claims data was selected, what "normal" dataset the claims data was analyzed against, and even whether Mr. Quindoza believes that he has sufficient facts and data to reliably render the opinions listed in the letter.

The government also failed to show that anything involving Mr. Quindoza's proposed testimony is the product of reliable principles and methods. Where "an expert relies solely or primarily on experience, he must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Bressi*, 2024 WL 3296938, at \*11 (M.D. Pa. July 3, 2024) (citation and internal quotation marks omitted); *In re Lincoln Nat'l COI Litig.*, 620 F. Supp. 3d 230, 244 (E.D. Pa. 2022) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment); *see also Whyte v. Stanley Black & Decker, Inc.*, 514 F. Supp. 3d 684, 695-96 (W.D. Pa. 2021) (expert conclusions excluded where he provided no explanation of how he applied experience or methodology to facts of the case); *United States v. Perryman*, 2024 WL 639332, at \*6 (S.D.N.Y. Feb. 15, 2024) (expert's testimony was inadmissible because the expert "does not explain the basis for his opinions . . . [and] [t]here is simply no support or explanation given to allow a finding that these opinions . . . rest on a reliable basis or are anything other than [the expert's] pronouncements").

The government still, in its opposition brief, *does not disclose what Mr. Quindoza's analysis entails or what he is going to say.* The government has given no explanation whatsoever about any principles or methods that were applied to the claims data. This is flatly insufficient

12

under the new version of Rule 702, which requires that the disclosed opinion "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Merely because other AUSAs in this District in other cases properly disclosed and explained expert testimony involving Mr. Quindoza in other cases (or such testimony was not properly challenged) does not mean that the government should be excused from satisfying its burden here. The government was required to prove that Mr. Quindoza's application was sound and reliable, and it did not do so. Accordingly, his testimony should be stricken under Rule 702.

**V.    Mr. Quindoza Should Not Be Permitted to Testify That Certain Claims Data is "Unusual" Under Rule 403.**

The government argues that there is no risk of confusion or the jury being misled by testimony that certain claims data is "unusual" because the government will not have Mr. Quindoza opine that it is illegal. But the government's argument ignores the obvious: there is zero probative value to testimony that certain aggregated claims data was "unusual," *unless* one confuses it with evidence of being *illegal*. If the government is not trying to say that Mr. Quindoza's analysis of claims data and conclusion of "unusual" does not mean that it is "probably" illegal, then they fail completely to explain how that is useful to the jury. None of the ten charges have anything to do with whether the DME companies were "outliers."

This type of testimony is also incredibly confusing and misleading. The only relevant vantage points in this trial are that of Mr. Naviwala's. The government has not shown that Mr. Naviwala had access to the claims data that forms the basis of Mr. Quindoza's opinions. In fact, the government has refused to disclose from where it obtained this claims data in the first place. Permitting this testimony will give the jury the misimpression that Mr. Naviwala had the knowledge and insight that Mr. Quindoza is spewing to the jury when the government has not proved that to be the case. The jury is going to be misled by the government into believing that

13

Mr. Quindoza speaks to what is and is not an appropriate claim for Medicare, and what is and is not medically necessary. That is not his job, and that is one of the ultimate issues for the jury to decide.[2] It thus should be excluded under Rule 403.

**VI.    The Court Should Not Permit Mr. Quindoza to Testify About 62 Summary Charts That He Created That the Government Failed to Produce Until The Evening of January 6th.**

On the evening of January 6th, the government produced for the first time *approximately 62 charts* that Mr. Quindoza prepared that he hopes to testify about in connection with his "expert" testimony that the claims data he analyzed was unusual. The government states in its brief that Mr. Quindoza "sorted" and "filtered" Medicare data to create these charts, but does not explain how or why the data was sorted or filtered this way, and why any of that would be the product of reliable principles or methods. The government also provides no explanation why it did not produce these materials back with its Rule 16 materials by the deadline earlier last year, or at the very least by October when expert disclosures were due. The government wants Mr. Quindoza to testify, as an expert, about how he created, sorted, and manipulated the data that is reflected in these charts to assist the jury in understanding his "unusual" opinion. These 62 exhibits were certainly due to the defense by December 20th when the government's trial

---

[2] The government's gratuitous rant about Parra Health is disingenuous. At the time Mr. Naviwala's motion to strike experts was filed, the operative Indictment did not include any conduct about Parra Health or Mr. Naviwala's alleged ownership of a DME Company. The government did not tell the defense that it was going to include such conduct in a Superseding Indictment; in fact, it represented that it was not going to supersede the Indictment prior to trial. Nor is the government correct that Mr. Naviwala described Parra Health as "unaffiliated"—the government omits the following sentence from Mr. Naviwala's brief, which notes that the government's discovery lists him as an Office Manager of the entity. As has been the case now with many of its filings, the recitation of Mr. Naviwala's proffer report in its brief does not rebut anything and has no bearing on whether Mr. Quindoza's testimony should be permitted. It is merely one in a string of now many inappropriate breaches of the government's agreement with Mr. Naviwala.

14

exhibits were due. Instead, it listed on its exhibit list that it was waiting on *three* summary charts, and now has added approximately *62* charts buried in an additional 160+ additional, untimely government exhibits. Mr. Naviwala will be prejudiced if the Court permits the presentation of these reports. The defense cannot possibly review these for accuracy, especially amongst the 2,160+ exhibits produced on December 20th and the additional 100 exhibits untimely dumped on us on January 6th. And, again, the government still has not disclosed *what analysis Mr. Quindoza actually undertook.* The charts should be excluded at trial.

***CONCLUSION***

The government has failed to meet its burden, and Mr. Naviwala's motion to strike both experts' testimony at trial should be granted.

Dated: January 13, 2025

Respectfully submitted,

FORD O'BRIEN LANDY LLP

*/s/ Jamie Hoxie Solano*
Jamie H. Solano
Ifedapo Benjamin
Bryan McCracken
275 Madison Avenue, 24th Floor
New York, NY 10016
T: (212) 858-0040
jsolano@fordobrien.com
ibenjamin@fordobrien.com
bmccracken@fordobrien.com
*Counsel for Defendant Raheel Naviwala*

15

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing memorandum was served on counsel of record on

January 13, 2025, by causing said document to be filed electronically using the Court's CM/ECF

system.

/s/ *Jamie Hoxie Solano*
Jamie H. Solano

16