

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, 7ᵗʰ floor*            *973-645-2700*
*Newark, New Jersey 07102*

January 22, 2025

The Honorable Michael E. Farbiarz
United States District Judge
U.S. District Court for the District of New Jersey
Frank Lautenberg Post Office & U.S. Courthouse
2 Federal Square
Newark, New Jersey 07102

        Re:    <u>U.S. v. Naviwala</u>, Crim. No. 24-99 (MEF)

Dear Judge Farbiarz:

I am the Filter AUSA assigned to this matter, and I write in response to Ms. Solano's letter of today, which paints an incomplete and jumbled picture of a filter review in which she has yet to articulate any factual or legal basis for application of the attorney-client privilege. ECF No. 89.

As I have already informed Ms. Solano, including in my letters of January 7 and 13 and in my emails of January 15 and 21, 2025, I was assigned to review documents provided to the Government by Bradford Cohen, Esq., attorney for witness Kareem Memon. The Government established a filter team because Mr. Memon stated during an August 5, 2024 interview that he intended to provide the Government with a legal opinion letter regarding the business practices of an entity he owned at one time with the defendant, Raheel Naviwala. As I understand it, in an abundance of caution, the Prosecution Team asked Mr. Cohen to provide me, in the first instance, with *all documents* he intended to give the Prosecution Team, which Mr. Cohen subsequently did on two occasions, in August 2024 and on January 3, 2025. I then screened a discrete handful of documents from Mr. Cohen (less than two dozen unique documents total) and released several to the Prosecution Team, via a process described more fully in the Prosecution Team's January 13, 2025 letter to the Court, ECF No. 81.[1]

Ms. Solano claims this screening process is not "normal." ECF 89 at 2. That's because the circumstances of this filter are unique. Our Office typically

---

[1] To date, I have not received the legal opinion letter referenced by Mr. Memon.

employs filter agreements with counsel when we are filtering voluminous quantities of electronic data, using multiple search terms, to segregate communications related to known attorney-client relationships. Filters are not one-size-fits all and, under the unique circumstances of this case, with a set of documents so minute that a full eyes-on review was possible, and in the absence of *any documents* constituting communications with a lawyer, there was no need to enter into a filter agreement. All of the documents I forwarded to the Prosecution Team were, in turn, produced to Naviwala's counsel immediately thereafter, who at any time could have asserted a privilege claim over them.

On January 7, 2025, I notified Ms. Solano that I had withheld one document from the Prosecution Team—a single-page screenshot of a text message exchange between Memon and Naviwala—to provide her with an opportunity to review the document for privilege. As further described in the Prosecution Team's Letter, I also clawed back from the Prosecution team a copy of this document. ECF No. 81 at 2-3. Since then, I have sent her additional letters on January 13 and 21 and emails on January 11, 13, and 22, 2025 asking her (1) whether she intends to assert attorney-client privilege or work product protection over the document; and, if so, (2) to specify the legal and factual basis for her assertion. She has yet to do so.

Instead, on January 20, 2025, she complained for the first time that an FBI 302 report she received in discovery from the Prosecution Team in October 2024 appeared to contain potentially privileged information. That report summarized the August 5, 2024 interview of Memon and it, like the report of Memon's December 16, 2024 interview, was not within the purview of my filter review. As a result, I do not understand and am unable to respond to several paragraphs of her letter. *See* ECF No. 89 at 1-2.

Nevertheless, I informed Ms. Solano that I would review the report to determine whether it should be removed from the Prosecution Team's access. She also claimed that a video scroll of text messages between Memon and Naviwala contained potentially privileged material, and I informed her that I would review that again as well once she set forth the basis for a privilege claim and indicated which portions of the text messages she believed were potentially privileged. After all, baldly asserting privilege over a document does not a privilege make, and the burden to show the privilege's existence and application lies with the privilege holder. *Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986).

I assured Ms. Solano repeatedly that as soon as she articulated a basis for a privilege assertion, I would immediately take steps to remove the document at

issue from the Prosecution Team until the filter process could play out and a determination of privilege was made.

Ms. Solano emailed me several times indicating that she was too busy preparing for trial to provide me with a basis for her privilege assertion over only three documents. I offered to meet and confer with her by telephone so that she need not take the time to draft a written response to my questions, providing her with my availability over a two-day period. I had hoped that a telephonic meet and confer with Ms. Solano would be most efficient because we could discuss the three documents one by one. That conversation ought not to have taken very long, and, if we did not agree, we could quickly tee up the issue for a determination by the Court.

Ms. Solano never accepted my offer for a meet and confer. In fact, despite my numerous requests to Ms. Solano to provide the basis for any potential assertions of privilege, she still has not answered an important question: whether she is asserting privilege on behalf of Prudent, Memon and Naviwala's now-defunct company, or on behalf of Naviwala. *See In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2904 (MCA) (MAH), 2023 WL 8595741, at *5 (D.N.J. Oct. 16, 2023) (unpublished) ("a defunct or dissolved corporation does not retain the protections of either the attorney-client privilege or the work product doctrine."). I anticipate that once Ms. Solano articulates the bases for any privilege assertions, I may explore whether the privilege survives the company's demise or whether Naviwala retained the ability to assert the company's privilege after removing himself from the company's articles of incorporation. In any event, because such an argument could be based on publicly available information, the Prosecution Team could make it without any assistance from me.

In addition, once Naviwala articulates a basis for any privilege assertion, I may choose to explore whether Naviwala has waived his privilege with regard to any particular communication. *See, e.g.,* 3 JACK B. WEINSTEIN, ET AL., WEINSTEIN'S FED. EVID. § 503.15 (June 2024) (waiver accomplished when third party is present for, or participates in, the communication between attorney and client). Ms. Solano claims that it's "bizarre" for the Prosecution Team to also explore a waiver argument. ECF No. 89 at 4. Here it is not. As the Prosecution Team informed the Court in its January 13, 2025 letter, ECF No. 81 at 3, and as I again informed Ms. Solano, the Prosecution Team appears to be considering whether to argue that any assertion of the advice-of counsel defense by Naviwala would waive his attorney-client privilege with regard to that advice. That is a

question of trial strategy, wholly and properly reserved to the Prosecution Team. These are two different inquiries.[2]

I remain hopeful that the filter process will move forward and that the parties will bring any disagreements to the Court's attention once the issues are ripe. Of course, as I reminded Ms. Solano, if, after the filter process plays out, she believes her client is entitled to some kind of remedy, she may seek one. At that time, should Naviwala demonstrate that the Prosecution Team had access to a privileged document, the question will be one of prejudice, but not before then. *See U.S. v. Scarfo*, 41F.4th 135, 174 (3d Cir. 2022).

Very truly yours,

VIKAS KHANNA
Acting United States Attorney

<u>/s/ Matthew Stark</u>
By:  Matthew Stark
Assistant U.S. Attorney

cc:    Jamie Hoxie Solano
       Elaine K. Lou
       Matthew Specht
       Aaron L. Webman

---

[2] Ms. Solano's own conflation of the issues and roles of the two teams leads her to express "concern" that I lack independence from the Prosecution Team. My direct supervisors are Jonathan Fayer and Lauren Repole, the Deputy Chief and Chief of the Economic Crimes Unit, respectively. Their supervisor is Josh Haber, who is also advising the trial team in this case. I have been seeking guidance from AUSA Sabrina Comizzoli, a member of the Appeals Division, whom the Office has designated to assist all filter AUSAs, and I have not taken direction from any member of the Prosecution Team, nor AUSA Haber.