

January 23, 2025

<u>**VIA ECF**</u>
The Honorable Michael E. Farbiarz
United States District Judge
U.S. District Court for the District of New Jersey
Frank Lautenberg Post Office & U.S. Courthouse
2 Federal Square
Newark, New Jersey 07102

Re:    <u>United States v. Raheel Naviwala, Case No. 24-99</u>

Dear Judge Farbiarz:

We write on behalf of the defendant, Raheel Naviwala, to: (1) compel the appropriate production of material that should have been included in the government's *Giglio* and Jencks disclosures but the government has not produced; and (2) move to preclude the government from introducing approximately 206 exhibits that the government did not produce by its exhibit deadline and has provided us with no explanation regarding their delay.

*Failure to Appropriately Disclose Giglio Information*

Yesterday, January 22nd (not on or before 14 days before trial), the government made a lengthy late disclosure of *Giglio* material and Jencks material, totaling several thousands of pages of documents. *See Giglio* Letter, filed under seal. It appears that *Giglio* material is interspersed within these thousands of pages of Jencks material. But the government has not produced (or has not produced in a manner that makes it readily available for us to locate) a host of information that is plainly *Giglio* material. Many of the items the government has failed to produce were documents that the defense specifically requested from the government back in September, and which the government represented it would collect for its testifying witnesses. Specifically, on September 10, 2024, the undersigned sent the government the following:

> [P]lease confirm that you have reviewed the sentencing materials for Adams and that for any other alleged coconspirator of this scheme who has been sentenced. If you are not turning over those materials to us, we understanding that you are representing that there is no information in those materials that would be Brady, Giglio, or material to our defense. Matt, as I'm sure you remember, Ray told the Court at the arraignment that you guys were collecting materials from the other U.S. Attorney's Offices, so please confirm that you've made sure there isn't discoverable information in those materials (including the PSR, objections to the PSR, the amendments to the PSR, the sentencing memoranda, and the 5K motions that the government wrote). If there is discoverable information in those materials, please produce it to us immediately. Obviously, if those materials do not mention my client or memorialize a very limited role that is different from what you've attributed to him in this case (or is different from what other coconspirators have

said about Raheel's involvement), my client's lack of involvement with these purported coconspirators is exculpatory and material to my defense, so you should turn those materials over to us immediately so we have sufficient time to effectively use it prior to trial.

In response, the government said that it would request the sentencing materials for its testifying witnesses and would produce what the law required. Trying to avoid what the undersigned thought would inevitably become a last-minute dispute, on January 18, 2025, the undersigned asked the government if it was going to produce presentence reports for its testifying witnesses with its *Giglio* production or if we needed to get the Court's assistance; the government refused to respond.

The government's late production does not include information that is almost certainly *Giglio* information and Jencks material. Notwithstanding its representation back in September—that it would seek sentencing materials for its testifying witnesses—the government has failed to produce several guilty plea and sentencing transcripts of its sentenced, testifying witnesses. The sworn statements of what these witnesses said about their offense conduct and how they characterized their behavior when they were trying to secure a favorable sentence from the Court (and what the government said about their conduct and what would be an appropriate sentence) is plainly Jencks material and likely contains *Giglio* information.

It appears that the government has failed to produce the government's 5K motions seeking a reduction for these witnesses' sentences. Several of the government's cooperating witnesses have been sentenced and received *significant* benefit for their cooperation by way of a favorable 5K motion. For example, Armani Adams—one of the most culpable alleged coconspirators in this case—received a sentence of 2 ½ years' imprisonment for conduct that likely carried a sentencing recommendation of life imprisonment. But the government has not disclosed any the 5K motion that the government wrote on his behalf (or for any other sentenced witness). Accordingly, the defense respectfully requests that the Court immediately order the government to produce these materials.

Shockingly, it does not appear that the government has made any disclosures about other benefits it has conferred on its testifying witnesses, including recommending favorable bail conditions, working with the Courts to delay sentencing surrender dates, the conversations and discussions that the Office had involving transferring these witnesses' cases to other districts to consolidate their pleas so the witnesses would have lower criminal history points, etc. As we highlighted in other filings, at least one witness's lawyer represented to the Court in Florida that the Office specifically worked out a plea and transfer arrangement so that Mr. Memon would receive a lower criminal history score. Several other cooperating witnesses had their cases transferred and consolidated with other jurisdictions who worked jointly with the Office, but the government has not disclosed these conversations and benefits. These types of benefits that the government has extended to its testifying witnesses is obvious impeachment material. Accordingly, the defense respectfully requests that the Court immediately order the government to produce these materials.

FORD O'BRIEN LANDY    |    275 Madison Avenue, Fl. 24 NY, NY 10016    |    P: 212.858.0040    |    fordobrien.com

Finally, the government has not disclosed the presentence investigation reports (or redacted versions of those reports) to the defense for its testifying witnesses. The government has disclosed only the criminal history section of two of its testifying witnesses, but has not disclosed the PSR's description of offense conduct, the calculation of the defendant's sentencing exposure absent his or her plea agreement with the government, the defendant's statement made to probation about the offense conduct, the restitution and loss amount attributable to each defendant, and any other information contained in the PSR that could be used to impeach these witnesses. This information is not otherwise available elsewhere.

As the undersigned told the government in September, a description of a cooperating defendant's offense conduct that explains their role in the offense and is different from what the government charged in this case (especially if Mr. Naviwala is not mentioned at all) could be used to impeach their credibility and could be exculpatory to Mr. Naviwala. Further, a calculation of the cooperators' sentencing exposure absent a 5K motion and their plea agreement is *Giglio* material because it shows the significant benefit that the cooperator received from the government and shows the exposure they knew they faced if they did not cooperate. It could also be used to show what the cooperating witness likely hopes and expects to receive in return for the witness's testimony in this case (all the more reason why the government should produce their 5K motions).  The jury should be permitted to know that the witness faced life exposure and, as a result of doing what the government wanted, is only serving at most a couple of years in prison (if even that). The government should be required to produce these to the defense.

Finally, there is reason to believe that the government did not appropriately review and disclose other impeachment information that is specific to each testifying witness in this case. For example, Kareem Memon's presentence investigation report objections reference gang membership (the full extent of which the government has not disclosed) and the following ominous paragraph:

> Memon objects to the allegations in paragraph 150 and denies any wrongdoing. No charges were filed, Memon was never convicted, and no sentence was ever rendered. Therefore, the unsubstantiated allegations in that offense should not be held against Memon or used to enhance his sentence.

The government has not disclosed his PSR or explained what this is in reference to, notwithstanding that the government and Probation thought it had sufficient basis to be included in his PSR. Again, we are talking about pretrial disclosures, not what could or should be admitted at trial. Under the circumstances, Mr. Naviwala requests that the Court order the government to immediately produce PSRs for its testifying witnesses with purely personal information redacted.  In the alternative, Mr. Naviwala requests that the Court order the government to provide him with the PSRs for the Court's review to ensure that appropriate *Giglio* information will be properly disclosed. *See generally United States v. Ventura*, 1997 WL 774750, at *2 (10th Cir. 1997) (noting that permitting disclosure of PSRs when prosecutor has the report can be appropriate and collecting cases); *see also United States v. Alvarez*, 358 F.3d 1194, 1208 (9th Cir. 2004) (referencing that judge ordered production of cooperating witnesses' redacted PSRs).

The government also amended its witness list on the date of its *Giglio* disclosures to remove to named co-conspirators, likely to avoid having to produce *Giglio* material for these witnesses. The undersigned respectfully requests that the government be ordered to identify and disclose any *Brady* or *Giglio* material associated with these alleged co-conspirators, who undoubtedly remain a part of the case and are hearsay declarants.

### *Over 200 Untimely Produced Trial Exhibits*

On December 20th, the date the government's trial exhibits were due to the defense, the government produced over 2,100 exhibits that it intends to introduce in a supposed 10-day trial. On January 6, 2025, the government produced approximately 169 additional exhibits without explanation for why their production was delayed. And, on January 15, 2025, the government produced another 37 additional exhibits, again without explanation. The government's failure to abide by the scheduling order agreed upon by the parties and ordered by the Court in this case is not appropriate. We are not talking about a handful of records. The government has produced an additional 206 exhibits—after the trial exhibit deadline and less than a month before trial. The continued failure of the government to appropriately and timely disclose and produce information to the defense has rendered it very difficult, if not impossible, to appropriately prepare for the upcoming trial. Accordingly, the defense respectfully requests that the Court preclude the government from relying on these untimely exhibits at trial, absent a specific, articulated reason why they could not have been timely provided to the defense.

Respectfully submitted,

FORD O'BRIEN LANDY LLP

*Jamie Hoxie Solano*

Jamie H. Solano
Ifedapo Benjamin
Bryan McCracken
275 Madison Avenue, 24th Floor
New York, NY 10016
(212) 858-0040

*Counsel for the Defendant Raheel Naviwala*