

February 23, 2025

**FILED VIA ECF**
The Honorable Michael E. Farbiarz
United States District Judge
U.S. District Court for the District of New Jersey
Frank Lautenberg Post Office & U.S. Courthouse
2 Federal Square
Newark, New Jersey 07102

      Re:    <u>United States v. Raheel Naviwala, Case No. 24-99</u>

Dear Judge Farbiarz:

The government has now confirmed that it intends to raise in its closing argument the "rules" that it elicited from its cooperating witnesses and argue that the jury should consider that testimony in determining a variety of things, including whether the claims were not medically necessary. The government did not identify these "rules" in the Superseding Indictment, did not produce these "rules" to the defense as a part of its Rule 16 discovery obligations despite our repeated requests making clear they were material to our defense, did not mark these "rules" as exhibits in this case, did not present testimony from a qualified expert to discuss how said hearsay "rules" should be understood or where they came from. The government represented that it was going to present testimony from Mr. Quindoza only about the regulations and statutes in effect at the time only to then sponsor false testimony from Mr. Quindoza about what the regulations contained. The government then sought admission of this undisclosed hearsay from its cooperating witnesses under the guise that it only intended to offer the evidence for the limited purpose of their understanding of the "rules." And on Friday, the government asked questions to Mr. Naviwala suggesting the existence of these "rules."

The government has taken this case to a place it never should have gone. Mr. Naviwala now submits this letter motion *in limine* to preclude the government from attempting to further introduce evidence, question, or argument of undisclosed "rules" to the jury and to preclude the government from arguing that the jury should infer *anything* about these "rules," much less that the rules should be considered in the jury's determination of anything to do with medical necessity or the fraudulent nature of claims submitted to Medicare. He makes this motion under Rules 401, 403, and 802 of the Federal Rules of Evidence, Rule 16(a)(1)(E)(i) & (ii) and 16(d)(2)(C) & (D) of the Federal Rules of Criminal Procedure, to avoid an impermissible prejudicial variance from and constructive amendment to the Superseding Indictment, and to preserve the integrity of these proceedings. The scope of this motion includes evidence or argument of Medicare "rules" not contained in the statute or regulations in effect at the time, including those relating to telemedicine, face-to-face doctor visits, joint laxity tests, the domicile of the patient and treating physician, or the status of the prescribing doctor as a "treating" physician.

On multiple occasions the defense has asked the government to identify the standards on

which it would rely to prove medical necessity (or the lack thereof) at trial and to produce all documents relating to those standards and Mr. Naviwala's alleged knowledge of them. On September 10, 2024, the undersigned sent the government a letter requesting:

> [P]lease identify for us all of the documents you intend to rely on to prove that these prescriptions were not medically necessary (especially for Counts 2, 3 and 4) and identify the evidence that shows that Raheel knew that these services were not medically necessary. Please also identify where you are getting the standard for "medically necessary" and any case law you have in support of imputing such a vague standard onto criminal charges.

On September 26, 2024, the defense sent another letter reiterating the "request that you identify the records that reflect that the prescriptions were not medically necessary, what standard you are using, and any evidence reflecting that Mr. Naviwala knew that these services were not medically necessary." The government did not provide us with said identification or documents. On October 4, 2024, the defense filed an omnibus pretrial motion arguing that the term "medical necessity" was vague and ambiguous and requested a bill of particulars regarding the false statements that the government intended to rely on at trial to support the fraud charges. ECF No. 49.

On October 8, 2024, the government disclosed its intent to call Stephen Quindoza as an expert to testify about a litany of topics that went far beyond the applicable regulations. On October 11, 2024, the defense sent a letter to the government concerning the deficient disclosure and, once again, raised the need for the government to identify the standards and rules on which its witnesses would be relying.

On December 21, 2024, Mr. Naviwala moved to strike Mr. Quindoza's testimony in light of the insufficient disclosure. ECF No. 67. On January 3, 2025, the grand jury returned the Superseding Indictment, adding allegations involving Mr. Naviwala's interactions with telemedicine. ECF No. 73. Three days later, on January 6, 2025, the government filed a brief representing that Mr. Quindoza's fact testimony would be limited to: (1) a general overview of Medicare; (2) Medicare regulations regarding telehealth; (3) Medicare regulations regarding durable medical equipment ("DME"); and (4) a discussion of certain billing records in this case. ECF No. 74. At the January 24, 2025 pre-trial conference, the defense specifically raised that the government had not produced materials like policy manuals or guidance that Mr. Quindoza was likely relying on, which would be hearsay. Jan. 24, 2025 Tr. at 44. The Court noted that the government limited his testimony to the above-mentioned list and ruled that Mr. Quindoza could offer testimony only on these topics. ECF Nos. 117 at 44-45 & 122 at 8.

When Mr. Quindoza took the stand, it was clear that Mr. Quindoza did not intend to limit his testimony to only the regulations. He repeatedly tried to reference guidelines and manuals that the government refused to disclose. *See*, *e.g.*, Feb. 7 Tr. at 394-396. The Court advised the government to limit its questions to seek information "which can be shown to come from a statute or regulation." *Id*. 395.

Immediately following the defense's objection to the government eliciting testimony about "any rules," the government elicited testimony from Mr. Quindoza that the statute and regulations for durable medical equipment required the order to come from the patient's treating physician or practitioner. *Id.* at 393:17-394:14. That testimony was false. The regulations only required that an order come from a "treating" practitioner if the device was a power mobility device. *See* Feb. 10 Tr. at 501.

The government then elicited further false testimony from Mr. Quindoza about in-person visits or a valid telehealth visit under the Medicare regulations and statutes. *Id*. at 397. The government elicited false testimony that under the Medicare regulations, a doctor could not make a determination of medical necessity for DME absent an in person or "valid" telehealth visit. Feb. 7 Tr. at 397. After putting the regulation in front of him, he eventually admitted that written doctor's orders, in-person visits, or a telehealth visit were not required for any of the orthotics allegedly obtained through fraudulent Medicare claims in this case. Feb. 10. Tr. at 500-504. The government also elicited testimony from Mr. Quindoza regarding purported requirements for a telehealth encounter, which was misleading in light of the fact that for the items in this case, no telehealth encounter was even necessary under the regulations.

After Mr. Quindoza's testimony, the government elicited testimony from several of its cooperating witnesses about their understanding of "rules." Your Honor permitted that evidence for the limited purpose of their understanding.

On Friday, the government cross-examined Mr. Naviwala in front of the jury with inappropriate questions that contained assertions that were not true. First, she asked: "But you knew that there was a face-to-face requirement between the doctors and the patients. Right?" Jan. 21 Tr. at 2106. She then asked "[y]ou knew that Medicare wouldn't pay for knee braces *because of regulations at the time requiring joint laxity*, right?" Jan. 21 Trial Tr. at 2121. It is unclear what the purpose of these questions were other than to mislead given that the regulation for DME reimbursement says nothing about joint laxity, and the government knew that the regulation *did not require a face-to-face consultation*. Your Honor sustained both objections.

### **Argument**

*First*, the Court should preclude the government from arguing about these rules at trial or presenting further evidence of them because the government failed to disclose whatever documents are the source of these rules in discovery and failed to identify what "rules" they would be relying on as proofs in this trial. *See* Fed. R. Crim. P. 16(d)(2)(C) & (D). Given how the government has chosen to proceed with its presentation of evidence, there is no question that knowing what these "rules" actually are, which of these "rules" the government intended to showcase, and what they actually say would be material to the defense, particularly in light of our repeated requests for them. This is especially true if any of those cooperators had an incorrect understanding of what the "rule" actually required. The government is plainly relying on this information in its case-in-chief at trial, and intends to do so in its closing argument.[1] The

---

[1] When we raised with the government that they had never disclosed a policy document that they said they wanted to incorporate into a jury instruction, the government suggested that

defense prepared for this trial as if it would be about the regulations, statutes, and the information identified in the Indictment. The Court should not permit the government to proceed this way given their failure to properly disclose.

*Second*, permitting the government to argue to the jury that a witness's subjective understanding of these "rules" should be considered to determine Mr. Naviwala's intent, medical necessity or a false claim would be very misleading, would invite the jury to consider hearsay for its truth even though it was not admitted for its truth, and should fail an analysis under Rule 401 and 403. *See United States v. Heinrich*, 971 F.3d 160, 163 (3d Cir. 2020) (district court has broad discretion to exclude evidence that does not comport with Rule 403); *United States v. Saldana*, 427 F.3d 298, 306-07 (5th Cir. 2005) (affirming the district court's exclusion of manuals discussing IRS tax information on hearsay and Rule 403 grounds). Telling the jury to consider the "rules" in making these decisions would be very dangerous. At this point, the jury is not going to understand any nuanced distinction between discussing witness's subjective understanding of rules to show "intent" as opposed to thinking that the coconspirators were, in fact, actually violating Medicare's rules regarding medical necessity. Which tremendously misleading because the statute does not define medical necessity. This has been complicated further by the government's decision to repeatedly interject false testimony from Mr. Quindoza about the regulations and now asserting the existence of rules in its questions. Under the current record, if the government argues that the jury should consider these "rules," or Mr. Quindoza's false testimony, it is inviting a mistrial. It has hopelessly confused the record and there is a significant risk that the jury will now convict Mr. Naviwala on the basis of these "rules," without the government ever providing appropriate testimony to explain what these "rules" actually *were* and *were not*. The probative value of highlighting the "rules" to show coconspirators' intent at this point is vastly outweighed by its prejudicial, confusing, and misleading effect. All of the coconspirators who testified discussed their intent at length—their understanding of other rules has minimal value.

*Finally*, permitting the government to argue that the jury should consider these "rules" in its determination that the DME claims submitted to Medicare were false or medically unnecessary would result in a constructive amendment and prejudicial variance of the Superseding Indictment. The Superseding Indictment identifies four reasons why the statements

they had no disclosure obligation because it was posted on the Internet somewhere. The undersigned does not know whether all of the "rules" the government has now presented to the jury in effect in 2017 are posted somewhere on the Internet. While a document being publicly available may be relevant to a *Brady* suppression analysis, Rule 16 does not contain a carve-out for items that are in the possession, custody, and control of the government and also lurking around somewhere on the Internet. It certainly does not mean that the government did not have to disclose *which of the publicly available items* it intended to rely on in its case-in-chief so the defense could be prepared to meet the proofs. The government is assisted by agents from several federal agencies who undoubtedly have whatever materials are the sources of these "rules," and the lead FBI case agent on this case was the same agent who sat at the government's table and was present for Mr. Quindoza's testimony two years ago in *United States v. Gupta*, 2:20-cr-00773 (D.N.J.) (Arleo, J.), a case involving the same time period and orthotic braces as at issue in this case.

are false—none of these "rules" are one of them. Allowing the government to change the substance of the false representations underling the fraud charges would materially alter the Indictment in a way that would plainly prejudice the defense and violate Mr. Naviwala's due process rights. *See United States v. Patel*, 2023 WL 363052, at \*4, \*17 (D.N.J. Jan. 23, 2023) (government inappropriately constructively amended indictment by presenting theories at trial regarding when and how defendant committed offense that conflicted with charging terms of indictment).

For all these reasons, the Court should prohibit the government from introducing any additional evidence about, or arguing in its closing, purported "rules."

Respectfully submitted,

FORD O'BRIEN LANDY LLP

*/s/ Jamie Hoxie Solano*
Jamie H. Solano
Amy C. Brown
Bryan M. McCracken
Ifedapo E. Benjamin
275 Madison Avenue, 24th Floor
New York, NY 10016
(212) 858-0040

*Counsel for Raheel Naviwala*