Doug Passon
Law Offices of Doug Passon, PC
10565 N. 114th St., Suite 101
Scottsdale, AZ 85259
Telephone: 480.448.0086
Email: doug@dougpassonlaw.com
Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:24-CR-99 |
| Plaintiff, | |
| | **DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT WITH PREJUDICE** |
| v. | |
| RAHEEL NAVIWALA, | COURT: Hon. Matthew W. Brann |
| Defendant. | |



President Donald J. Trump, Truth Social Post, Aug. 24, 2025 at 9:00 p.m., archived at https://www.trumpstruth.org/statuses/32717

> The Appointments Clause reflects a carefully crafted system, rooted in the separation of powers, by which the Executive and Legislative branches jointly participate in appointments, exerting limitations upon each other, ensuring public accountability, and curbing Executive abuses. Congress retains a pivotal role in the appointment sphere, a role that cannot be usurped or expanded. The Appointments Clause imposes a mandatory and exclusive procedure that must be enforced according to its plain meaning, without exception.

*United States v. Trump*, 740 F. Supp. 3d 1245, 1261 (S.D. Fla. 2024) (citation modified; dismissing indictment against President Trump due to prosecutor's Appointments Clause violation).

> "To what purpose then require the co-operation of the Senate? . . . It would be an excellent check upon a spirit of favoritism in the President, and would tend greatly to prevent the appointment of unfit characters."

*Weiss v. United States*, 510 U.S. 163, 185 n.1 (1994) (Souter, J., concurring) (quoting Alexander Hamilton, The Federalist No. 76).

.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................1

PERTINENT PROCEDURAL BACKGROUND........................................................3

ARGUMENT ..............................................................................................................8

   I.   The Government's Appointments Clause Violation is Presumptively Harmful; Mr. Naviwala is <u>Entitled</u> to a Decision on the Merits and Appropriate Relief...................................8

   II.   Appointments Clause Violations So Fundamentally Impugn the Integrity of a Criminal Proceeding That They Cannot be Waived and Will Even Defeat a Court's Jurisdiction ..........11

   III.   An Indefinite Delay in Sentencing Violates Due Process ..................................................13

   IV.   Additional Grounds Establishing Prejudice and Due Process Violations ........................19

      *A.   Mr. Naviwala is Being Precluded from Possible Vindication* ......................................19

      *B.   Indefinite Home Confinement is Resulting in Irrevocable Loss of Liberty*...................20

   V.   Dismissal with Prejudice is the Only Remedy Available .................................................23

CONCLUSION..........................................................................................................27

CERTIFICATE OF SERVICE .................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Barefoot v. Estelle*, 463 U.S. 880 (1983) .................................................................17

*Barker v. Wingo*, 407 U.S. 514 (1972) ....................................................................14

*Betterman v. Montana*, 578 U.S. 437 (2016) ................................................13, 14, 19

*Bhatnagar by Bhatnagar v. Surrendra Overseas*, 52 F.3d 1220 (3d Cir. 1995) ............................2

*Bond v. United States*, 564 U.S. 211 (2011) ..............................................................10

*Boyd v. United States*, 116 U.S. 616 (1886) .............................................................18

*Burkett v. Cunningham*, 826 F.2d 1208 (3d Cir. 1987) ...........................................19, 20, 25

*Burkett v. Fulcomer*, 951 F.2d 1431 (3d Cir. 1991) ("Burkett II")..............................................14

*CFTC v. Schor*, 478 U.S. 833 (1986)..........................................................................12

*Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020)..............................10, 11

*Clinton v. City of N.Y.*, 524 U.S. 417 (1998) ................................................................9

*Davis v. United States*, 564 U.S. 229 (2011) ..............................................................27

*Degen v. United States*, 517 U.S. 820 (1996) .............................................................23

*Dietz v. Bouldin*, 579 U.S. 40 (2016)........................................................................23

*Gall v. United States*, 552 U.S. 38 (2007) ................................................................21

*Gamble v. United States*, 587 U.S. 678 (2019)..............................................................26

Gayle v. Warden Monmouth Cty. Corr. Inst., 12 F.4th 321 (3d Cir. 2021) ................................17

*Hollingsworth v. Perry*, 570 U.S. 693 (2013)................................................................12

*Hunt v. United States*, 456 F.2d 582 (3d Cir. 1972) .........................................................24

*Intercollegiate Broad. Sys. v. Copyright Royalty Bd. & Librarian of Cong.*, 796 F.3d 111 (D.C. Cir. 2015)........................................................................................11, 14

*Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000) .........................................................11

*Lane v. Brown*, 372 U.S. 477 (1963) ........................................................................25

*Lofstad v. Raimondo*, 117 F.4th 493 (3d Cir. 2024) .......................................................10

*Martinez v. Illinois*, 572 U.S. 833 (2014) ................................................................26

*McCoy v. Court of Appeals, Dist. 1*, 486 U.S. 429 (1988) .................................................3

*NLRB v. Canning*, 573 U.S. 513 (2014) ..................................................................9, 10, 11, 13

*NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2017) ....................................................................9, 13, 19

*Norton v. Shelby County*, 118 U.S. 425 (1886) ...........................................................................18

*Off. of the United States Tr. v. John Q. Hammons Fall 2006, LLC*, 602 U.S. 487 (2024)...........26

*Pacemaker Diagnostic Clinic v. Instromedix*, 725 F.2d 537 (9th Cir. 1984) ..............................12

*Perez v. Mortg. Bankers Ass'n*, 572 U.S. 92 (2015).......................................................................9

*Reno v. Kay*, 515 U.S. 50 (1995) .................................................................................................22

*Ryder v. United States*, 515 U.S. 177 (1995)................................................................2, 9, 11, 28

*United States v. Alvarez*, 567 U.S. 709 (2012) ............................................................................17

*United States v. Caldera*, 633 Fed. Appx. 96 (3d Cir. 2015)..........................................................3

*United States v. Donohue*, No.3:22-cr-253, 2024 U.S. Dist. LEXIS 216298, 2024 WL 4905979 (M.D. Pa Nov. 27, 2024)...............................................................................................................21

*United States v. Dreyer*, 533 F.2d 112 (3d Cir. 1976) ..................................................................23

*United States v. Durham*, 941 F.2d 886 (9th Cir. 1991)...............................................................12

*United States v. Garcia*, 25-6229 (9th Cir. Oct. 3, 2025) .............................................................16

*United States v. Garcia*, No. 2:25-cr-00230; No. 2:25-cr-00227; No. 2:25-cr-00240; No. 3:25-cr-00026; 2025 U.S. Dist. LEXIS 194389, 2025 WL 2784640 (D. NV. Sept. 30, 2025).................15

*United States v. Garcia-Andrade*, No. 13-CR-993, 2013 U.S. Dist. LEXIS 110759, 2013 WL 4027859 (S.D. Cal. Aug. 6, 2013) .................................................................................................12

*United States v. Giraud*, , __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 162451, 2025 WL 2416737 (D.N.J. Aug. 21, 2025)...........................................................................................................1, 6, 23

*United States v. Giraud*, 25-2635 (3d Cir.)........................................................................6, 8, 15, 16

*United States v. Hasting*, 461 U.S. 499 (1983)............................................................................23

*United States v. Jiang*, 214 F.3d 1099 (9th Cir. 2000) .................................................................24

*United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir. 1987).........................................................27

*United States v. Lacerda*, 958 F.3d 196 (3d Cir. 2020) ...........................................................13, 20

*United States v. Mezzanatto*, 513 U.S. 196 (1995) ..................................................................13, 18

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) ................................................12, 13

*United States v. Sanders*, 452 F.3d 572 (6th Cir. 2006) ..............................................................14

*United States v. Sears*, 877 F.2d 734 (9th Cir. 1989) ................................................................24

*United States v. Small*, No. 22-1469, 2023 U.S. App. LEXIS 17117, 2023 WL 4399212 (3d Cir. July 7, 2023)..........................................................................................................................14

*United States v. Smith*, 793 F.2d 85 (3d Cir. 1986) ....................................................................17

*United States v. Taylor*, 487 U.S. 326 (1988)...........................................................................25

*United States v. Trump*, 24-12311 (11th Cir. 2024) ....................................................................2

*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) ..........................18, 19, 24, 26, 28

*United States v. Wright*, 913 F.3d 364 (3d Cir. 2019) ................................................................24

*Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019).....................................................12

*Virgin Islands v. Allick*, D.C. Crim. App. No. 2004/093, 2004/092, 2004/091, 2006 U.S. Dist. LEXIS 76252, 48 V.I. 503 (D.V.I. App. Div. Sept. 22, 2006) .....................................................25

*West v. Warden Fort Dix FCI*, 740 Fed. Appx. 237 (3d Cir. 2018) ...............................................22

*Wheat v. United States*, 486 U.S. 153 (1988) ......................................................................13, 18

### Statutes

18 U.S.C. § 793.........................................................................................................................18

18 U.S.C. § 3624........................................................................................................................22

28 U.S.C. § 516..........................................................................................................................11

28 U.S.C. § 547..........................................................................................................................11

### Other Authorities

Administrative Office of U.S. Courts, "U.S. Courts of Appeals Federal Court Management Statistics (June 30, 2025) ........................................................................................................21

Administrative Office of U.S. Courts, United States District Courts, "National Judicial Caseload Profile" and "New Jersey Judicial Caseload Profile." ..................................................................20

*Ellingburg v. United States*, 24-482, Oral Arg. Trans. (Oct. 14, 2025)........................................28

Gov't Br., *United States v. Giraud*, 25-2635 (3d. Cir. Sept. 12, 2025) .........................................16

*Judges Reject Trump's Pick for Top New Jersey Federal Prosecutor, DOJ Removes Successor*, Reuters, July 22, 2025...............................................................................................................15

Justin Wise, *NJ Prosecutor Fired to Make Way for Alina Habba Files Appeal*, Bloomberg Law, Aug. 6, 2025 .............................................................................................................................15

Tracey Tully and Jonah E. Bromwich, *Inside the Crisis Gripping New Jersey's Federal Courts*, N.Y. Times, Aug. 28, 2025.........................................................................................................17

U.S. Sentencing Commission, *2024 Sourcebook of Federal Sentencing Statistics* .......................22

*United States v. Giraud,* 25-2635 & 25-2636 (3d Cir. Oct. 20, 2025), Audio of Oral Arg. .........3, 8

**Rules**

Fed.. R. Crim. Proc. 7 .............................................................................................................23

Fed. R. Crim. Proc. 32 ...................................................................................................1, 14, 19

Fed. R. Crim. Proc. 48 ...............................................................................................1, 23, 24, 25

**Constitutional Provisions**

Fifth Amendment ......................................................................................................................1

**Sentencing Guidelines**

USSG § 5C1.1 ..........................................................................................................................22

USSG § 5F1.2 ...........................................................................................................................22

Defendant RAHEEL NAVIWALA, by and through undersigned counsel, pursuant to Federal Rules of Criminal Procedure 32(b)(1) and 48(b), and the Due Process Clause of the Fifth Amendment to the United States Constitution, hereby moves this honorable Court to dismiss the Superseding Indictment with prejudice in light of the continuing due process violations occasioned by the disqualification of the Acting United States Attorney and the resulting indefinite stay of proceedings.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

On August 21, 2025, based on an Appointments Clause violation, this Court disqualified the purported Acting U.S. Attorney, Alina Habba, from participating in any criminal prosecutions in this District, along with any Assistant United States Attorneys acting pursuant to her authority or under her supervision. *See United States v. Giraud*, _ F.Supp.3d _, 2025 U.S. Dist. LEXIS 162451, *3, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) ("because [Alina Habba] is not currently qualified to exercise the functions and duties of the office in an acting capacity, she must be disqualified from participating in ***any*** ongoing cases") (emphasis added); *id.* at *74 ("***Any*** Assistant United States Attorney who prosecutes . . . under the supervision or authority of Ms. Habba in violation of my Order is similarly subject to disqualification.") (Emphasis added). However, this Court stayed that order "pending appellate proceedings." *Id.* at *75.

Thereafter, Mr. Naviwala, citing *Giraud*, independently moved Judge Farbiarz, who then-presided over his case, to also disqualify Ms. Habba and those acting pursuant to her authority or under her supervision from further participation in his prosecution. As this Court expressly recognized in *Giraud*, "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who [prosecutes] his case is ***entitled*** to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred.'" *Id.* at *52

---

[1] As the instant motion exclusively involves authority-focused issues, *cf.* ECF Doc. 253 (order referring Mr. Naviwala's "non-authority-focused" motion to modify bail conditions to magistrate originally assigned to case), this Court may and should retain jurisdiction over the matter and decide the motion as it is well "within the purview of [this Court's] special designation to hold a District Court in the District of New Jersey." *See* ECF Doc. 250 at 2.

(emphasis added; quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995)).

But rather than decide the merits of Mr. Naviwala's motion and grant appropriate relief as requested, Judge Farbiarz instead transferred the matter to your Honor, who in turn *sua sponte* stayed sentencing and all pending motions in this matter until the *Giraud* appeal is resolved. In all likelihood, the ultimate resolution of that appeal is many months and possibly over a year away given the inevitable post-appeal litigation. Moreover, the issues on appeal in *Giraud* do not involve the issue of remedy for an Appointments Clause violation, which is the key issue Mr. Naviwala raises herein. The stay, therefore, serves no purpose. The current state of affairs thus invokes the "well-worn but nevertheless truthful aphorism that 'justice delayed is justice denied.'" *Bhatnagar by Bhatnagar v. Surrendra Overseas*, 52 F.3d 1220, 1228 (3d Cir. 1995).

This is especially so as prejudice is ***presumed*** for an Appointments Clause violation leaving only the question of appropriate relief where, as here, a violation has been established. But even without such a presumption, Mr. Naviwala can readily demonstrate significant prejudice due to the Appointments Clause violation and resulting indefinite stay. First, the Appointments Clause violation and indefinite stay violates Mr. Naviwala's due process right to be sentenced without "unnecessary delay." Second, the violation and indefinite stay also unnecessarily delay resolution of his pending motion for acquittal, his subsequent appeal, and a potential retrial any of which could result in Mr. Naviwala's vindication. Finally, Mr. Naviwala is continuing to suffer significant prejudice as a result of the onerous conditions of extended and indefinite home confinement, that has left him tethered to an ankle monitor for the last seven-plus months, but for which he will not receive any custodial credit.

Respectfully, when Mr. Naviwala moved to disqualify Ms. Habba, the Court should have granted that motion for the reasons set forth in *Giraud*, and then dismissed the indictment for failure to prosecute as no qualified counsel could appear on behalf of the Government. The Government could then have appealed that decision if it so desired just as it did in *United States v. Trump*, 24-12311 (11th Cir. 2024). There, the district court dismissed the superseding indictment against President Trump after finding an Appointments Clause violation as to the Special

2

Counsel overseeing and supervising the President's prosecution.

As it stands, the stay that this Court imposed *sua sponte* unfairly forces Mr. Naviwala to endure continuing and indefinite due process violations, while the Government undertakes a frivolous[2] appeal in an unrelated matter that will not even reach the core issue presented here, namely, remedy. Accordingly, Mr. Naviwala respectfully requests that this honorable Court simply provide to him the same remedy that was provided to the President himself when his prosecutor was also disqualified as a result of an Appointments Clause violation, i.e., dismissal of the Superseding Indictment.

For the reasons set forth below, this Court should dismiss the Superseding Indictment with prejudice as that is the only remedy that will vindicate Mr. Naviwala's due process rights, which have been and are continuing to be violated due solely to the Government's conduct. In further support, Mr. Naviwala states as follows:

## PERTINENT PROCEDURAL BACKGROUND

On March 16, 2023, a Complaint was filed against Mr. Naviwala alleging a conspiracy to

---

[2] The undersigned does not use this term lightly and does so intentionally. "An issue is frivolous if it 'lacks any basis in law or fact.'" *United States v. Caldera*, 633 Fed. Appx. 96, 99 (3d Cir. 2015) (quoting *McCoy v. Court of Appeals, Dist. 1*, 486 U.S. 429, 438 n.10 (1988)). The frivolity of the Government's appeal was confirmed during oral argument before the Third Circuit on October 20, 2025. There, the Government argued (1) that Ms. Habba's authority as Special United States Attorney and Acting United States Attorney are coterminous and coextensive, (2) that Ms. Habba can occupy the position of Acting United States Attorney **indefinitely**, and conceded (3) that the Government has never advanced such an argument before with respect to an Acting U.S. Attorney. *See United States v. Giraud,* 25-2635 & 25-2636, Audio of Oral Argument at 3:40-4:23 (Government stating that the authority of Special U.S. Attorney and Acting U.S. Attorney are coextensive and coterminous), 33:35-33:52 (Government stating that Ms. Habba can serve at the pleasure of the Attorney General indefinitely), and 1:13:16-1:13:32 (Court: "Can you come up with an example of any times that such a concatenation of events has occurred with respect to the appointment of the United States Attorney?" Gov't Counsel: "Well I guess I cannot."). Audio file available at https://www2.ca3.uscourts.gov/oralargument/audio/25-2635USAv.JulienGiraudJr..mp3.

As counsel for *Giraud* summarized, "the Government cites a chimera of seven different statutes that they alternate depending on what they are trying to accomplish to call her: the Interim U.S. Attorney, an Acting U.S. Attorney, the First Assistant U.S. Attorney, or a Special Attorney. . . . What are the outside limits of each of those? Counsel conceded that in one of those paths, the delegation path, there is no limit." *Id.* at 35:55-36:30. Thus, as Judge Smith correctly observed, the Government's argument "really is a complete circumvention . . . of the Appointments Clause." *Id.* at 16:45-16:54. As there is no basis in law or fact for such an argument, it is, by definition, frivolous.

violate the anti-kickback statute with respect to Medicare patients. ECF Doc. 1.

On March 23, 2023, Mr. Naviwala was arrested.

On April 4, 2023, Mr. Naviwala had his initial appearance where he was released on an unsecured $150,000 appearance bond and travel restrictions. ECF Docs. 7 & 9.

Nearly a year later, on February 16, 2024, an indictment was finally issued against Mr. Naviwala alleging various counts of violations of the federal anti-kickback, wire fraud, and healthcare fraud statutes. ECF. Doc. 22.

Nearly a year after that, on January 3, 2025, a ten-count superseding indictment was issued charging Mr. Naviwala with various counts of healthcare fraud and violations of the anti-kickback statute. According to the Government, Mr. Naviwala conspired with others to defraud Medicare and other insurers through the issuance of durable medical equipment—prefabricated off-the-shelf orthotics—to patients that did not have *bona fide* medical needs for them. ECF Doc. 73.

On February 6. 2025, trial commenced on the superseding indictment. ECF Doc. 126.

On February 14, 2025, Judge Farbiarz granted the Government's motion to voluntarily dismiss two counts *with prejudice*. ECF Doc. 133.

On February 28, 2025, nearly **two years** after the original Complaint was filed against him and after a three-week trial, a jury acquitted Mr. Naviwala of two counts and returned guilty verdicts on the remaining six counts. ECF Doc. 176. Coupled with the Government's prior motion to voluntarily dismiss two counts with prejudice, the two additional acquittals plainly indicate that the case against Mr. Naviwala suffered from significant deficiencies and was not otherwise overwhelming.

Also on February 28, 2025, the Court imposed significantly more onerous terms of release on Mr. Naviwala by requiring him to post a $1 million bond secured by his parents' residential property, and to be placed on "24-hour home confinement" at a pre-approved residence for which he was allowed to leave only for medical necessity, religious service, consultations

with his lawyers, court appearances, and emergency childcare obligations.[3] Additionally, Mr. Naviwala was also placed on location monitoring. ECF Doc. 179. These conditions of release remain in full force and effect.

On March 20, 2025, Mr. Naviwala, through his prior counsel, moved for acquittal on the six counts of conviction, or in the alternative for a new trial. ECF Doc. 186.

On April 10, 2025, the Government filed its opposition to the motion for acquittal. ECF Doc. 199.

The very next day, on April 11, 2025, Mr. Naviwala's primary trial counsel, Jamie Hoxie Solano, Esq., moved to withdraw because she was switching law firms. ECF Doc. 200. This forced Mr. Naviwala to retain new counsel, totally unfamiliar with the case, to scramble to file a reply to the Government's opposition to his motion for acquittal, and to prepare for sentencing.

On April 24, 2025, the undersigned entered his appearance on behalf of Mr. Naviwala. ECF Doc. 202. So that the undersigned would have sufficient time to review thousands of pages of trial transcripts, the many filings on the docket, and to obtain and review the voluminous discovery, the undersigned moved to continue sentencing from July 29, 2025, to no earlier than September 30, 2025; and for an extension of time to file a reply to the Government's opposition to Mr. Naviwala's motion for acquittal from May 1, 2025, to July 1, 2025. ECF Doc. 203.

Also on April 24, 2025, Mr. Naviwala's remaining counsel all moved to withdraw. ECF Docs. 204-208.

On April 25, 2025, Judge Farbiarz granted all of prior counsels' motions to withdraw. ECF Docs. 210-215. That same day, Judge Farbiarz denied Mr. Naviwala's request to continue sentencing, but granted his request for an extension of time to file a reply to the Government's opposition. ECF Doc. 217. Mr. Naviwala timely filed his reply on July 7, 2025. ECF Doc. 235.

_____

[3] After his second attempt to obtain a modification of bail allowing him the ability to leave the home to exercise, and in light of his change of residence and health concerns, Magistrate Judge Adams, over the government's strong objections, granted the modification, allowing him to engage in daily exercise at the community center where he now resides with his parents. ECF Doc. 255.

On July 3, 2025, Mr. Naviwala again moved to adjourn his sentencing hearing then scheduled for July 29, 2025, to no earlier than September 30, 2025, in light of *inter alia* the need for an expert evaluation to be completed and the fact the undersigned was having difficulty obtaining the entirety of discovery from the Government, which comprised several terabytes of data. ECF Doc. 231.

On July 11, 2025, Judge Farbiarz granted the motion to adjourn sentencing and rescheduled sentencing for October 1, 2025. ECF Doc. 237. In so doing, Judge Farbiarz emphasized that "***[t]here will be no further adjournments***." (Emphasis added).

Mr. Naviwala's motion for acquittal, now fully briefed, was set for oral argument on July 29, 2025. The day before, undersigned counsel flew from Arizona to New Jersey to attend this hearing. The moment he deboarded the plane in New Jersey, he received notice that Judge Farbiarz *sua sponte* adjourned the hearing *sine die*. ECF Doc. 239. Judge Farbiarz did so in light of events that ultimately resulted in this Court's decision in *Giraud* disqualifying Alina Habba and those acting pursuant to her authority or under her supervision from further participating in the prosecution of criminal cases within this District due to an Appointments Clause violation.

On August 25, 2025, the Government filed a notice of appeal of this Court's decision reported at *United States v. Giraud*, _ F.Supp.3d _, 2025 U.S. Dist. LEXIS 162451, 2025 WL 2416737 (D.N.J. Aug. 21, 2025). *United States v. Giraud*, 1:24-cr-768 (D.N.J. Aug. 25, 2025), ECF Doc. 146. That appeal was docketed on August 25, 2025, in the United States Court of Appeals for the Third Circuit as *United States v. Giraud*, 25-2635. The appeal was joined with *United States v. Pina*, 25-2636, and has been set for expedited briefing and oral argument. However, the Third Circuit has limited review solely to Ms. Habba's disqualification and thus the appeal does not involve the issue of remedy. *Giraud*, 25-2635, ECF Doc. 23.

On September 2, 2025, citing your Honor's decision in *Giraud*, Mr. Naviwala informed Judge Farbiarz that he objected to Ms. Habba and those acting pursuant to her authority or under her supervision from further participating in his prosecution, ECF Doc. 241, and expressly moved to disqualify them. ECF Docs. 243, 244. While the Government incorrectly claimed that

6

Mr. Naviwala was seeking an adjournment of his sentence, ECF Doc. 245, Mr. Naviwala made it unambiguously clear that he was not. ECF Doc. 246. Mr. Naviwala emphasized that he was only seeking the disqualification of Ms. Habba and those acting pursuant to her authority and under her supervision from continuing to participate in his prosecution, and **nothing more**. *Id.* at 2 ("Mr. Naviwala is not seeking an adjournment of sentencing, and cannot be clearer on this matter."). Mindful of Judge Farbiarz's order that there would be "no further adjournments" of sentencing, Mr. Naviwala was prepared to move forward with his sentencing, then scheduled for October 1, 2025. Indeed, in preparation for sentencing, Mr. Naviwala had moved out of his apartment, did not renew the lease, moved in with his parents (where he remains) and relinquished several personal belongings.

On September 15, 2025, Judge Farbiarz *sua sponte* transferred Mr. Naviwala's case to your Honor citing an order by the Chief Judge of the U.S. Court of Appeals for the Third Circuit to transfer cases raising the Appointments Clause violation to your Honor. ECF Doc. 248.

On September 22, 2025, this Court *sua sponte* stayed "[a]ll proceedings and pending motions in this matter . . . pending resolution of the consolidated appeal in *Giraud* and *Pina*." ECF Doc. 250 at 3. In its Order, this Court noted that

> [p]ending in this case are Mr. Naviwala's Rule 29 motion for acquittal and his sentencing. Resolution of those matters is not within the purview of my special designation. . . . I leave their merits to Judge Farbiarz. Nevertheless, as my ruling in *Giraud* makes clear, I do not believe that Assistant United States Attorneys acting directly under Ms. Habba's authority may participate in ongoing prosecutions. . . . [M]y decision in *Giraud* and Mr. Naviwala's objections compel a continuance until the issue of Ms. Habba's authority is finally resolved. The parties should be prepared to proceed to sentencing and a hearing on the Rule 29 motion . . . *as expeditiously as possible* upon re-transfer.

*Id.* at 2 (emphasis in original).

On October 1, 2025, the day Mr. Naviwala's sentencing was scheduled, the federal Government shutdown. As of the time of filing the instant motion, the shutdown continues and is adversely impacting the operation of the federal courts. *See* Mattathias Schwartz, NY Times, "How

the Government Shutdown Is Slowing the Federal Courts," Oct. 1, 2025 ("In a raft of new filings made at courthouses across the country on Wednesday, Justice Department lawyers asked judges to pause their cases, arguing that the department didn't have enough personnel to handle them because of the lack of Congressionally approved funding.").[4] Indeed, the Administrative Office of U.S. Courts reported that it could only maintain "paid operations" through October 17, 2025. Admin. Ofc. U.S. Courts, News, "Judiciary Still Operating as Shutdown Starts," Oct. 1, 2025.[5]

Oral argument in the Government's appeal of the *Giraud* decision occurred on Monday, October 20, 2025. *United States v. Giraud*, 25-2635 (3d Cir. Oct. 3, 2025), ECF Doc. 36; *id.* Audio of Oral Argument.[6] As noted above, the issue on appeal is limited solely to the issue of Ms. Habba's disqualification and does not involve the denial of the remedy sought, i.e., the denial of the dismissal of the indictment. *Id.*, ECF Doc. 23. So far, six amici have filed briefs representing academics, defense attorneys, former prosecutors, and former members of Congress from across the political spectrum. *See id.*, ECF Doc. 21 (Separation of Powers Clinic), ECF Doc. 40 (Bipartisan Current and Former Members of Congress), ECF Doc. 41 (Association of Criminal Defense Lawyers of New Jersey), ECF Doc. 42 (Cato Institute), ECF Doc. 45 (Former United States Attorneys), ECF Doc. 46 (Republican Former Members of Congress). Not one agrees with the arguments advanced by the Government. All six amici favor affirmance of your Honor's decision in *Giraud*. Indeed, as Judge Smith correctly observed during oral argument, the Government's argument "really is a complete circumvention . . . of the Appointments Clause." *United States v. Giraud,* 25-2635, Audio of Oral Argument at 16:45-16:54.

## ARGUMENT

### I.    The Government's Appointments Clause Violation is Presumptively Harmful; Mr. Naviwala is <u>Entitled</u> to a Decision on the Merits and Appropriate Relief

---

[4] Available at https://www.nytimes.com/2025/10/01/us/politics/federal-courts-slowing-shutdown.html.

[5] Available at https://www.uscourts.gov/data-news/judiciary-news/2025/10/01/judiciary-still-operating-shutdown-starts

[6] Available at https://www2.ca3.uscourts.gov/oralargument/audio/25-2635USAv.JulienGiraudJr..mp3.

The Appointments Clause is not some mere rule of "etiquette or protocol" incidentally set forth in the Constitution. *Ryder v. United States*, 515 U.S. 177, 182 (1995). Quite to the contrary, the Appointments Clause embodies two fundamental principles inherent to our form of Government: separation of powers and checks and balances. While the President has the exclusive power to nominate and appoint principal officers such as United States Attorneys, that power is checked by the requirement that the Senate consent to any such appointment. Given the enormous power wielded by executive officers, this check is critical to preserving liberty.

"The [Appointments] Clause, like all of the Constitution's structural provisions, 'is designed first and foremost not to look after the interests of the respective branches, but ***to protect individual liberty***.'" *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 317 (2017) (Thomas, J., concurring) (emphasis added; quoting *NLRB v. Noel Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring in judgment) (internal quotation marks and bracket omitted)). The Appointments Clause "protect[s] individual liberty" by compelling the branches of government to work with each other in the exercise of their powers. *See Clinton v. City of N.Y.*, 524 U.S. 417, 452 (1998) (Kennedy, J., concurring). The Framers and Ratifiers of the Constitution understood that it was not enough to merely separate the powers of government in different branches. Maintenance of this separation also *required* "checks and balances." *Perez v. Mortg. Bankers Ass'n*, 572 U.S. 92, 118 (2015) (Thomas, J., concurring in the judgment). These checks and balances enable each branch of government to enforce the separation and constitutional limit of power on the other branches.

It is for this reason that the appointment of a principal officer requires the joint action of both the President and the Senate. Not only is this power of the Senate meant to be a check on the power of the President, but as even Alexander Hamilton noted, this provision in particular was meant to *reduce* the power of the President. Alexander Hamilton, The Federalist No. 69 ("[T]here is no comparison between the intended power of the President and the actual power of the British sovereign. The one can perform alone what the other can do only with the concurrence of a branch of the legislature.").[7]

---

[7] Available at https://guides.loc.gov/federalist-papers/text-61-70#s-lg-box-wrapper-

Thus, "the President *must* obtain 'the Advice and Consent of the Senate' before appointing an 'Office[r] of the  United States.'" *NLRB v. Canning*, 573 U.S. 513, 518-519 (2014) (emphasis added; quoting U. S. Const., Art. II, §2, cl. 2). To be sure, "the Appointments Clause is aimed at more than an abstract division of labor between the branches of government: '***The structural principles secured by the separation of powers protect the individual as well***.'" *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 156 (3d Cir. 2020) (emphasis added; quoting *Bond v. United States*, 564 U.S. 211, 222 (2011)).

As the Third Circuit has explained:

> The importance of the Appointments Clause has been recognized since our nation's founding. In the colonial system, appointments were distributed in "support of a despicable and dangerous system of personal influence," *The Federalist No. 77*, at 421 (Alexander Hamilton) (E.H. Scott ed., 1894), that enabled officers to "harass our people, and eat out their substance," *The Declaration of Independence* para. 12 (U.S. 1776). Indeed, the "power of appointment to offices" was seen in the Founding Era as "the most insidious and powerful weapon of eighteenth century despotism." *Freytag v. Comm'r*, 501 U.S. 868, 883, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991) (quoting Gordon S. Wood, *The Creation of the American Republic 1776-1787* 79, 143 (1969)). By requiring that all "Officers of the United States" be appointed by the president, a head of department, or a court of law, see U.S. Const. art. II, § 2, cl. 2, our Founders sought to replace that "despicable and dangerous system," *The Federalist No. 77, supra*, at 421, with one that favored political accountability and neutrality, and our Supreme Court has upheld the protection of the Clause in various cases for the express purpose of "protec[ting] individual liberty," *NLRB v. Noel Canning*, 573 U.S. 513, 571, 134 S. Ct. 2550, 189 L. Ed. 2d 538 (2014) (Scalia, J., concurring) (citation omitted), and upholding the "principle of separation of powers," *Buckley v. Valeo*, 424 U.S. 1, 121, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976).

*Cirko*, 948 F.3d at 153-154.

Accordingly, to ensure "political accountability and neutrality," *id.* at 154, and to "protec[t] individual liberty," *Bond*, 564 U.S. at 223, "[e]xecutive officials who have significant authority ***must*** be properly appointed." *Lofstad v. Raimondo*, 117 F.4th 493, 501 (3d Cir. 2024) (emphasis added). After all, the Constitution's

---

25493456.

> structural provisions reflect the founding generation's deep convic-
> tion that checks and balances were the foundation of a structure of
> government that would protect liberty. It is for that reason that the
> claims of individuals—not of Government departments—have been
> the principal source of judicial decisions concerning separation of
> powers and checks and balances. Those decisions all rest on the bed-
> rock principle that the constitutional structure of our Government is
> designed first and foremost not to look after the interests of the re-
> spective branches, but to protect individual liberty.

*NLRB v. Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring, Roberts, C.J., Thomas and

Alito, JJ., joining) (citation modified).

All this is to say that as "the separation of powers exists for the protection of individual

liberty," *id.*, "[a]n individual litigant need not show direct harm or prejudice caused by an Ap-

pointments Clause violation. . . . ***Such harm is presumed.***" *Cirko*, 948 F.3d at 154 (emphasis

added); *Intercollegiate Broad. Sys. v. Copyright Royalty Bd. & Librarian of Cong.*, 796 F.3d

111, 123 (D.C. Cir. 2015) (holding that "an Appointments Clause violation is a structural error

that warrants reversal regardless of whether prejudice can be shown") (citing *Landry v. FDIC*,

204 F.3d 1125, 1131 (D.C. Cir. 2000)). Moreover,

> one who makes a timely challenge to the constitutional validity of
> the appointment of an officer who [prosecutes] his case is ***entitled***
> to a decision on the merits of the question and whatever relief may
> be appropriate if a violation indeed occurred. Any other rule would
> create a disincentive to raise Appointments Clause challenges with
> respect to questionable [prosecutor] appointments.

*Ryder v. United States*, 515 U.S. 177, 182-183 (1995) (emphasis added).

## II.    Appointments Clause Violations So Fundamentally Impugn the Integrity of a Crim-
inal Proceeding That They Cannot be Waived and Will Even Defeat a Court's Juris-
diction

Section 516 of Title 28 of the United States Code provides that "the conduct of litigation

in which the United States . . . is a party . . . is reserved to officers of the Department of Justice,

under the direction of the Attorney General." In turn, 28 U.S.C. § 547(1) provides that "each

United States attorney, within his district, shall prosecute for all offenses against the United

States." Thus, only officers of the Department of Justice—specifically, United States Attor-

neys—may prosecute offenses within their respective districts. But they may only do so if

properly appointed as this Court concluded in *Giraud*. Absent that, the Court does not even have

11

jurisdiction to proceed. *See United States v. Providence Journal Co.,* 485 U.S. 693, 708 (1988) (dismissing for lack of jurisdiction a writ of *certiorari* sought by a special prosecutor who lacked authorization from the Solicitor General); *United States v. Durham,* 941 F.2d 886, 891-93 (9th Cir. 1991) (if prosecution was conducted by Special Assistant United States Attorney who was not properly appointed and supervised, trial court lacked jurisdiction); *United States v. Garcia-Andrade*, No. 13-CR-993, 2013 U.S. Dist. LEXIS 110759, 2013 WL 4027859, at \*5-9 (S.D. Cal. Aug. 6, 2013) (dismissing prosecution for lack of jurisdiction because prosecutor lacked active bar license as required by applicable statutes); *see also Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 664-665 (2019) (holding that Virginia House of Delegates was unauthorized to seek *certiorari* on behalf of Commonwealth and so had no standing; dismissing for lack of jurisdiction; citing *Providence Journal Co.*); *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) (holding that appellate court lacked jurisdiction to decide matter where appellant lacked standing; vacating and remanding with instructions to dismiss; citing *Providence Journal Co.*).

So fundamental is the Appointments Clause to the integrity of a criminal proceeding that, like jurisdiction itself, it cannot be waived.[8] That is because the Appointments Clause "serves as 'an inseparable element of the constitutional system of checks and balances.'. . . To the extent that this structural principle is implicated in a given case, ***the parties cannot by consent cure the constitutional difficulty*** for the same reason that the parties by consent cannot confer on federal courts subject-matter jurisdiction." *CFTC v. Schor*, 478 U.S. 833, 850-51 (1986) (citation omitted). *See also Pacemaker Diagnostic Clinic v. Instromedix*, 725 F.2d 537, 543-44 (9th Cir. 1984) ("The component of the separation of powers rule that protects the integrity of the constitutional structure . . . cannot be waived by the parties."). Indeed,

> [t]he [Appointments] Clause, like all of the Constitution's structural

---

[8] The Government has repeatedly tried to impugn Mr. Naviwala for any delay caused in this case, and derided him for not waiving this issue and allowing sentencing to proceed. *See* ECF Doc. 252 (stating that "there would be no need to stay any aspect of this case if Naviwala waived the authority issue"). Mr. Naviwala, nor any individual, should ever be bullied into a waiver of fundamental rights.  More importantly, as argued here, the law is very clear: Mr. Naviwala could not waive these rights even if he wanted to.

> provisions, "is designed first and foremost not to look after the in-
> terests of the respective branches, but to protect individual lib-
> erty." *NLRB v. Noel Canning*, 573 U.S. 513, 571 (2014) (Scalia, J.,
> concurring in judgment) (internal quotation marks and bracket omit-
> ted) It is therefore irrelevant that "the encroached-upon branch ap-
> proves the encroachment." *Free Enterprise Fund*, *supra*, at 497, 130
> S. Ct. 3138, 177 L. Ed. 2d 706 (internal quotation marks omit-
> ted). "***Neither Congress nor the Executive can agree to waive" the
> structural provisions of the Constitution any more than they could
> agree to disregard an enumerated right.*** *Freytag* v. *Commissioner*,
> 501 U.S. 868, 880, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991).

*NLRB v. SW Gen., Inc.*, 580 U.S. 288, 317-318 (2017) (Thomas, J., concurring) (emphasis added).

Put more colorfully, "[n]o doubt there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept." *United States v. Mezzanatto*, 513 U.S. 196, 204 (1995) (internal quotation marks and citation omitted); *Wheat v. United States*, 486 U.S. 153, 154 (1988) (affirming district court's denial of defendant's "waiver of his right to conflict-free counsel and by refusing to permit [defendant's] proposed substitution of attorneys"). Thus, "[a]bsent a proper representative of the Government . . . in this criminal prosecution, ***jurisdiction is lacking***." *Providence Journal Co.,* 485 U.S. at 708 (emphasis added).

## III.    An Indefinite Delay in Sentencing Violates Due Process

As noted above, not only is prejudice presumed by an Appointments Clause violation, but such renders a court without jurisdiction to proceed in the matter. Nonetheless, though he need not and does not waive the presumption, Mr. Naviwala can independently establish significant and immediate prejudice from ongoing violations of his Fifth Amendment due process rights.

> ***Convicted defendants have a due process right to a speedy sentenc-
> ing.*** *See, e.g., Betterman v. Montana*, 578 U.S. 437, 447-48, 136 S.
> Ct. 1609, 194 L. Ed. 2d 723 (2016) (noting that at the sentencing
> stage "due process serves as a backstop against exorbitant delay");
> *United States v. Lacerda*, 958 F.3d 196, 219 (3d Cir. 2020) (stating
> that "the convicted defendant maintains his due process rights" at
> the sentencing stage). To determine whether a defendant was de-
> prived of this due process right, we consider: "(1) the length of the
> delay; (2) the reasons for the delay; (3) the defendant's assertion of
> his right; and (4) any prejudice suffered by the defendant." *Lacerda*,

13

> 958 F.3d at 219-20. No factor is "necessary or sufficient" to find a
> due process deprivation, but rather they are "related factors and must
> be considered together with such other circumstances as may be rel-
> evant." *Burkett v. Fulcomer*, 951 F.2d 1431, 1439 (3d Cir. 1991)
> ("Burkett II") (quoting *Barker v. Wingo*, 407 U.S. 514, 533, 92 S.
> Ct. 2182, 33 L. Ed. 2d 101 (1972)). Courts must therefore engage in
> a "difficult," "sensitive," and "fluid" "balancing" of the factors. *Id.*
> (quoting *Barker*, 407 U.S. at 533).

*United States v. Small*, No. 22-1469, 2023 U.S. App. LEXIS 17117, *7, 2023 WL 4399212 (3d

Cir. July 7, 2023) (emphasis added).

As the Supreme Court long ago observed, "the time for sentence is of course not at the

will of the judge. Rule 32(b)(1) of the Federal Rules of Criminal Procedure requires the imposi-

tion of sentence 'without unreasonable delay.'" *Pollard v. United States*, 352 U.S. 354, 361

(1957) (quoting a prior iteration of FRCP 32(b)(1)). Rule 32(b)(1) currently provides that "[t]he

court must impose sentence without unnecessary delay." This Rule provides "[t]he primary safe-

guard" against "undue delay" "between conviction and sentencing." *Betterman*, 578 U.S. at 447.

Nor is the time for sentencing at the will of the Government. Indeed, "the government's motive

for the delay [in sentencing] plays an important role in determining whether a due process viola-

tion has occurred. . . .  *[A]ny evidence that the delay was purposeful or due to bad faith would

provide strong evidence of a due process violation*." *United States v. Sanders*, 452 F.3d 572, 581

(6th Cir. 2006) (emphasis added; citations omitted).

Here, the indefinite delay in Mr. Naviwala's sentencing is solely as a result of the now-

adjudicated Appointments Clause violation regarding Ms. Habba. This is a problem solely of the

Government's making—one which it inexcusably and steadfastly fails to cure, and one which it

can easily cure by simply appointing a duly nominated and confirmed U.S. Attorney. The Gov-

ernment has had ample opportunity to follow the Constitution for the nearly *three months* since

this issue was first raised in *Giraud*. *United States v. Giraud*, 1:24cr768, "First Motion to Dis-

miss and for Alternative Relief" (D.N.J. July 27, 2025), ECF Doc. 99. Indeed, "a court's holding

that there has been an Appointments Clause violation does not mean that the violation cannot be

remedied by a new, proper appointment." *Intercollegiate Broad. Sys. v. Copyright Royalty Bd. &

Librarian of Cong.*, 796 F.3d 111, 124 (D.C. Cir. 2015). But when the judges of this District

appointed Desiree Leigh Grace as the United States Attorney under their statutory authority—which would have avoided the Appointments Clause violation altogether, the Government immediately thwarted that effort by firing Ms. Grace[9] and re-installing Ms. Habba in direct violation of the Appointments Clause. *See Judges Reject Trump's Pick for Top New Jersey Federal Prosecutor, DOJ Removes Successor*, Reuters, July 22, 2025.[10]

Notwithstanding the considerable chaos that has ensued in this District, and this Court's well-reasoned decision in *Giraud* disqualifying Ms. Habba—which has since been endorsed by at least six amici including former United States Attorneys and former members of Congress, *Giraud*, 25-2635 (3d Cir.), ECF Docs. 21, 40, 41, 42, 45 & 46—the Government remains obstinate in its position that Ms. Habba legitimately holds the office of United States Attorney, and now has engaged in a frivolous appeal. *See supra* text accompanying note 2. But regardless of whether the Court of Appeals affirms or reverses this Court's decision in *Giraud*, that absolutely will not be the end of the matter. It is beyond doubt that the losing party—most likely the Government—will seek reconsideration, *en banc* review, petition the United States Supreme Court for *certiorari* and likely undertake all three. Moreover, this matter is now actively percolating in at least four other districts with one having also ordered the disqualification of the Acting U.S. Attorney as a result of an Appointments Clause violation.

On September 30, 2025, Senior Judge Campbell[11] ordered the disqualification of the Acting U.S. Attorney in the District of Nevada and those she supervised from handling specified criminal matters as a result of an Appointments Clause violation citing, *inter alia*, this Court's decision in *Giraud*. *United States v. Garcia*, No. 2:25-cr-00230; No. 2:25-cr-00227; No. 2:25-

---

[9] Ms. Grace has appealed her termination to the Merit Systems Protection Board calling it "completely unjustified." Justin Wise, *NJ Prosecutor Fired to Make Way for Alina Habba Files Appeal*, Bloomberg Law, Aug. 6, 2025, available at https://news.bloomberglaw.com/white-collar-and-criminal-law/new-jersey-judges-pick-for-top-prosecutor-challenges-firing.

[10] Available at https://www.cnbc.com/2025/07/22/ judges-reject-trumps-pick-for-top-new-jersey-federal-prosecutor-doj-removes-successor.html.

[11] Senior Judge Campell sits in the U.S. District Court for the District of Arizona. Like your Honor, he was designated to handle all such appointment clause matters arising within the District of Nevada by the Chief Judge of the Ninth Circuit.

cr-00240; No. 3:25-cr-00026; 2025 U.S. Dist. LEXIS 194389, 2025 WL 2784640 (D. NV. Sept. 30, 2025). That decision is now also on appeal. *United States v. Garcia*, 25-6229 (9th Cir. Oct. 3, 2025). All this is to say, ultimate resolution of this matter is many months away—possibly even a year or more—as the litigation inexorably progresses toward the Supreme Court.

Such recalcitrance in continuing to litigate this issue in several district courts[12]—notwithstanding at least two unequivocal losses and counting—plainly evidences purposefulness on the part of the Government if not outright bad faith. Indeed, the Government itself expressly recognizes the adverse impact its frivolous position is having on this Court in its appellate brief in *Giraud*: "The district court stayed the effects of its orders pending appeal, but district courts in New Jersey have adjourned numerous criminal trials and sentencing hearings, and some courts are refusing to proceed with guilty plea hearings, which has created *a backlog of stalled criminal cases in the District of New Jersey*." Gov't Br. at 13, *United States v. Giraud*, 25-2635 (3d. Cir. Sept. 12, 2025) (citation omitted; emphasis added), ECF Doc. 25. And yet, the Government does nothing to cure this fast-growing backlog of criminal cases that has now metastasized across several districts.

The Government's purposefulness in delaying prosecution is especially demonstrated by the fact that the Government—and it alone—can easily and quickly remedy the matter, for which it has had ample opportunity. Indeed,

---

[12] In addition to this District and the District of Nevada, litigation pertaining to an Appointments Clause violation of the Acting U.S. Attorney is now actively underway in the Central District of California, the District of New Mexico, and the Eastern District of Virginia. *See* "Notice of Motion and Motion to Disqualify Counsel as to Bilal A. Essayli and His Supervisees," *United States v. Garcia*, 2:25-cr-655 (C.D. Calif. Aug. 29, 2025), ECF Doc. 21; "Motion to Dismiss Indictment and Disqualify United States Attorney," *United States v. Black*, 1:25-cr-3354 (D.N.M. Sept. 10, 2025), ECF Doc. 20; "James B. Comey, Jr.'s, Motion and Memorandum in Support of Motion to Dismiss Indictment," *United States v. Comey*, 1:25-cr-272 (E.D. Va. Oct. 20, 2025), ECF Doc. 60. Finally, John A. Sarcone, III, the purported Acting U.S. Attorney for the Northern District of New York, appears to be susceptible to an Appointments Clause challenge. Kathleen Sweet, Bloomberg Law, "Unvetted, Unconfirmed US Attorneys Shift Too Much Power to Trump," Oct. 9, 2025, https://news.bloomberglaw.com/us-law-week/unvetted-unconfirmed-us-attorneys-shift-too-much-power-to-trump.

> Ms. Habba could reduce the risk to current and future cases by rec-
> using herself until the appeals court makes a decision, but has thus
> far ***declined to do so***. In response, judges are delaying all manner of
> proceedings, often to avoid the possibility that they might be thrown
> out entirely if Judge Brann's ruling is upheld. The appeals process
> is likely to take some time.

Tracey Tully and Jonah E. Bromwich, *Inside the Crisis Gripping New Jersey's Federal Courts*,

N.Y. Times, Aug. 28, 2025 (emphasis added).[13]

The Government has made the deliberate choice to grind the criminal justice system to a

halt in order to subvert the very Constitutional protections designed to prevent this kind of abuse

of power in the first place. This is not, after all, a case where the very ability of the Government

to even prosecute an individual for a particular offense must be resolved before proceeding. *E.g.*,

*United States v. Alvarez*, 567 U.S. 709 (2012) (Government appeal regarding constitutionality of

Stolen Valor Act; holding Act infringed on speech protected by First Amendment). Nor does it

involve a legal issue that even poses a "substantial question," i.e., "one that is 'fairly debatable'

by 'jurists of reason.'" *Gayle v. Warden Monmouth Cty. Corr. Inst.*, 12 F.4th 321, 329 (3d Cir.

2021) (quoting *United States v. Smith*, 793 F.2d 85, 88-89 (3d Cir. 1986) (quoting *Barefoot v.

Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see supra* text accompanying note 2.

Rather, as expressly set forth in the President's social media post reproduced at the begin-

ning of this motion, the President is blatantly usurping the role of the Senate by unilaterally seat-

ing a particular individual without the Senate's consent and over the Judiciary's objection to

oversee prosecutions in this District, including that of Mr. Naviwala's, in direct violation of the

Appointments Clause—a matter which now has been adjudicated against the Government in at

least two districts so far. The irony of this should not be lost on the Court. It was, after all, a vio-

lation of the Appointments Clause that resulted in the dismissal of a superseding indictment

against the President himself for far more serious offenses than what Mr. Naviwala has been con-

victed of.

"On June 8, 2023, a grand jury in the Southern District of Florida returned an indictment .

---

[13] Available at https://www.nytimes.com/2025/08/28/nyregion/new-jersey-federal-court-
slowdown.html.

. . charging [then-]former President Trump with thirty-one counts of willful retention of national defense information in his Mar-a-Lago residence, in violation of 18 U.S.C. § 793(e)." *United States v. Trump*, 740 F. Supp. 3d 1245, 1254 (S.D. Fla. 2024). A superseding indictment later "increase[ed] the number of total charges to forty-two." *Id.* President Trump thereafter successfully brought an Appointments Clause challenge as to the Special Counsel who had been designated by the Attorney General to prosecute him. *See id.* As the district court framed the Appointments Clause violation, it was that the office of Special Counsel itself was invalid, i.e., "the problem is the absence of a statutorily created office to fill in the first place. As the Supreme Court has made clear, 'there can be no officer, either *de jure* or *de facto*, if there is no office to fill.'" *Id.* at 1304 (quoting *Norton v. Shelby County*, 118 U.S. 425, 441 (1886)). Thus, "*[a]ll actions* that flowed from [the Special Counsel's] defective appointment—including his seeking of the Superseding Indictment on which this proceeding currently hinges—were unlawful exercises of executive power." *Id.* at 1303 (emphasis added). Accordingly, "[b]ecause Special Counsel Smith's exercise of prosecutorial power has not been authorized by law, the Court sees no way forward aside from dismissal of the Superseding Indictment." *Id.* at 1302. The exact same conclusion for the exact same reason holds here.

Just as a criminal defendant does not have the absolute right to be represented by any particular individual, *Wheat v. United States*, 486 U.S. 153, 159 (1988) ("The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects."), neither does the Government even with the consent of the defendant. *See* Pt. II, *supra*; *see also Mezzanatto*, 513 U.S. at 204 ("[T]here may be some evidentiary provisions that are so fundamental to the reliability of the factfinding process that they may never be waived without irreparably discrediting the federal courts.") (Internal quotation marks and citation omitted). Accordingly, that the Government continues to frivolously assert a non-existent right to unilaterally appoint whoever the President desires as United States Attorney in the face of depriving hundreds of defendants of due process—including Mr. Naviwala—unequivocally demonstrates the Government's bad faith, which this Court should not countenance a moment longer. "The Judicial Branch must be most

18

vigilant in guarding the separation between the political powers precisely when those powers collude to avoid the structural constraints of our Constitution." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 318 (2017) (Thomas, J., concurring). For, as the district court observed in *Trump*, "'illegitimate and unconstitutional practices get their first footing . . . by silent approaches and slight deviations from legal modes of procedure.'" *Trump*, 740 F. Supp. 3d at 1308-1309 (quoting *Boyd v. United States*, 116 U.S. 616, 635 (1886)).

## IV.    Additional Grounds Establishing Prejudice and Due Process Violations

### A.  *Mr. Naviwala is Being Precluded from Possible Vindication*

"The Due Process clause . . . protects not only against delays in trial, including sentencing; it also guarantees a reasonably speedy appeal if the state has chosen to give defendants the right to 'attempt[] to demonstrate that the conviction, and the consequent drastic loss of liberty, is unlawful. Where post-verdict delays not only impede sentencing but also the appeal as of right, the clause is doubly implicated. Due process can be denied by any substantial retardation of the appellate process." *Burkett v. Cunningham*, 826 F.2d 1208, 1221 (3d Cir. 1987) (citation modified), rev'd on other grounds, *Betterman v. Montana*, 578 U.S. 437 (2016).[14]

---

[14] *Burkett*'s due process jurisprudence is still good law. As the Court of Appeals has observed,

> We once recognized a right to a speedy sentencing hearing under both the Sixth Amendment and the Due Process Clause. *See Burkett v. Cunningham*, 826 F.2d 1208, 1219-21 (3d Cir. 1987). But the Supreme Court of the United States has since clarified that the Sixth Amendment guarantees a defendant the right to a speedy trial, not a speedy sentencing. *Betterman v. Montana*, 136 S. Ct. 1609, 1613, 194 L. Ed. 2d 723 (2016). "That does not mean, however, that defendants lack any protection against undue delay at [sentencing].*" Id.* at 1617. Federal Rule of Criminal Procedure 32(b)(1) requires courts to "impose sentence without unnecessary delay." *Id.* And, the Supreme Court noted, the convicted defendant maintains his due process rights. *Id.*

> Thus, while *Betterman* overruled our speedy sentencing precedent under the Sixth Amendment, our precedent under the Due Process Clause survives.

*United States v. Lacerda*, 958 F.3d 196, 219 (3d Cir. 2020).

As a result of the Government's Appointments Clause violation and its failure to ameliorate the same in any way, Mr. Naviwala is unable to obtain a possible acquittal from his pending Rule 29 motion. Likewise, he cannot appeal his conviction and sentence until he is sentenced. It therefore is cruelly ironic that Mr. Naviwala's right to appeal is being indefinitely and unnecessarily delayed as a result of the Government exercising its own right to appeal. As noted above, this delay will be for several months at the very least, and likely for far longer, all the while with Mr. Naviwala's liberty constrained for days lost forever. Moreover, should Mr. Naviwala eventually be vindicated via his pending Rule 29 motion or on appeal, any resulting retrial also is being unnecessarily and indefinitely delayed, which risks spoliation of evidence and the availability of witnesses. *See Burkett*, 826 F.2d at 1225 (holding that "[d]ue process guarantees a criminal appellant certain minimum safeguards to make [any] appeal adequate and effective" and that defendant was "prejudiced by the monumental delay" which also "impaired" "defenses in case of reversal and retrial").

Thus, it must be emphasized that the indefinite delay caused by the Government's Appointments Clause violation is wholly unnecessary. The Government can proceed with the prosecution at any time. It simply refuses to do so in a manner compliant with law.  Meanwhile, Mr. Naviwala is left in a legal limbo forced to suffer multiple, ongoing due process violations.

### B.  Indefinite Home Confinement is Resulting in Irrevocable Loss of Liberty

Mr. Naviwala is already well into his *third year*—over 30 months—of defending himself against the Government's charges with no end in sight. For the 12-month period ending June 30, 2025, the median time from filing to disposition for felony matters in the District of New Jersey was only 15.4 months, and just 9.8 months nationwide. *See* Administrative Office of U.S. Courts, United States District Courts, "National Judicial Caseload Profile" and "New Jersey Judicial Caseload Profile."[15] Thus, Mr. Naviwala's case has already progressed nearly twice as long as a typical felony case within this District, and over three times longer than a typical felony

---

[15] Available at https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile 0630.2025.pdf.

case nationwide. And now, due exclusively to the Government's adjudicated Appointments Clause violation, resolution of Mr. Naviwala's case is being indefinitely delayed pending the Government's meritless appeal now exacerbated by the federal government shutdown.

For the 12-month period ending June 30, 2025, the median time from filing the notice of appeal to disposition in the Third Circuit was 9.2 months.  *See* Administrative Office of U.S. Courts, "U.S. Courts of Appeals Federal Court Management Statistics (June 30, 2025)."[16] The Government filed its notice of appeal in *Giraud* on August 25, 2025. *United States v. Giraud*, 1:24-cr-768, ECF Doc. 146. The Third Circuit has expedited the appeal. Therefore, assuming the expedited nature cuts the time to disposition in half—a very generous assumption in light of the Government shutdown—this means that *Giraud* likely will not be resolved until shortly after the New Year. At which point, the losing party will petition the Supreme Court for *certiorari* beyond any doubt. Assuming the Supreme Court takes the case—a very safe assumption given the manifestly important issues involved, a final resolution may not be had until late June 2026 at the earliest. Thus, this Court's *sua sponte* stay imposed on Mr. Naviwala could very well extend for up to another *eight months* if not more.

But if that were not enough, Mr. Naviwala has been on home confinement for more than seven months already. The stay now in place could extend his home confinement for a total of 15 months, at least. To be sure, being housed in a detention center is without question more restrictive than home confinement, but home confinement still constitutes a significant restriction on liberty. After all, "[i]t is technically a jail sentence in your home." *United States v. Donohue*, No.3:22-cr-253, 2024 U.S. Dist. LEXIS 216298, *16 n.4, 2024 WL 4905979 (M.D. Pa Nov. 27, 2024). And to state the obvious, home confinement "is more restrictive than probation," *id.*, which itself "substantially restrict[s] . . . liberty."  *Gall v. United States*, 552 U.S. 38, 48 (2007).

In fact, home confinement is often imposed by courts as well as the Bureau of Prisons as an alternative to incarceration on a one-to-one basis; meaning, every day of home confinement is

_____

[16] Available at https://www.uscourts.gov/ sites/default/files/document/fcms_na_appsummary 0630.2025.pdf.

considered the equivalent of one day of incarceration for purposes of sentencing. *See* USSG §§5C1.1(e)(3)(substituting "[o]ne day of home detention for one day of imprisonment"); 5F1.2 ("Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment."); 18 U.S.C. § 3624(c)(2) (directing the BOP to place prisoners on home confinement for up to six months as part of prerelease custody).

Thus, in effect, Mr. Naviwala has *already* served the equivalent of the median sentence imposed for extortion/racketeering offenses on those, like him, in Criminal History Category ("CHC") I (seven months) and for fraud/theft/embezzlement offenses also in CHC I (seven months). *See* U.S. Sentencing Commission, *2024 Sourcebook of Federal Sentencing Statistics*, tbl. 27.[17] If, however, the stay remains in place through resolution by the Supreme Court of the Appointments Clause issue, and that does not occur until June 2026, then, as noted above, Mr. Naviwala will have remained on home confinement for a full 15 months. Fifteen months of home confinement is equivalent to having been sentenced to nearly 18 months' incarceration when taking into consideration the customary reduction for Good Conduct Time. An 18-month sentence is greater than the median sentence imposed for such offenses in CHC I as bribery/corruption (12 months), obscenity/other sex offenses (12 months), national defense (16 months), stalking/harassing (17 months), and all offenses overall (12 months). *Id.* It is equivalent to the median sentence imposed for firearms offenses (18 months). *Id.*

Unfortunately for Mr. Naviwala, none of this time will ever be credited against any sentence ultimately imposed on him. *West v. Warden Fort Dix FCI*, 740 Fed. Appx. 237, 238 (3d Cir. 2018) ("prior to sentencing, defendants who are released on bail to detention in a residential re-entry center or to home confinement with electronic monitoring are not in 'official detention' within the meaning of § 3585(b)") (citations omitted); *Reno v. Kay*, 515 U.S. 50, 64 (1995). Thus, every day he has served and will continue to serve on home confinement is dead time—it is a loss of liberty he will never recover that cannot be credited toward any eventual sentence. *Id.*

---

[17] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2024/Table27.pdf.

And such dead time will be considerable—likely the equivalent of having served a typical sentence for a firearms offense at least. All that irrevocable loss of liberty solely because the Government wishes to litigate a meritless appeal is appalling.

## V.    Dismissal with Prejudice is the Only Remedy Available

As embodied in Fed. R. Crim. Proc. 48(b), this Court has the inherent authority to dismiss the Indictment due to the Government's failure to prosecute.[18] *United States v. Dreyer*, 533 F.2d 112, 113 n.1 (3d Cir. 1976) ("Rule 48(b) is a . . . restatement of the court's inherent power to dismiss a case simply for want of prosecution."). Moreover, in criminal cases, a federal court may use its "supervisory powers" to "implement a remedy" aimed at vindicating "recognized rights" and "deter[ring] illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983). Here, the Government's Appointments Clause violation and subsequent appeal have ground many criminal cases in this District—including this one—to a halt. In other words, the Government is willfully failing to prosecute this case, and has otherwise done nothing to remedy the situation. This is particularly egregious given how simple the remedy is.

A court's exercise of its inherent authority (1) "must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice;" and (2) "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Degen v. United States*, 517 U.S. 820, 823-24 (1996)). Thus, "a court may dismiss an indictment . . . only if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy was available to address the prejudice." *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019); *see also Hunt v.*

---

[18] Because others have raised this issue, to be as clear as possible, Mr. Naviwala's argument that the Superseding Indictment should be dismissed has absolutely nothing whatsoever to do with whether a legitimate attorney for the Government signed his indictment in compliance with Fed. R. Crim. Proc. 7(c)(1). This Court has previously ruled that "a defect in this signature is a 'technical deficienc[y] that [is] not necessarily fatal to the indictment.'" *United States v. Giraud*, , __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 162451, *70-71, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) (citation omitted). Moreover, Ms. Habba was not even the Acting U.S. Attorney at the time of Mr. Naviwala's Superseding Indictment in any event.

*United States*, 456 F.2d 582, 584 (3d Cir. 1972) ("An indictment should not be dismissed unless there has been deliberate or oppressive action by law enforcement officials."); *cf. Trump*, 740 F. Supp. 3d at 1307 ("'Across remedial contexts, the nature of the violation determines the scope of the remedy.'") (Quoting *Off. of the United States Tr. v. John Q. Hammons Fall 2006, LLC*, 602 U.S. 487, 494 (2024) (internal quotation marks and citation omitted)).

It is hard to imagine greater "misconduct" than a willful, ongoing constitutional violation that goes to the heart of our form of government. Moreover, as noted above, prejudice here is presumed as a result of the Government's adjudicated violation of the Appointments Clause. *See*, Pt. II, *supra*. While Mr. Naviwala is presumed prejudiced, the extent of any prejudice needed to warrant dismissal of an indictment has been found to be relatively modest even in non-Appointment Clause contexts. For example, in *United States v. Jiang*, 214 F.3d 1099 (9th Cir. 2000), the prosecutor for the Government was unable to appear for trial and no other prosecutor in that office was available. Thus, on the day of trial, the district court dismissed the indictment. "[T]he court concluded that Defendants would be substantially prejudiced by postponing their trials . . . because such a postponement would result in their spending approximately ***one month*** of additional time in jail before trial." *Id.* at 1102 (emphasis added).  While the Ninth Circuit affirmed the dismissal, it reversed and remanded with an order to enter the dismissal *without prejudice*. *Id.* at 1103. In so doing, the Ninth Circuit noted that "dismissal with prejudice under Rule 48(b) is an extreme sanction that is 'appropriate only where there is delay that is purposeful or oppressive.'" *Id.* (quoting *United States v. Sears*, 877 F.2d 734, 739 (9th Cir. 1989)(citation omitted)). "It is well accepted that any purposeful or oppressive delay on the part of the government is unjustifiable and clearly 'unnecessary.'" *United States v. Hern*, 331 F. Supp. 472, 474 (E.D. PA 1971) (quoting *Dickey v. Florida*, 398 U.S. 30, 51 (1970)); *Pollard v. United States*, 352 U.S. 354, 361 (1957) ("delay must not be purposeful or oppressive"). As argued above, the delay resulting from the Government's Appointments Clause violation is both purposeful and oppressive.

"The normal remedy for a due process violation is not discharge; rather, a court faced with a violation should attempt to counteract any resulting prejudice demonstrated by a

petitioner. However, discharge is warranted where attempting an alternate remedy would not vitiate the prejudice of the fundamental unfairness or would itself violate a petitioner's constitutional rights." *Burkett v. Cunningham*, 826 F.2d 1208, 1221-1222 (3d Cir. 1987) (citations omitted). "In exceptionally egregious circumstances, a delay itself may 'violate[] those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' . . . and which define 'the community's sense of fair play and decency.'" *Burkett*, 826 F.2d at 1222 (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (citations omitted)).

"Once the time that constitutes the delay has elapsed no remedy can call it back. Where delay is so extreme as to assume constitutional proportions, discharge thus becomes less of an unlikely remedy. Moreover, discharge is a generally available remedy where lesser remedies prove ineffective in curbing a continuing due process violation." *Burkett*, 826 F.2d at 1222 (citing *inter alia Lane v. Brown*, 372 U.S. 477, 485 (1963)). While not required, Mr. Naviwala has nevertheless established substantial, ongoing prejudice that warrants dismissal. *See* Pt. II(B), *supra*; *Virgin Islands v. Allick*, D.C. Crim. App. No. 2004/093, 2004/092, 2004/091, 2006 U.S. Dist. LEXIS 76252, *16, 48 V.I. 503, 511 (D.V.I. App. Div. Sept. 22, 2006) ("house arrest and electronic monitoring is a loss of liberty which may constitute prejudice warranting dismissal under [Fed. R. Crim. Proc.] 48") (citing *United States v. Taylor*, 487 U.S. 326, 340 (1988)).

In light of the "exceptionally egregious circumstances" presented by the Government's purposeful and oppressive Appointments Clause violation, frivolous appeal, and failure to take any ameliorative measures, the only remedy available to this Court is dismissal of the Superseding Indictment *with prejudice*.

> One who makes a timely challenge to the constitutional validity of the appointment of an officer . . . is entitled to relief. In such cases, which necessarily involve a Government actor's exercise of power that the actor did not lawfully possess, the proper remedy is invalidation of the *ultra vires* action. Invalidation follows directly from the government actor's lack of authority to take the challenged action in the first place. That is, winning the merits of the constitutional challenge is enough. . . .
>
> Here, . . . the appropriate remedy is invalidation of the officer's *ultra vires* acts. . . . All actions that flow[] from h[er] defective

> appointment . . . [are] unlawful exercises of executive power. Be-
> cause [the prosecutor] cannot wield executive power except as Arti-
> cle II provides, h[er] attempts to do so are void and must be un-
> wound. . . . [A]ny actions taken by [the prosecutor] are *ultra vires*
> and the . . . Indictment must be dismissed. . . . [T]he Court sees no
> alternative course to cure the unconstitutional problem.

*United States v. Trump*, 740 F. Supp. 3d 1245, 1302-1303 (S.D. Fla. 2024) (citation modified;

citations omitted).  Thus, as Ms. Habba's "exercise of prosecutorial power has not been author-

ized by law," there is "no way forward aside from dismissal of the Superseding Indictment." *Id.*

at 1302.

Here, even if there were no exceptionally egregious circumstances—and, to be sure, there

are—any dismissal must still be with prejudice as Mr. Naviwala was acquitted of two counts,

convicted of six, with the remaining two counts themselves previously dismissed with prejudice.

It is black letter law that under no circumstances may he be tried again on those same counts.

*Gamble v. United States*, 587 U.S. 678, 681 (2019) ("[T]he Double Jeopardy Clause of the Fifth

Amendment . . . provides that no person may be 'twice put in jeopardy' 'for the same offence.'. .

. [A]t its core, the Clause means that those acquitted or convicted of a particular 'offence' cannot

be tried a second time for the same 'offence.'"); *Martinez v. Illinois*, 572 U.S. 833, 834 (2014)

("Our cases have repeatedly stated the bright-line rule that jeopardy attaches when the jury is

empaneled and sworn.") (Internal quotation marks and citation omitted).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**



Mr. Naviwala fully recognizes and appreciates the magnitude of the relief he seeks in light of the jury verdict rendered against him (but also for him). The magnitude of the relief requested flows from the magnitude of the Government's direct assaults on due process and the foundations of our form of Government: separation of powers and checks and balances. As the President's social media post above[19] starkly illustrates, the assaults continue unabated.

The Appointments Clause is, ultimately, the key structural safeguard of individual liberty that the Government ignores at its peril. Just as the exclusionary rule was developed to curb Governmental abuse of an individual's liberty interests protected by the Fourth Amendment, *Davis v. United States*, 564 U.S. 229, 236-237 (2011) ("The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations."), dismissal of the Superseding Indictment here will also serve as a check on Governmental abuse of an individual's liberty interests protected by the Fifth Amendment. *See United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987) (explaining a court may dismiss an indictment when government misconduct creates a due process violation and to deter illegality and  protect judicial integrity). Thus, "rectifying . . . and correcting Appointments Clause violations in cases such as this one provides a suitable incentive to

---

[19] Archived at https://www.trumpstruth.org/statuses/33345.

make such challenges" to ensure the Judiciary fulfills its duty to check the Executive and, in so doing, protect individual liberty. *Ryder v. United States*, 515 U.S. 177, 186 (1995).

The Government's purposeful, oppressive, and bad faith conduct has resulted in continuing violations of Mr. Naviwala's due process rights, which leaves this Court with no other option than dismissal of the Superseding Indictment with prejudice. *See Trump*, 740 F. Supp. 3d at 1303 ("the Court sees no alternative course to cure the unconstitutional problem"). In the words of Justice Gorsuch during a recent oral argument: "The government's made its bed. Why shouldn't we let them lie in it?" *Ellingburg v. United States*, 24-482, Oral Arg. Trans. at 65:16-18 (Oct. 14, 2025).[20]

IN LIGHT OF THE ABOVE, Mr. Naviwala respectfully requests that this honorable Court dismiss the Superseding Indictment with prejudice.

RESPECTFULLY SUBMITTED,

Dated:  October 22, 2025.                    DOUG PASSON

 /s/ DOUG PASSON

Attorney for Defendant
RAHEEL NAVIWALA

---

[20] Available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-482_j5fl.pdf.

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2025, the foregoing DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT WITH PREJUDICE was filed electronically and a copy was served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Doug Passon_____
DOUG PASSON