Doug Passon
Law Offices of Doug Passon, PC
10565 N. 114th St., Suite 101
Scottsdale, AZ 85259
Telephone: 480.448.0086
Email: doug@dougpassonlaw.com

Rahul Agarwal
Friedman Kaplan Seiler Adelman & Robbins
7 Times Square
New York, NY 10036
(212) 833-1132
ragarwal@fklaw.com
***Attorneys for Defendant Raheel Naviwala***

Jason J. LeBoeuf, Esq. (#033612001)
ZIEGLER LAW GROUP, LLC
651 Old. Mt. Pleasant Avenue, Suite 150
Livingston, New Jersey 07039
(973) 533-1100/ (973) 533-1144 (f)
jason@zlgllc.com
***Attorney for Defendant Daniel Torres***

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>      v.<br><br>RAHEEL NAVIWALA,<br><br>             Defendant.<br><br>UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>      v.<br><br>DANIEL TORRES,<br><br>             Defendant.. | CASE NOS.  2:24-CR-99,<br>          2:24-CR-0378<br><br>**OMNIBUS CONSOLIDATED REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS SUPERSEDING INDICTMENT AND DISQUALIFY COUNSEL**<br><br>COURT: Hon. Matthew W. Brann |

.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iii

I.    Introduction: The Government Refuses to Comply with the Law..................... 1

II.   The Government Gaslights this Court................................................... 2

III.  The Dispersed Delegation Theory Rests on Mere *Ipse Dixit* ............................ 6

IV.   The Dispersed Delegation Theory Effectively Dissolves the Office of The United States Attorney ............................................................... 10

V.    The Dispersed Delegation Theory Constitutes an Illegal Power Grab by the Executive .................................................................................. 18

VI.   Dismissal of the Defendants' Superseding Indictments is Warranted and is the Only Remedy Available .............................................................. 23

CONCLUSION: STRUCTURE IS EVERYTHING ................................................. 28

CERTIFICATE OF SERVICE................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Betterman v. Montana*, 578 U.S. 437 (2016) ................................................27

*Booker v. United States*, 543 U.S. 220 (2005) ..............................................17

*Burkett v. Cunningham*, 826 F.2d 1208 (3d Cir. 1987) ...............................27

*Burns v. United States*, 501 U.S. 129 (1991) ................................................17

*Cody v. Kijakazi*, 48 F.4th 956 (9th Cir. 2022) .............................................24

Conn. Nat'l Bank v. Germain, 503 U.S. 249 (1992) ....................................16

*Davis v. United States*, 564 U.S. 229 (2011) ................................................27

En Hui Huang v. AG of the United States, 620 F.3d 372 (3d Cir. 2010) ...................15

Hanover Nat'l Bank v. Moyses, 186 U.S. 181 (1902) ...................................17

*In re Grand Jury Subpoenas to the Off. of the N.Y. State AG*, No. 25-Misc-19, 2026 U.S. Dist. LEXIS 3026 (N.D.N.Y. Jan. 8, 2026) .............................. 13, 23, 25

*In re Persico*, 522 F.2d 41 (2d Cir. 1975) .......................................................8

Intercollegiate Broad. Sys. v. Copyright Royalty Bd. & Librarian of Cong., 796 F.3d 111 (D.C. Cir. 2015)................................................................................24

*Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000).........................................24

*Lin-Zheng v. Att'y Gen.*, 557 F.3d 147 (3d Cir. 2009)..................................17

*Lucia v. SEC*, 585 U.S. 237 (2018) ...............................................................24

*Mapp v. Ohio*, 367 U.S. 643 (1961) ...............................................................27

*Norton v. Shelby County*, 118 U.S. 425 (1886)............................................12

Protopapas v. Brenntag AG (In re Whittaker Clark & Daniels Inc.), 152 F.4th 432 (3d Cir. 2025).................................................................................................17

Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996).. ..................................................................................................................4, 5

*Trump v. United States*, 603 U.S. 593 (2024) ........................................11, 12

*United States v. Di Girlomo*, 393 F. Supp. 997 (W.D. Mo. 1975).................9

*United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999) ..................................26

*United States v. Giraud*, 160 F.4th 390, 2025 U.S. App. LEXIS 31083, 2025 WL 3439752 (3d Cir. 2025) ................................................................................... passim

*United States v. Giraud*, 795 F. Supp. 3d 560 (D.N.J. 2025) ...................................... 6

*United States v. Giraud*, No. 1:24-cr-00768, 2025 U.S. Dist. LEXIS 148014, 2025 WL 2196794 (D.N.J. Aug. 1, 2025) .............................................................................. 25

*United States v. Hasting*, 461 U.S. 499 (1983) ......................................................... 27

*United States v. James*, __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 233031, 2025 WL 3266931(E.D. Va. 2025) ............................................................................................ 26

*United States v. Prueitt*, 540 F.2d 995 (9th Cir. 1976) ................................................ 8

*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) ............................... 12

*United States v. Weiner*, 392 F. Supp. 81 (N.D. Ill. 1975) .......................................... 9

*United States v. Wrigley*, 520 F.2d 362 (3d Cir. 1975) ................................................ 8

## Constitutional Provisions

U.S. Const., art. II, § 2, cl. 2 ....................................................................................... 11

## Statutes

3 U.S.C. § 301 ............................................................................................................ 21

5 U.S.C. § 3345 .................................................................................................... 13, 14

5 U.S.C. § 3346 .......................................................................................................... 14

28 U.S.C. § 509 ..................................................................................................... 8, 14

28 U.S.C. § 510 ..................................................................................................... 8, 14

28 U.S.C. § 516 ............................................................................................................ 8

28 U.S.C. § 546 .................................................................................................... 14, 26

28 U.S.C. § 547 .................................................................................................... 15, 16

## Law Reviews

Brian Richardson, *The Imperial Prosecutor?*, 59 Am. Crim. L. Rev. 39 (2022) .. 20, 22

Bruce A. Green & Rebecca Roiphe, *Can the President Control the Department of Justice?*, 70 Ala. L. Rev. 1 (2018) ................................................................................ 22

Hon. Antonin Scalia, *Symposium: Separation of Powers as a Safeguard of Federalism: Foreword: The Importance of Structure in Constitutional Interpretation*, 83 Notre Dame L. Rev. 1417 (2008) .......................................................................... 29

Rebecca Roiphe, *A Typology of Justice Department Lawyers' Roles and Responsibilities*, 98 N.C.L. Rev. 1077 (2020) ............................................. 22

## Other Authorities

Act of June 22, 1870, ch. 150, 16 Stat. 162 ................................................. 18

Appellant's Brief, *United States v. Giraud*, 25-2635 at 53 (3d Cir. Sept. 12, 2025), ECF Doc. 25 ..................................................................................... 3, 4, 12, 13

Att'y Gen. Pamela Bondi, Ofc. of Att'y Gen., Order No. 6510-2025 ......................... 8

H.R. Rep. No. 110-58 ................................................................................ 18, 19

Hearing Trans., *United States v. Baraka*, 25-mj-11131 (May 21, 2025) .................... 20

Josh Dawsey, *et al.*, *Trump Has Complained About Pam Bondi Repeatedly to Aides*, Wall St. J., Jan. 12, 2026 ...................................................................... 19

Judiciary Act of 1789, Act of Sept. 24, 1789, ch. 20, § 35, 1 Stat. 73 ........................ 18

Merriam-Webster, *Gaslighting* ...................................................................... 2

Order No. 5559-2022 ................................................................................... 11

Pet. of the United States for Rehearing En Banc, *United States v. Giraud*, Nos. 25-2635 & 25-2636 (3d Cir. Jan. 14, 2026) ............................................................ 16

Pub. L. 105-177 .......................................................................................... 13

*Restoring Checks and Balances in the Confirmation Process of United States Attorneys: Hearing on H.R. 580 Before the H. Committee on the Judiciary*, 110th Conf. 118 (Mar. 6, 2007) ................................................................................................. 21

U.S. Atty's Ofc. Dist. of New Jersey, *Criminal Division* .................................... 12

U.S. Dep't of Justice, Ofcs of the U.S. Attys, *Historical Timeline of the U.S. Attorneys* ............................................................................................................. 18

U.S. Dept. of Justice, *Justice Manual* ...................................................... 15, 17

## I.    INTRODUCTION: THE GOVERNMENT REFUSES TO COMPLY WITH THE LAW

Thwarted in its effort to install Alina Habba as the U.S. Attorney for this District under a unitary delegation theory (UDT), i.e., that the Attorney General can indefinitely delegate "all the powers of a U.S. Attorney"[1] in Ms. Habba alone, the Government now advances a novel theory that it previously rejected as absurd and materially indistinguishable from UDT: dispersed delegation. Instead of all authority delegated to a single individual, it now contends that such authority may be indefinitely dispersed among three individuals in the guise of an "Executive Office."

The Government concedes it has never advanced this theory before[2] and cites to the same statutory authority and makes the same argument in justification of this theory as it did for UDT. The Government was right the first time: the dispersed delegation theory (DDT), at least as applied in the circumstances here, is indistinguishable from UDT and thus fails for the exact same reasons.

Notably, the Government fails to address why following the law is not an option, i.e., why is the Government preventing the judges of this District from appointing a U.S. Attorney until the President nominates someone the Senate will confirm? At this juncture, the only conclusion to draw is that the Government is ***intentionally*** keeping the U.S. Attorney's Office for the District of New Jersey (USAO-DNJ)

---

[1] *United States v. Giraud*, 160 F.4th 390, 2025 U.S. App. LEXIS 31083, *37, 2025 WL 3439752 (3d Cir. 2025).

[2] ECF Doc. 284 at 36 (conceding that "no USAO has ever had the kind of supervisory structure now in place at the USAO-NJ"). All citations to ECF documents are to the ECF page number.

1

vacant indefinitely—something which has never happened for any USAO in the history of this country. By effectively abolishing the USAO, its traditional independence also is removed thus allowing all prosecutorial power to be consolidated into the Executive to exercise unchecked. But this is ***precisely*** what the Founders sought to avoid with the Appointments Clause, and why, for well over 200 years, Congress has required U.S. Attorneys to run "the gauntlet of presidential appointment and Senate confirmation."[3] Independence is neither a burden to, nor an option for, a democratic form of government; it is absolutely essential.

   This Court stands as the last bulwark against the Government's assault on the rule of law. Not only should this Court disqualify the Executive Office, Mr. Lamparello, and all those acting under his authority or supervision from continuing to prosecute these defendants, but it should also impose a remedy that fully vindicates the defendants' due process rights as well as serves as a sufficient and significant deterrent to the Government's unlawful power grab. There is only one such remedy that can accomplish those ends: dismissal of the Defendants' superseding indictments.

## II.    THE GOVERNMENT GASLIGHTS THIS COURT

   Before exposing the vacuity of the DDT, in what can fairly be characterized as "gaslighting,"[4] the Government claims that it "never argued in the *Giraud* appeal that

---

   [3] *Giraud*, 2025 U.S. App. LEXIS 31083 at *30.
   [4] "Gaslighting" is defined as "the act or practice of grossly misleading someone especially for one's own advantage." Merriam-Webster, *Gaslighting*, https://www.merriam-webster.com/dictionary/gaslighting.

the Attorney General could not delegate authority to multiple officials to oversee matters pending in the USAO-NJ."[5] Rather, the Government claims that it "**conceded it would _obviously_ be lawful to disperse delegated authority in that way**."[6] Not true.

Tellingly, the Government does not cite to such a "concession" anywhere in the record; it does not because it cannot—there is none. Rather, what the Government wrote in its appellate brief in *Giraud* speaks to the exact opposite.

> The district court attempted to downplay the consequences that would follow from its holding by suggesting that agency actions could later be ratified by Senate-confirmed officers. But that ignores the disruptive effect of courts entering prospective relief of the type that the district court granted here. Nor is the court's decision mitigated by its purported limitation to the delegation of "all" non-exclusive powers to "a single person," while reserving whether a "subset" of powers could be delegated or whether powers could be delegated among various individuals. ***It is not evident why that distinction would be material under the district court's reasoning. And if the statutory problem the district court identified could in fact be cured by having two officials, rather than one, jointly perform all the functions of a PAS office, that is a* reductio ad absurdum *of its ruling, not a defense of it.***[7]

This excerpt, which the Court of Appeals in *Giraud* characterized as "dismissive"[8] of DDT, hardly evidences a "concession" by the Government that "it would obviously be lawful to disperse delegated authority in that way." Nor does it constitute

---

[5] ECF Doc. 284 at 39 (emphasis added).

[6] *Id.* (emphasis added).

[7] Appellant's Brief, *United States v. Giraud*, 25-2635 (3d Cir. Sept. 12, 2025), ECF Doc. 25 at 53 (emphasis in original) (hereinafter "Govt's *Giraud* Brief").

[8] *Giraud*, 2025 U.S. App. LEXIS 31083 at *37.

3

an argument in favor of the same. What it does evidence is that during the *Giraud* litigation the Government advanced arguments unequivocally in **opposition** to DDT.

Thus, contrary to the Government's gaslighting, the record clearly demonstrates that, by now arguing in favor of DDT, the Government is expressly asserting a contradictory position. Moreover, whether the Court of Appeals accepted the Government's position "is not . . . an independent requirement for application of the doctrine of judicial estoppel."[9] In any event, it makes little sense for the Government to contend that the Court of Appeals "didn't rely"[10] on DDT when it was the Government that rejected DDT in the first place.

In fact, the Court of Appeals speculated that the theory "might"[11] work notwithstanding the Government's dismissiveness (although, of course, the theory does not work as the Government recognized). Consistent with the Government's rejection of DDT, the Court of Appeals declined to address DDT on the merits because those were not the facts before it.[12] Thus, the Government did prevail in arguing against DDT as an alternative to UDT.

Accordingly, both "prong[s] of judicial estoppel appl[y]."[13] The Government expressly argued that DDT was absurd and was not materially different from UDT,

---

[9] *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996).

[10] Govt's *Giraud* Brief at 53 (emphasis in original).

[11] *Giraud*, 2025 U.S. App. LEXIS 31083 at *37-38.

[12] *Id.* at *38.

[13] ECF Doc. 284 at 39.

which the Court of Appeals found unlawful. The Court of Appeals effectively agreed with the Government by declining to pass on the specific merits of DDT (although, since DDT is indistinguishable from UDT, it falls with it also). So, having failed in its advancement of UDT and still obstinately refusing to follow the law, the Government now argues in favor of DDT in direct contradiction of its earlier advocacy against that theory.

In that regard, the Government could have and should have explained its about-face in its brief in opposition in this case. Instead, the Government chooses to gaslight this Court. This Court should therefore estop the Government from "playing fast and loose with the courts."[14] As here, "a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."[15]

Finally, the Government obviously had the opportunity to raise and advocate for DDT in the *Giraud* litigation as it in fact did by raising it and advocating against it. Thus, apart from whether this Court should estop the Government from asserting a contrary position, this Court should at least find that the Government waived any argument in favor of DDT and be held to its original position. Otherwise, this Court will just invite the Government to parade an endless line of absurd work-arounds to the

---

[14] *Ryan Operations G.P.*, 81 F.3d at 358 (citations and internal quotation marks omitted).

[15] *Id.* (citations omitted).

law while it continues to operate above the law.

### III. THE DISPERSED DELEGATION THEORY RESTS ON MERE *IPSE DIXIT*

The Government wholly fails to address ***why*** the mere fact of dispersed and in-definite delegation of the authority of a United States Attorney legitimately circum-vents the Appointments Clause and the Federal Vacancies Reform Act (FVRA). While the Attorney General certainly has broad powers of delegation, such powers are not without limit. As the Court of Appeals expressly held in *Giraud*, they may not be used to delegate all the powers of a U.S. Attorney into a single individual indefinitely. "This *de facto* U.S. Attorney-by-delegation theory is plainly prohibited by the FVRA's exclusivity provision."[16]  Put differently, as this Court correctly held, "once FVRA and position-specific temporary appointments statutes have been exhausted, ***no one may hold the vacant office in <u>any</u> capacity***."[17] Notwithstanding these crystal clear holdings, the Government persists in advancing the facially absurd DDT.

In *dicta*, the Court of Appeals' surmised that "***some*** delegation by the Attorney General" of "the powers of a U.S. Attorney" "to Habba—or to any First Assistant U.S. Attorney" "***might*** not create a *de facto* U.S. Attorney."[18] Clearly, the Court of Appeals was indicating that the legitimacy of any such delegation turns on whether the delegation creates a *de facto* U.S. Attorney, not whether the delegation simply was

---

[16] *Giraud*, 2025 U.S. App. LEXIS 31083 at *29.

[17] *United States v. Giraud*, 795 F. Supp. 3d 560, 600 (D.N.J. 2025) (emphasis added).

[18] *Giraud*, 2025 U.S. App. LEXIS 31083 at *37-38 (emphasis added).

made to a single or multiple individuals. Moreover, it must be emphasized, the Court of Appeals was making this conjecture in the context of "*some* delegation," not the delegation of *all* the powers of the U.S. Attorney indefinitely, as the Government has done here.

The problem for the Government—that it does not resolve—is that the Attorney General's indefinite delegation of all the powers of the U.S. Attorney among three individuals in the guise of an "Executive Office" creates a *de facto* U.S. Attorney for the very same reasons it does when such a delegation is to a single individual. Pointing to nothing more than that the delegation was distributed among more than a single individual does absolutely nothing to advance the Government's argument, but that is all and only what the Government does here. When it is boiled down to its core, the Government's argument amounts to mere *ipse dixit*: one bad; three good. But whether three is good simply begs the question especially where the Government relies on the exact same powers of delegation it did in *Giraud*.

Indeed, the Government's own examples of the Attorney General's broad delegation authority do not in any way support DDT. In fact, the Government's examples do not even support its narrower claim that "[d]elegating a to single person authority over matters in the Criminal and Special Prosecutions Divisions does not . . . make that person a *de facto* U.S. Attorney."[19]

---

[19] ECF Doc. 284 at 32.

The three 50-year-old cases the Government cites[20] are all examples of delegations in the context of "Strike Forces" pertaining to attorneys who specialized in the prosecution of certain types of crimes.[21] All involved delegations pursuant to 28 U.S.C. § 516, and not, as the Attorney General did here, delegations pursuant to 28 U.S.C. §§ 509 and 510.[22] In none of these cases were attorneys indefinitely delegated authority over entire divisions of a U.S. Attorney's Office, or delegated authority to supervise the prosecution of each and every offense brought in that district. Moreover, these attorney-specialists prosecuted cases *in conjunction with* local Assistant U.S. Attorneys in districts that had *bona fide* U.S. Attorneys.[23]

As one federal judge contemporaneously observed at the time, "attorneys specially appointed by the Attorney General (such as the strike force members) do not have the power or practical ability to usurp the function of a local United States

---

[20] *See id.* at 33.

[21] *See United States v. Prueitt*, 540 F.2d 995, 1000 (9th Cir. 1976) (affirming delegation to "*assist* in the trial of the case or cases growing out of" violations of the Controlled Substances Act, which court found to be "similar to a Strike Force attorney"); *In re Persico*, 522 F.2d 41, 52 (2d Cir. 1975) ("this challenge concerns the ability of one Strike Force attorney to appear before one grand jury");  *United States v. Wrigley*, 520 F.2d 362, 369-370 (3d Cir. 1975) (affirming appointments of "special attorneys to conduct any criminal proceeding in a designated judicial district which United States Attorneys are authorized to conduct" but expressing "apprehensions with respect to the widespread use of special attorneys; an apprehension that has not been lessened by the sometimes inept performance in recent years of special attorneys").

[22] Att'y Gen. Pamela Bondi, Ofc. of Att'y Gen., Order No. 6510-2025 ("AG's Order"), https://www.justice.gov/opa/media/1420361/dl.

[23] *See supra* note 21 and accompanying text.

Attorney."[24] Thus, the Government's cited examples hardly provide any support for the Government's conclusory assertion that "[d]elegating to a single person supervisory authority over matters in the Criminal and Special Prosecutions Divisions does not . . . make that person a *de facto* U.S. Attorney."[25] Rather, the Government's reliance on these examples proves up Defendants' core point – that delegation of authority is typically narrow and limited and has never before been exercised in the broad way at issue here.

Indeed, the Government concedes that it "may be true in degree" that "no USAO has ever had the kind of supervisory structure now in place at the USAO-NJ."[26] It quibbles, though, that there have been "in kind." But the examples it cites fare no better than its Strike Force examples—in fact, they fare worse. So-called "Front Offices" are not wholesale replacements of the U.S. Attorney's position, which the Government itself states consist of "senior supervisory AUSAs ***in addition to the U.S. Attorney*** or Acting U.S. Attorney."[27] The Government then cites to examples of "signature blocks" remaining unchanged once a U.S. Attorney's Office becomes vacant.[28] So what? Apparently, the Government is arguing that what may be no more

---

[24] *United States v. Weiner*, 392 F. Supp. 81, 86 (N.D. Ill. 1975); *United States v. Di Girlomo*, 393 F. Supp. 997, 1005 (W.D. Mo. 1975) ("the special attorneys in this district are prevented from superseding the function of the local United States Attorneys by the internal procedures of the Department of Justice").

[25] ECF Doc. 284 at 32.

[26] *Id.* at 36.

[27] *Id.* (emphasis added).

[28] *Id.* at 37.

than inadvertent failures to update boilerplate language in pleadings somehow validates DDT. But in support of that exceedingly weak argument, the Government points to a letter from the Government Accountability Office regarding the service of an official in the Department of Justice's Office of Legal Counsel.[29] To point out the obvious, the Office of Legal Counsel is not a U.S. Attorney's Office.

Finally, the Government resorts to examples where *bona fide* U.S. Attorneys have had to recuse themselves from certain matters.[30] But recusal does not mean the U.S. Attorney has vacated the office, and so the example has very little if any relevance to the rather head-scratching point the Government is trying to make. Ultimately, the Government's concession that "no USAO has ever had the kind of supervisory structure now in place at the USAO-NJ" is buttressed by the examples of delegation it advances. In none of these examples was anyone delegated authority by the Attorney General to do the actual work of a U.S. Attorney's Office or even divisions thereof.

## IV. THE DISPERSED DELEGATION THEORY EFFECTIVELY DISSOLVES THE OFFICE OF THE UNITED STATES ATTORNEY

Ultimately, what DDT amounts to is not dispersion, but dissolution—dissolution of the U.S. Attorney's Office altogether. Straining credulity beyond its breaking point, the Government claims that "even if there is *no* United States Attorney—confirmed, interim, acting, or otherwise—the Attorney General may specifically direct

---

[29] *See id.*
[30] *See id.*

DOJ attorneys to conduct the work of a [United States Attorney's Office] and supervise how they do so. That is what she has done here."[31] The Executive thus attempts to evade Legislative oversight by simply treating the Congressionally-mandated position of the United States Attorney as, in effect, abolished.

In a transparent game of superficial semantics, the Government fabricates a so-called "Executive Office"—a creature of make-believe provenance—to "conduct the work" of a United States Attorney wholly unconstrained by the Appointments Clause and relevant statutes and of indefinite duration. Once again pointing to nothing more than the Attorney General's broad powers of delegation as it did in *Giraud*, the Government believes the Attorney General can, without Congressional authorization,[32]

---

[31] *Id.* at 21 (emphasis in original).

[32] In his concurrence in *Trump v. United States*, 603 U.S. 593 (2024), Justice Thomas explained a "way in which this prosecution may violate our constitutional structure." *Id.* at 643 (Thomas, J., concurring). Specifically, Justice Thomas pointed out that there had not been "any office for the Special Counsel . . . 'established by Law' as the Constitution requires." *Id.* (citing U.S. Const., art. II, § 2, cl. 2). Thus, "[i]f there is no law establishing the office that the Special Counsel occupies, then he cannot proceed with this prosecution." According to Justice Thomas, "[b]efore the President or a Department Head can appoint any officer, . . . the Constitution requires that the underlying office be 'established by Law' . . . [where] 'established by law' refers to an office that Congress creates 'by statute.'" *Id.* at 644-45 (citations omitted). As the "Executive Office" is ***not*** a creature of statute but rather is of the Attorney General's general delegation authority, ***no prosecutions may originate from it or its members***. *See id.* at 648 ("When the Attorney General appointed the Special Counsel, he did not identify any statute that clearly creates such an office. . . . Instead, the Attorney General relied upon several statutes of a general nature. *See* Order No. 5559-2022 (citing 28 U. S. C. §§509, 510, 515, 533).") (Citations omitted). Just two weeks after *Trump* was decided, the District Court for the Southern District of Florida dismissed the indictment against then-candidate Trump holding that the Special Counsel was without authority to prosecute him. "Here, . . . the problem is the absence of a

simply create such an Executive Office[33] in the place of a *bona fide* United States Attorney. But this Executive Office is functionally identical to a U.S. Attorney, which the Government itself has explicitly recognized.[34]

This purported Executive Office is, in fact and law, nothing more than a tripartite iteration of its unsuccessful predecessor and so fails for the exact same reasons. It

---

statutorily created office to fill in the first place. As the Supreme Court has made clear, 'there can be no officer, either *de jure* or *de facto*, if there is no office to fill.'" *United States v. Trump*, 740 F. Supp. 3d 1245, 1304 (S.D. Fla. 2024) (quoting *Norton v. Shelby County*, 118 U.S. 425, 441(1886)). The same holds here.

[33] The Government noticeably does not address what the Executive Office does or how it functions relative to the three designees. Do the three designees function collectively as a council of sorts? That would make sense given how inextricably intertwined each Division is with the others. *See, e.g.*, U.S. Atty's Ofc. Dist. of New Jersey, *Criminal Division* (updated Dec. 17, 2025) (stating that "[i]n addition to criminal AUSAs, all of the District's affirmative *civil* enforcement (ACE) lawyers . . . are assigned to the Criminal Division") (emphasis added), https://www.justice.gov/usao-nj/criminal-division. Or, are each of the designees functioning wholly independent of the others? The Government does not say. Either way the Attorney General has unconstitutionally created either a new office in the guise of the "Executive Office," or three new U.S. Attorneys, none of which were "established by Law." *Trump*, 603 U.S. at 643 (Thomas, J., concurring); *Trump*, 740 F. Supp. 3d at 1304. Take Mr. Lamparello, for example. He is functioning in the exact same way as Ms. Habba before him with respect to criminal prosecutions in the USAO-DNJ. Put differently, as far as criminal prosecutions are concerned, Mr. Lamparello functions no differently than a full-fledged U.S. Attorney. The same goes for Ms. Fox and Mr. Fontecchio for their respective areas of oversight. As all the duties of the U.S. Attorney have been delegated to them collectively in order to "do the work" of that Office, then it matters not whether they are viewed as a unit or individually. Like the Special Counsel, they constitute offices that have not been established by Law or so are without authority to perform the duties they have been delegated. *See supra* note 33 and accompanying text; *Trump*, 603 U.S. at 643 (Thomas, J., concurring); *Trump*, 740 F. Supp. 3d at 1304.

[34] Govt's *Giraud* Brief at 53.

is, in the words of the Government, a "*reductio ad absurdum*"[35] of the Court of Appeals' binding decision that, as broad as the Attorney General's powers of designation may be, she may not designate a *de facto* United States Attorney and thereby "avoid the gauntlet of presidential appointment and Senate confirmation."[36] And this is so regardless of title or headcount. If the entity "conduct[s] the work" of the United States Attorney, then it *is* the United States Attorney for purposes of the Appointments Clause and FVRA.[37] Where there is a vacancy, after all, the Attorney General's broad powers of designation can serve—at most—as a temporary "stopgap[] rather than [a] substitute[] for Presidential nomination and Senate confirmation."[38]

But even that stopgap is no longer available to the Government. As Judge Lorna Schofield recently explained when disqualifying the purported Acting U.S. Attorney for the Northern District of New York, "Congress made the FVRA and § 546 the *only* statutory routes for temporarily filling U.S. Attorney vacancies."[39] So,

> When a U.S. Attorney vacancy arises, the office need not sit vacant until the Senate confirms a Presidential nominee. Instead, Congress authorized four means of temporarily filling the position:

---

[35] Govt's *Giraud* Brief at 53.

[36] *Giraud*, 2025 U.S. App. LEXIS 31083 at *30.

[37] Pub. L. 105-177; 5 U.S.C. § 3345, et seq. "The FVRA provides that it is 'the exclusive means for temporarily authorizing an acting official to perform *the functions and duties* of' a PAS office." *Giraud*, 2025 U.S. App. LEXIS 31083 at *6-7.

[38] *In re Grand Jury Subpoenas to the Off. of the N.Y. State AG*, No. 25-Misc-19, 2026 U.S. Dist. LEXIS 3026, *15 (N.D.N.Y. Jan. 8, 2026) (disqualifying purported U.S. Attorney on identical grounds as set forth in *Giraud*).

[39] *Id.* at *16 (emphasis added).

• first, by operation of statute -- the FVRA automatically designates the First Assistant to serve as Acting U.S. Attorney for up to 210 days. 5 U.S.C. §§ 3345(a)(1), 3346;

• second, by the Attorney General -- § 546 permits the Attorney General to appoint an Interim U.S. Attorney for up to 120 days. 28 U.S.C. § 546(a), (c)(2);

• third, by the President -- the FVRA allows the President to select either another Senate-confirmed officer or a senior official with at least 90 days of service in the agency to serve as Acting U.S. Attorney for up to 210 days. 5 U.S.C. § 3345(a)(2)-(3) and

• fourth, by the district court -- if the 120-day § 546 period expires without a Senate-confirmed appointee, the district court may appoint a U.S. Attorney to serve until the vacancy is filled. 28 U.S.C. § 546(c)(2), (d).[40]

But "Congress also made explicit that ***general delegation statutes cannot circumvent the FVRA***."[41] And, of course, 28 U.S.C. §§ 509 and 510 are "[g]eneral delegation statutes."[42] Thus, as a matter of logic, law, and time (as we are well past the 120-day limit), the Attorney General may not now use 28 U.S.C. §§ 509 and 510 to delegate ***any*** powers to ***anyone*** for the purpose of filling a U.S. Attorney vacancy in any capacity. And this is so regardless of the degree of dispersion.

Removing all doubt that DDT rests on the dissolution of the USAO are the Government's own words: "even if Congress were to entirely abolish the office of U.S. Attorney, the Attorney General would unquestionably have the power herself to

---

[40] *Id.* at *14-15.

[41] *Id.* at *16 (emphasis added).

[42] *See id.*

14

conduct, delegate, and supervise criminal and civil litigation on behalf of the United States within the District of New Jersey."[43] Be that as it may, the problem for the Government is that Congress obviously has not abolished the USAO, and that is just as fatal for DDT as it was for UDT.

Thus, it must be emphasized that it is Congress—not the Attorney General—that gives the U.S. Attorney authority "within his district," to "prosecute for *all* offenses against the United States."[44] As even the latest iteration of the Department of Justice's *Justice Manual* recognizes: "The United States Attorney, within his/her district, has ***plenary authority*** with regard to federal criminal matters."[45] And as the Court of Appeals has held, "'[p]lenary' means 'full; complete; entire.'"[46] Contrary to the Government, therefore, there is a "conceivable reason why the Attorney General . . . lacks the power to assign [various divisions of the USAO-NJ] to . . . three individuals . . . because there is a vacancy in the office of the U.S. Attorney."[47] Namely, that Congress never gave the Attorney General such power.

In this regard, it is quite notable that the Government never points to any authority—statutory or otherwise—that affirmatively and expressly states that the

---

[43] ECF Doc. 284 at 27.

[44] 28 U.S.C. § 547(1) (emphasis added).

[45] U.S. Dept. of Justice, *Justice Manual*, §9-2.001 (emphasis added) (hereinafter "Justice Manual"), https://www.justice.gov/jm/jm-9-2000-authority-us-attorney-criminal-division-mattersprior-approvals.

[46] *En Hui Huang v. AG of the United States*, 620 F.3d 372, 388 (3d Cir. 2010) (quoting Black's Law Dictionary (9th ed. 2009)).

[47] ECF Doc. 284 at 28.

Attorney General may delegate to multiple individuals the authority to perform all the work of a U.S. Attorney when that office is vacant. Rather, the Government merely presumes that statutory silence implies permission, hence its claim that "nothing in 28 U.S.C. § 547 commands otherwise."[48] The Government expressed its statutory-silence-implies-permission position even more clearly in its recent petition for en banc reconsideration in *Giraud*:

> The plain text of the FVRA ***does not prohibit*** that delegation: the FVRA ***does not prohibit*** the exercise of delegable functions or provide a remedy for the unlawful exercise of delegable functions. The FVRA . . . ***does not purport to prohibit*** the exercise of delegable functions by non-acting officials.[49]

The question, though, is not what the FVRA "does not prohibit," but what it expressly allows. This Court "must presume that a legislature says in a statute what it means and means in a statute what it says there."[50] If the statute is unambiguous, then "judicial inquiry is complete."[51] The Government never alleges any statutory ambiguity because there is none, and so may not presume permission from silence. Therefore, this Court need not engage the Government's argument further.

But even where a statute is silent on the question at issue—here, the ability of

---

[48] *Id.*

[49] Pet. of the United States for Rehearing En Banc, *United States v. Giraud*, Nos. 25-2635 & 25-2636 (3d Cir. Jan. 14, 2026), ECF Doc. 85 at 15 (emphasis added).

[50] *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

[51] *Id.* at 254 (internal quotation marks and citation omitted).

the Attorney General to delegate all duties and functions of a U.S. Attorney to others indefinitely—such silence "does not confer gap-filling power on an agency. . . ."[52] Therefore, any "inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent."[53] To state the obvious, the Government's exegesis of the FVRA's silence as somehow permitting the Attorney General to, at her whim, indefinitely and unilaterally override the authority of the U.S. Attorney is manifestly "contrary to" all evidence of "congressional intent."

Congress expressly reserved all prosecutorial power in the U.S. Attorney for the district she oversees, as the Government explicitly recognizes in the *Justice Manual*.[54] If "all" indeed means all, and plenary power means the full, complete and entire power, then there is no independent and exclusive prosecutorial power left for the Attorney General to exercise in the absence of a *bona fide* confirmed, acting, or interim U.S. Attorney.[55]

---

[52] *Lin-Zheng v. Att'y Gen.*, 557 F.3d 147, 156 (3d Cir. 2009) (en banc) (internal quotation marks and citation omitted).

[53] *Burns v. United States*, 501 U.S. 129, 136 (1991), *abrogated on other grounds by Booker v. United States*, 543 U.S. 220 (2005).

[54] *Justice Manual*, §9-2.001 (emphasis added).

[55] To have plenary power, after all, entails that one has exclusive power. *See, e.g.*, *Protopapas v. Brenntag AG (In re Whittaker Clark & Daniels Inc.)*, 152 F.4th 432, 445 (3d Cir. 2025) (explaining that bankruptcies are "an area of **exclusive** federal competence" because "'[t]he framers of the Constitution . . . granted **plenary power** to Congress over the whole subject of 'bankruptcies'") (emphasis added; quoting *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 187 (1902)).

## V. THE DISPERSED DELEGATION THEORY CONSTITUTES AN ILLEGAL POWER GRAB BY THE EXECUTIVE

There is a much larger issue here of fundamental and extraordinary importance of which this Court should be fully cognizant. A United States Attorney is not a mere underling of the Attorney General; the district she oversees, is not some subdivision of the Department of Justice. Indeed, when Congress created both the position of the United States Attorney and that of the Attorney General in 1789,[56] they were completely independent of each other. There was not even a Department of Justice at that time.[57] Rather, "[a]s originally established, the United States Attorney appointed for a Federal judicial district acted independently and was answerable only to the President."[58] Only much later did Congress—not the Executive—give the Attorney General oversight of the nation's United States Attorneys.[59]  But, in so doing, Congress did not abolish the independence of United States Attorneys, which is a fundamental and necessary aspect of their role that continues to this day. As the House Report accompanying the "Preserving United States Attorney Independence Act of 2007" observed,

> A United States Attorney exercises wide discretion in the use
> of resources to further the priorities of his or her district.

---

[56] Judiciary Act of 1789, Act of Sept. 24, 1789, ch. 20, § 35, 1 Stat. 73, 92. *See also* U.S. Dep't of Justice, Ofcs of the U.S. Attys, *Historical Timeline of the U.S. Attorneys* (updated Apr. 21, 2023), https://www.justice.gov/usao/timeline/history#event-judiciary-act-of-1789-creates-role-of-united-states-attorneys.

[57] The Department of Justice was not created until 81 years later in 1870. *See* Act of June 22, 1870, ch. 150, 16 Stat. 162.

[58] H.R. Rep. No. 110-58, at 3 n.6 (citation omitted).

[59] *See id.*

> Largely as a result of its origins as ***a distinct prosecutorial outpost*** of the Federal Government, ***the office of the United States Attorney traditionally has operated with an <u>unusual level of independence</u> from the Justice Department*** in a broad range of daily activities.[60]

Congress intentionally kept this independence intact precisely because it did not want to centralize the awesome power wielded by the many United States Attorneys across this country's vast and disparate districts into the Attorney General alone, and ultimately, the President. In that regard, the President is now reportedly considering firing the Attorney General because he perceives her to be a "weak and ineffective enforcer of his agenda."[61]

> Trump has talked with allies about how he could appoint special counsels at the Justice Department because he is so frustrated with what he sees as the slow progress of its work. . . . Chief among his grievances is what he sees as [Attorney General] Bondi's failure to quickly and effectively prosecute the investigators who had pursued him for years, including former FBI Director James Comey and New York Democratic Attorney General Letitia James. . . . Both criminal cases were dismissed in November by a judge who said the Trump aide who secured the indictment had been improperly appointed to her post. Trump has wanted to see the cases continue quickly.[62]

As Magistrate Judge Andre Espinosa observed last year when admonishing prosecutors from the U.S. Attorney's Office for this District regarding the prosecution

---

[60] H.R. Rep. No. 110-58, at 3 (emphasis added; footnote omitted).

[61] Josh Dawsey, et al., <u>Trump Has Complained About Pam Bondi Repeatedly to Aides</u>, Wall St. J., Jan. 12, 2026, https://www.wsj.com/politics/policy/trump-has-complained-about-pam-bondi-repeatedly-to-aides-fd424df3.

[62] *Id.*

of Newark Mayor Ras Baraka, which was brought for what was widely perceived to be political purposes, "[y]our role is not to secure convictions at all costs, nor to satisfy public clamor, *nor to advance political agendas*. Your allegiance is to the impartial application of the law, to the pursuit of truth, and to the upholding of due process for all."[63] As Judge Espinosa correctly observed, "federal prosecutors serve a singular paramount client: Justice itself."[64] Thus, United States Attorneys are not the servants of the Attorney General or the President, and so maintaining their independence is absolutely essential to their work.

As former federal prosecutor and now law professor Brian Richardson has observed, "[b]y and large, our criminal code expresses Congress's desire for *decentralized prosecutorial authority*, with all the loss of bureaucratic restraint that such a system entails."[65] Overly-centralized authority, in contrast, would quite obviously jeopardize the integrity of the criminal justice system by too easily injecting politics, incompetence and indeed, corruption, into the mix. As Atlee Wampler, III, the then-president of The National Association of Former United States Attorneys, testified during a public hearing on the "Preserving United States Attorney Independence Act:"

> [T]he United States attorney cannot be perceived to be biased toward nor influenced by any political party in power nor by politically prominent people nor people of great

---

[63] Hearing Trans., *United States v. Baraka*, 25-mj-11131 at 10:7-9 (May 21, 2025) (emphasis added).

[64] *Id.* at 10:5-6.

[65] Brian Richardson, *The Imperial Prosecutor?*, 59 Am. Crim. L. Rev. 39, 82 (2022) (emphasis added; internal quotation marks and footnote omitted).

wealth. That polestar requirement manifests the principle that ***the U.S. attorney must have a degree of <u>substantial independence</u>***. . . . If the U.S. attorney is doing his or her job of fairly carrying out the prosecution and the laws of the United States, he or she is going to upset some very important and prominent people and people of great wealth. . . . A President and an attorney general must respect that U.S. attorneys are charged with the statutory duty of enforcement of the laws impartially and fairly in the district, which gives the United States attorney an element of independence. ***The U.S. attorney is not charged by Congress with being simply a team player***.[66]

According to Wampler, "[t]he United States attorney is not an executive widget, is not a fungible executive commodity."[67]

It is precisely that "polestar requirement" of independence that the Executive seeks to abolish through the unprecedented application of DDT. By simply bypassing the PAS process required for seating a United States Attorney through the exploitation of the Attorney General's designation power, the Government is in fact attempting to centralize all prosecutorial authority into the Attorney General—and ultimately the President himself—by fiat. Under this theory, there is nothing to stop the President, who also wields broad powers of designation,[68] from bypassing the PAS process for

---

[66] *Restoring Checks and Balances in the Confirmation Process of United States Attorneys*: *Hearing on H.R. 580 Before the H. Committee on the Judiciary*, 110th Conf. 118 (Mar. 6, 2007) (statement of Atlee Wampler, III, President, The National Association of Former United States Attorneys) (emphasis added), https://www.govinfo.gov/content/pkg/CHRG-110hhrg33809/pdf/CHRG-110hhrg33809.pdf.*Id.* at 118 (emphasis added).

[67] *Id.* at 117.

[68] 3 U.S.C. § 301 ("The President of the United States is authorized to designate and empower the head of any department or agency in the executive branch, or

the Attorney General position itself, something which he appears to be on the cusp of doing as previously noted. Not only would all prosecutorial power be concentrated in the President alone, but the states would lose all say in how the federal government wields such power within their borders. This is precisely why Congress originally "did not centralize federal legal power . . . because at least some feared the power of the federal government" would not only "jeopardize the relative power of the states" but "individual liberty" too.[69]

Accordingly, "[c]ontrol of criminal prosecutions by a chief executive is not part of this country's received tradition."[70] Indeed, "Attorney General nominees since Watergate have endorsed the principle of prosecutorial independence from the President, and Senators have regarded a commitment to independence from the President as an essential qualification for the position."[71] Thus, "[t]he norm of prosecutors' independence is now taken to be . . . embedded in our understanding of criminal justice,"[72] so much so that "[p]rosecutors' independence has . . . been vaunted as a cornerstone of American democracy, built into the way the country is governed."[73]

---

any official thereof who is required to be appointed by and with the advice and consent of the Senate, to perform without approval, ratification, or other action by the President . . . any function which is vested in the President by law.").

[69] Rebecca Roiphe, *A Typology of Justice Department Lawyers' Roles and Responsibilities*, 98 N.C.L. Rev. 1077, 1084 (2020) (citation omitted).

[70] Bruce A. Green & Rebecca Roiphe, *Can the President Control the Department of Justice?*, 70 Ala. L. Rev. 1, 12 (2018).

[71] *Id.* at 22 (footnotes omitted).

[72] Richardson, *supra* note 65, at 49 (footnote omitted).

[73] *Id.* (footnote omitted).

In light of the Government's now open assault on this cornerstone of American democracy through the delegation of *de facto* U.S. Attorneys,[74] this Court stands as the last bulwark against a fire of unfettered executive power that will eviscerate any oversight of, independence in, and, in fact, soon completely consume, this nation's United States Attorneys. The DDT thus represents a fundamental threat to individual liberty and our democratic form of government.

There are checks and balances for a reason. Democracy is supposed to be difficult. Executives must be held to account by well-qualified and experienced U.S. Attorneys permitted to exercise substantial independence. While the Government here seeks to evade the check of the Legislative branch by effectively eliminating the United States Attorney's Office, this Court must not let it also evade the Judiciary's. Dismissing these indictments is the very check that the law demands of this branch, which hopefully will begin the turning of this unlawful tide.

## VI.   DISMISSAL OF THE DEFENDANTS' SUPERSEDING INDICTMENTS IS WARRANTED AND IS THE ONLY REMEDY AVAILABLE

---

[74] In addition to this District, this assault-by-delegation has metastasized throughout the country. So far, interim or acting U.S. Attorneys have also been disqualified in the Central District of California, District of Nevada, District of New Mexico, Northern District of New York and the Eastern District of Virginia. *See In re Grand Jury Subpoenas to the Off. of the N.Y. State AG*, 2026 U.S. Dist. LEXIS 3026 at *10-11 (discussing and citing these cases); *id.* at *11 (observing there have so far been seven "challenge[s] to the recent appointment of an official effectively serving as a U.S. Attorney without Senate confirmation"). Tellingly, the Government has not created Executive Offices to run the respective U.S. Attorneys Offices in any of those districts while it litigates those disqualifications.

The Government does not dispute that a statutory violation regarding the filling of a vacant U.S. Attorney position is tantamount to an Appointments Clause violation. Nor does the Government dispute that "[a]n individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation. . . . **Such harm is presumed.**"[75] In that regard, "[g]iven its importance within our Constitution's structure, the Supreme Court has established remedies with bite for Appointments Clause violations."[76]

The Government claims that "if this Court concludes that Mr. Lamparello is unlawfully exercising all the authority of a U.S. Attorney, the only appropriate remedy under *Giraud* would be disqualifying him and any AUSA 'who prosecutes' Torres [and presumably Mr. Naviwala] 'under the supervision or authority of' Mr. Lamparello."[77] But then the Government further claims, quoting a prior decision of this Court, that no prosecutors would need to be disqualified because "'so long as . . . they are acting under Ms. Bondi's—and not [Mr. Lamparello]'s—authority (essentially a temporary recusal **until this matter is resolved**), there would appear to be no issue with all of the District of New Jersey's AUSAs moving prosecutions forward

---

[75] *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 154 (3d Cir. 2020) (emphasis added); *Intercollegiate Broad. Sys. v. Copyright Royalty Bd. & Librarian of Cong.*, 796 F.3d 111, 123 (D.C. Cir. 2015) (holding that "an Appointments Clause violation is a structural error that warrants reversal regardless of whether prejudice can be shown") (citing *Landry v. FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000)).

[76] *Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022) (citing *Lucia v. SEC*, 585 U.S. 237, 251 (2018)).

[77] ECF Doc. 284 at 34.

now.'"[78]

First, the Government ignores a very important qualifier: "until this matter is resolved." This Court obviously was speaking in the context of the then-pending litigation pertaining to Alina Habba. That matter has now been resolved with the Court of Appeals holding that the Attorney General may not use her broad powers of delegation to appoint a *de facto* U.S. Attorney. Apparently, the Government is now proposing that all of the District of New Jersey's AUSAs may proceed with prosecutions under the direct delegation of the Attorney General. But that is just another iteration of DDT, but with a higher headcount.

So, no, merely disqualifying Mr. Lamparello so that Ms. Bondi may once again directly and indefinitely appoint prosecutors to prosecute cases in this District does not work. Again, "Congress made the FVRA and § 546 the ***only*** statutory routes for temporarily filling U.S. Attorney vacancies. . . .  Congress also made explicit that ***general delegation statutes cannot circumvent the FVRA***."[79] Thus, the Attorney General may not use her powers of delegation to keep the prosecution engine running in a U.S. Attorney's Office where, as here, the position of U.S. Attorney remains vacant long after the 120-day term limit has expired—especially where, as here, it is being left

---

[78] ECF Doc. 284 at 42-43 (emphasis added; quoting *United States v. Giraud*, No. 1:24-cr-00768, 2025 U.S. Dist. LEXIS 148014, *24-25, 2025 WL 2196794 (D.N.J. Aug. 1, 2025).

[79] *In re Grand Jury Subpoenas to the Off. of the N.Y. State AG*, 2026 U.S. Dist. LEXIS 3026 at *16-17.

vacant *intentionally*. Delegating attorney-specialists to Strike Forces aimed at prosecuting particular types of offenses or offenders in cooperation with local AUSAs supervised by *bona fide* U.S. Attorneys is one thing, indefinitely delegating the supervision of whole divisions of a vacant U.S. Attorney's Office or the prosecution of all offenses in such a district is something else entirely.

Second, the Government appears to be intentionally avoiding the obvious remedy to the current impasse: allow the judges of this District to appoint a U.S. Attorney until the President nominates and the Senate confirms one. Indeed, that is exactly what transpired when the judges of this District appointed Desiree Grace to the position of U.S. Attorney.[80] The Government, however, deliberately defied the District Court when it immediately fired Ms. Grace.[81] All this is to say: the Government not

---

[80]  *Giraud*, 2025 U.S. App. LEXIS 31083 at *9.

[81] Section 546(d) of Title 28 of the U.S. Code provides that "the district court for such district may appoint a United States attorney to serve *until the vacancy is filled*." (Emphasis added). This implies that the appointee is to occupy that position unless and until the President nominates someone whom the Senate confirms. "The text and structure of subsection (d) in particular make clear the appointment power (1) shifts to the district court after the 120-day period and (2) *does not revert to the Attorney General if a court-appointed U.S. Attorney leaves office before a Senate-confirmed U.S. Attorney is installed*." *United States v. James*, __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 233031, *13, 2025 WL 3266931(E.D. Va. 2025) (emphasis added). Thus, the Attorney General's appointment power—which obviously encompasses the power to terminate—never reverted to her because the court-appointed U.S. Attorney—Desiree Grace—left office (involuntarily) *before* a Senate-confirmed U.S. Attorney was installed. As the Ninth Circuit has held, "the President retains the power to replace the court-appointed United States Attorney *with an Attorney appointed by the President and confirmed by the Senate.*" *United States v. Gantt*, 194 F.3d 987, 1000 (9th Cir. 1999) (emphasis added). Absent a PAS-approved candidate at the ready, the Government did not have the power to remove Ms. Grace.

only has violated the Appointments Clause and pertinent statutes, but is operating in open contempt of the District Court's order appointing Ms. Grace.

This brings us to remedy. As the Supreme Court has long held, a district court's inherent "supervisory powers" may be used to "implement a remedy for violation of recognized rights" and "as a remedy designed to **deter** illegal [Government] conduct."[82] This happens in many contexts, most especially for Fourth, Fifth and Sixth Amendment violations. As the Supreme Court has explained in the context of the Fourth Amendment, the exclusionary rule is "specifically designed" "to deter future Fourth Amendment violations."[83] And as Mr. Naviwala has discussed in prior filings, Fifth and Sixth Amendment due process violations can result in dismissals where, as here, there are unnecessary delays in sentencing and appeals.[84] In this regard, the Supreme Court has long held that "strict adherence" to what is "constitutionally required" must be "insiste[d] upon" or the Constitution shall be reduced to nothing more than "a form of words."[85] Convictions based upon violations of the Constitution, therefore, "should find no sanction in the judgments of the courts."[86]

As discussed above, the Government's proposed remedy is no remedy at all. It

---

[82] *United States v. Hasting*, 461 U.S. 499, 505 (1983) (emphasis added).
[83] *Davis v. United States*, 564 U.S. 229, 248 (2011).
[84] ECF 257 at 25 (citing *Burkett v. Cunningham*, 826 F.2d 1208, 1221 (3d Cir. 1987) (citation modified), *rev'd on other grounds, Betterman v. Montana*, 578 U.S. 437 (2016)).
[85] *Mapp v. Ohio*, 367 U.S. 643, 648 (1961) (internal quotation marks and citations omitted).
[86] *Id.* (internal quotation marks and citations omitted).

would allow the Government to continue prosecuting cases unconstrained by law or custom under a theory that necessarily results in the demise of the entire enterprise of independent federal prosecutors in favor of a fully centralized—and, indeed, weapon-ized—presidential prosecution force. So egregious is the Government's conduct, therefore—which continues unimpeded nationwide, that only a sanction "specifically designed" to both deter future Appointments Clause and FVRA violations as well as vindicate the defendants' due process rights—rights that already have been irredeema-bly violated in the case for Mr. Naviwala—should be imposed. There is but one sanc-tion that could possibly serve both the ends of vindication and deterrence: dismissal of the superseding indictments with prejudice. That is the only way for this Court to shut down the continuing illegal operation of the U.S. Attorney's Office for this District in violation of the Messrs. Naviwala and Torres' due process rights, and hopefully, fi-nally, motivate the Government to comply with the law.

## CONCLUSION: STRUCTURE IS EVERYTHING

The late Justice Scalia, in a foreword to a symposium on the separation of pow-ers at Notre Dame Law School, wrote: "it is a mistake to think that the Bill of Rights is the defining, or even the most important, feature of American democracy. Virtually all the countries of the world today have bills of rights. You would not feel your free-dom secure in most of them."[87] According to Justice Scalia,

---

[87] Hon. Antonin Scalia, *Symposium: Separation of Powers as a Safeguard of Federalism: Foreword: The Importance of Structure in Constitutional Interpretation*,

> They are not worth the paper they were printed on. . . . They are what the Framers of our Constitution called 'parchment guarantees,' because the real constitutions of those countries – the provisions that establish the institutions of government – do not prevent the centralization of power in one man or one party, thus enabling the guarantees to be ignored. ***Structure is everything***. . . . Those who seek to protect individual liberty ignore threats to this constitutional structure at their peril.[88]

The Government's concerted effort to unlawfully centralize all prosecutorial authority within the hands of the Executive asks this Court to forsake the "separation and equilibration of powers" at the expense of "safeguard[ing] individual liberty."[89] This, the Court must not do. Only a grave and substantial sanction will vindicate the rights of Messrs. Naviwala and Torres and deter the Government from future assaults on "the fundamental role constitutional structure plays in securing our individual liberty, and [to] remind[] us what is at stake if we fail to preserve it."[90] Dismissing the superseding indictments with prejudice, therefore, is what this Court should do.

IN LIGHT OF THE ABOVE, Messrs. Naviwala and Torres respectfully request that this honorable Court grant the instant motion, disqualify the Government's counsel, dismiss their Superseding Indictments with prejudice, and enjoin any Government attorney subject to disqualification from filing anything further in this matter.

---

83 Notre Dame L. Rev. 1417, 1417 (2008).
[88] *Id.* at 1418-19 (emphasis added).
[89] *Id.*
[90] *Id.* at 1420.

DATED: January 17, 2026        RESPECTFULLY SUBMITTED,


DOUG PASSON        JASON J. LEBOEUF

/s/ Doug Passon        /s/ Jason J. LeBoeuf
                                         **Attorney for Defendant**
RAHUL AGARWAL        **DANIEL TORRES**

/s/ Rahul Agarwal
**Attorneys for Defendant**
**RAHEEL NAVIWALA**


## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2026, the foregoing DEFENDANTS' OMNIBUS CONSOLIDATED REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS SUPERSEDING INDICTMENT AND DISQUALIFY COUNSEL was filed electronically and a copy was served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                         /s/ Doug Passon
                                         DOUG PASSON